Case 8:20-cv-01979-DOC-ADS Document 1-2, Filed 10/13/20, Page 2 of 14 Page ID #:28
Electronically Filed by Superior Court of California, County of Orange, 09/22/2020 11:42:00 AM.
30-2020-01141024-CU-FR-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Sarah Loose, Deputy Clerk.

Bobby Saadian (SBN 250377)
bobby@wilshirelawfirm.com
Justin F. Marquez (SBN 262417)
justin@wilshirelawfirm.com
Thiago Coelho (SBN 324715)
thiago@wilshirelawfirm.com
Robert Dart (SBN 264060)
RDart@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff
and the Putative Class*

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

| | |
|---|---|
| JOSEPH MIER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CVS HEALTH, Rhode Island corporation; and DOES 1 to 100, inclusive,<br><br>Defendants. | CASE NO.: 30-2020-01141024-CU-FR-CXC<br>Assigned for all purposes to: Judge Randall J. Sherman<br>Dept: CX105<br>**CLASS ACTION**<br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jospeh Mier ("Plaintiff"), individually and on behalf of all others similarly situated, bring this action based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

**NATURE OF THE ACTION**

1. Defendant CVS Health ("CVS") is a Rhode Island corporation headquartered in Woonsocket, Rhode Island, that, among other things, produces health products.

2. Defendant sells at its stores and elsewhere certain items from its own brand, such as alcohol-based hand-sanitizer. Defendant includes, printed on the bottles which contain its hand-sanitizer, a statement that the product kills 99.99% of germs. CVS's Original Scent Moisturizing Hand Sanitizer and all similar CVS brand hand sanitizers state on their bottles, "Kills 99.99% of Germs."

3. These statements, in that they are made with a degree of certainty to the hundredth digit, necessarily imply that a scientific study proves that the product in fact kills 99.99% of germs. Accordingly, they are each false statements, as no scientific study supports them.

4. In fact, it is scientifically proven that alcohol-based hand-sanitizer does not kill many types of germs. It does not kill many non-enveloped viruses, such as norovirus. "Norovirus is the leading cause of foodborne illness in the United States. It causes 58% of foodborne illnesses acquired in the United States." https://www.cdc.gov/norovirus/trends-outbreaks/burden-US.html. It is hard to believe that Defendant's hand-sanitizer kills 99.99% of all germs, while excluding the family of viruses that causes more than half of all food borne illnesses in the country. It also does not kill bacterial spores, protozoan cysts, some parasites like Giardia, and the diarrhea-causing bacterium Clostridium difficile. Moreover, studies have shown that some bacteria are becoming alcohol-resistant. For these reasons, no scientific study proves with any degree of certainty the overall percentage of germs which alcohol-based hand-sanitizer kills.

1
COMPLAINT AND DEMAND FOR JURY TRIAL

5. Defendant was aware that no scientific study supported its 99.99% claims, yet it proceeded to make those claims on the product labels, creating the clear impression that it had been scientifically proven. The product labels are therefore materially misleading, in that they plainly state, in a manner giving the impression that it has been scientifically proven, that the product kills 99.99% of germs, when studies show that it does not kill many types of germs. Hundreds of thousands of consumers have purchased these products, particularly during the ongoing COVID-19 pandemic, in the false belief that they have been proven to kill 99.99% of germs. It has not been so proven. They have been misled.

6. As a result of Defendants' deceptive and misleading practices, Plaintiff and the Class Members were induced to purchase hand-sanitizer which does not perform as advertised. Defendant has made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product which had been proven, with a high degree of certitude, to kill almost every germ. Defendant's customers did not receive the benefit of their bargain. The products do not kill many types of germs.

**THE PARTIES**

7. Plaintiff Joseph Mier ("Plaintiff Mier") is a California citizen residing in Orange County, California. On or about August 1, 2019, Plaintiff Mier purchased a bottle of CVS' Advanced Formula Hand Sanitizer, an alcohol-based hand-sanitizer, from a CVS store located at the intersection of Main Street and Warner Avenue, in Santa Ana, CA.

8. Defendant CVS is a Rhode Island corporation with its principal offices located in Woonsocket, Rhode Island. CVS does substantial business, including selling its health products, in California, and in Orange County specifically.

9. Plaintiff is unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 100. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 100 if and when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the

2
COMPLAINT AND DEMAND FOR JURY TRIAL

defendants sued herein as a DOE proximately caused injuries and damages to Plaintiff and Class Members as set forth below.

10. As used herein, "Defendants" shall refer to CVS and Does 1 to 100, collectively.

### JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to Section 410.10 of the California Code of Civil Procedure.

12. The Court has personal jurisdiction over Defendants because Plaintiff's and Class Members' claims arise out Defendants' business activities conducted in the State of California.

13. Venue is appropriate in Orange County because, among other things: (a) Plaintiff purchased the products from Defendants' stores in Orange County; and (b) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in Orange County.

### FACTUAL ALLEGATIONS

14. Plaintiff is an individual who purchased CVS brand alcohol-based hand-sanitizer from one of Defendants' stores. When Plaintiff purchased the hand-sanitizer, the label on the bottle of hand-sanitizer stated prominently that the product would "kill[] 99.99% of germs."

15. On the product label, there is an asterisk next to the above statements, which leads to the following statement written in a much smaller font, or a statement similar to the following statement, on the back label: "Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." Plaintiff did not read this disclaimer. Further, a reasonable consumer who read this language would not understand it to take back the promise on the front of the bottle, to kill 99.99% of all germs.

16. Plaintiff read these statements on the product labels and relied on them when purchasing the products. Plaintiff believed that this statement meant that a scientific study proved that the product would kill 99.99% of all known germs. That is because the statement included an exact figure for the percentage of germs that would be killed—99.99%. The

statement did not read, "kills most germs," it read "kills 99.99% of germs," which indicates that some evidence supports the figure 99.99%.

17. The statement created a false impression. No scientific study indicates that alcohol-based hand-sanitizers kill 99.99% of germs. In fact, many scientific studies show that hand-sanitizers do not kill many prominent and harmful germs, and that they are less effective than washing one's hands.

18. First of all, studies show that some types of bacteria are becoming alcohol-resistant due to the use of hand-sanitizers. For instance, the bacterium Enterococcus faecium has been found to have become ten times more alcohol tolerant in the years after 2010 than it was in the years before 2010. https://www.forbes.com/sites/brucelee/2018/08/04/how-this-bacteria-may-becoming-more-resistant-to-hand-sanitizer/#138e8d1722dd.

19. Further, it is known that alcohol-based hand sanitizers do not kill many non-enveloped viruses, such as norovirus. *See* https://www.medicalnewstoday.com/articles/232708#1. As noted above, norovirus accounts for over half of the food-borne illnesses in the country.

20. Third, it is known that alcohol-based hand sanitizers do not kill bacterial spores, which are a leading cause of illness. (https://www.researchgate.net/publication/43353621_Effectiveness_of_Alcohol-Based_Hand_Rubs_for_Removal_of_Clostridium_difficile_Spores_from_Hands)

21. Fourth, it has been shown that alcohol-based hand sanitizers do not kill protozoan cysts, which grow to become invasive parasites, such as Giardia. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4510183/

22. In light of the fact that evidence shows that many types of germs are not killed by alcohol-based hand-sanitizers, it appears extremely doubtful that these sanitizers in fact kill 99.99% of all germs. Certainly, no study shows that the sanitizers kill any given amount of germs such that an exact percentage of germs killed could be stated. Yet that is exactly what Defendants have done. Defendants made false statements.

23. Plaintiff purchased the hand-sanitizer in reliance on these representations, believing that it had in fact been scientifically proven that the hand-sanitizer killed 99.99% of all germs. Plaintiff received a product that was not in fact proven to kill 99.99% of germs. Plaintiff did not get the product that was advertised.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on his own behalf and pursuant to California Code of Civil Procedure § 382. Plaintiff intends to seek certification of a class defined as follows:

> All persons residing in the State of California who purchased CVS brand hand-sanitizer during the period beginning four years from the date of the filing of this Complaint to the date of class certification (the "Class").

25. Excluded from the Class are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiff reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

26. *Numerosity*. The members of the Class are so numerous that the joinder of all Class Members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, given the amount of Defendants' brand hand-sanitizer sold in California, it stands to reason that the number of Class Members is at least in the thousands. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information and sales records.

27. *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendants' brand hand-sanitizers contains the statement, on the product labels, that it kills 99.99% of germs;

b. Whether Defendants' product labeling created the impression among their customers that their product would kill 99.99% of all germs.

c. Whether a reasonable person would have read the statement "kills 99.99% of germs" and any accompanying language to mean that the hand-sanitizer had been scientifically proven to kill at least that exact percentage of germs;

d. Whether the hand-sanitizer kills 99.99% of germs;

e. Whether it has been scientifically proven that the hand-sanitizer kills 99.99% of germs;

f. Whether Defendants knew or should have known that it had not been scientifically proven that the hand-sanitizer kills 99.99% of germs;

g. Whether Defendant knew or should have known that the hand-sanitizer does not kill 99.99% of germs;

h. The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled; and

i. Whether Plaintiff and Class Members are entitled to damages, civil penalties and/or injunctive relief.

28. *Typicality*. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the other Class Members, purchased CVS brand hand-sanitizer which included a statement that it would kill 99.99% of germs, but would not in fact kill that percentage of germs.

29. *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff have retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief.  Therefore, all Class Members will be fairly and adequately represented by Plaintiff and his counsel.

30. *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially

1  conflicting adjudications of the asserted claims. There will be no difficulty in the management
2  of this action as a class action, and the disposition of the claims of the Class Members in a
3  single action will provide substantial benefits to all parties and to the Court. Damages for any
4  individual Class Member are likely insufficient to justify the cost of individual litigation so that,
5  in the absence of class treatment, Defendants' violations of law inflicting substantial damages in
6  the aggregate would go un-remedied.

7      31.    Class certification is also appropriate because Defendants have acted or refused
8  to act on grounds generally applicable to the Class Members, such that final injunctive relief or
9  corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

(Intentional Misrepresentation)

12      32.    Plaintiff repeats and incorporates herein by reference each and every allegation
13  contained in paragraphs 1 through 31, inclusive, of this Complaint as if set forth fully herein.

14      33.    Defendants represented to Plaintiff and the Class Members that CVS brand hand-
15  sanitizer would kill 99.99% of germs. Specifically, Defendants placed an advertisement, or
16  caused to be placed an advertisement, on its product label, which stated, "kills 99.99% of
17  germs."

18      34.    This statement, inclusive of any disclaimer, would lead a reasonable person to
19  conclude that the hand-sanitizer had been proven through a scientific study to kill 99.99% of
20  germs. That is because the statement included an exact figure for the percentage which went to
21  the hundredth decimal point. Such an exact number would lead a reasonable person to conclude
22  that a specific number had been calculated, and not that it had been picked out of clean air.

23      35.    These representations were false. It has not been proven in any scientific study
24  that the hand-sanitizer kills 99.99% of germs. In fact, it has been scientifically proven that
25  alcohol-based hand-sanitizer does not kill many types of germs.

26      36.    Defendants knew that the representations at issue were false when they made
27  them, and/or made the representations recklessly and without regard for their truth. Defendants
28  understood, or should have understood, that no scientific study proved that any specific

7
COMPLAINT AND DEMAND FOR JURY TRIAL

percentage of all germs would be killed by the hand-sanitizer. Defendants also understood, or should have understood, that alcohol-based hand-sanitizer does not kill many types of germs.

37. Defendants intended that Plaintiff and the Class Members rely on the representations. The advertisement was placed on product packaging and on the product itself for the sole purpose of inducing customers to purchase the product. Defendants understood, or should have understood, that a reasonable person would read the "99.99%" promise to indicate that a scientific study supported this number.

38. Plaintiff and the Class Members reasonably relied on the representations. Plaintiff and the Class Members believed that a scientific study proved that the hand-sanitizer would kill 99.99% of germs. Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class Members purchased the product.

39. As a result, Plaintiff and the Class Members were harmed when they purchased hand-sanitizer that has not actually been proven to kill 99.99% of germs. Plaintiff and the Class members were not protected from many types of germs. Plaintiff and the Class members also paid for a product that they would not otherwise have purchased.

40. Plaintiff and the Class Members' reliance on Defendants' representations was a substantial factor in causing this harm. Had Plaintiff and the Class Members known that it had not been proven that the hand-sanitizer killed 99.99% of germs, Plaintiff and the Class Members would not have purchased the product.

41. As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**SECOND CAUSE OF ACTION**

(Negligent Misrepresentation)

42. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 41, inclusive, of this Complaint as if set forth fully herein.

43. Defendants represented to Plaintiff and the Class Members that their brand hand-sanitizer would kill 99.99% of germs. Specifically, Defendants placed an advertisement, or

8
COMPLAINT AND DEMAND FOR JURY TRIAL

caused to be placed an advertisement, on its product label, which stated, "kills 99.99% of germs."

44. This statement, inclusive of any disclaimer, would lead a reasonable person to conclude that the hand-sanitizer had been proven through a scientific study to kill 99.99% of germs. That is because the statement included an exact figure for the percentage which went to the hundredth decimal point. Such an exact number would lead a reasonable person to conclude that a specific number had been calculated, and not that it had been picked out of clean air.

45. These representations were false. It has not been proven in any scientific study that the hand-sanitizer kills 99.99% of germs. In fact, it has been scientifically proven that alcohol-based hand-sanitizer does not kill many types of germs.

46. Defendants had no reasonable grounds for believing that the representations were true when they made them. No study proves that alcohol-based hand-sanitizer kills 99.99% of all germs. In fact, many studies prove that hand-sanitizer does not kill many types of germs.

47. Defendants intended that Plaintiff and the Class Members rely on the representations. The advertisement was placed on product packaging and on the product itself for the sole purpose of inducing customers to purchase the product. Defendants understood, or should have understood, that a reasonable person would read the "99.99%" promise to indicate that a scientific study supported this number.

48. Plaintiff and the Class Members reasonably relied on the representations. Plaintiff and the Class Members believed that a scientific study proved that the hand-sanitizer would kill 99.99% of germs. Based on that belief, and because of it, desiring to be protected from 99.99% of germs, Plaintiff and the Class Members purchased the product.

49. As a result, Plaintiff and the Class Members were harmed when they purchased hand-sanitizer that has not actually been proven to kill 99.99% of germs. Plaintiff and the Class members were not protected from many types of germs. Plaintiff and the Class members also paid for a product that they would not otherwise have purchased.

50. Plaintiff and the Class Members' reliance on Defendants' representations was a substantial factor in causing this harm. Had Plaintiff and the Class Members known that it had

not been proven that the hand-sanitizer killed 99.99% of germs, Plaintiff and the Class Members would not have purchased the product.

51.   As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**THIRD CAUSE OF ACTION**

(Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et. seq.)

52.   Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 51, inclusive, of this Complaint as if set forth fully herein.

53.   Defendants' statements on the product labels that the product would kill 99.99% of germs were false. No scientific study proves that alcohol-based hand-sanitizer kills 99.99% of germs and, in fact, studies prove that alcohol-based hand-sanitizer does not kill many types of germs. These advertisements were made, in Defendants' stores, to California residents.

54.   Alternatively, the statements that the product would kill 99.99% of germs, combined with the disclaimer on the back of the packaging, created the false impression that the product would in fact kill 99.99% or more than 99.99% of all germs, because the statement, on the front of the bottle, gave the impression that it had been scientifically proven to kill 99.99% of all germs due to the adoption of an exact percentage, and because the disclaimer, on the back of the product and in a smaller font, did not detract from that impression in that it merely provided a corollary statement which was not inconsistent with the overall claim that the product killed 99.99% or more than 99.99% of all germs.

55.   To the extent that it exists at all, the statement on the back of the bottle, in smaller font, that the product is "[e]ffective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds" is consistent with, and does not detract from, the promise on the front of the bottle that the product kills 99.99% of germs, or more than 99.99% of germs. A reasonable consumer would believe, after reading both statements, that the product will in fact kill 99.99% of all germs. Therefore, the advertising is both actually misleading and has a capacity, likelihood or tendency to deceive or confuse the public.

56. Plaintiff and the Class Members relied on the advertisements by purchasing hand-sanitizer that they believed had been proven to kill 99.99% of germs. The representation that the hand-sanitizer would kill 99.99% of germs contributed materially to Plaintiff's and the Class Members' decisions to purchase the hand-sanitizer.

57. As a result, Plaintiff and the Class Members were damaged. Plaintiff and the Class Members did not receive the benefits of their bargains and used hand-sanitizer which had not been proven to kill 99.99% of germs and, in fact, did not kill many types of germs. Plaintiff and the Class Members paid for a product that they would not have purchased had they known the truth.

58. Plaintiff have suffered monetary injury in fact as a direct and proximate result of the violations of the False Advertising Law committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

**FOURTH CAUSE OF ACTION**

(Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.)

59. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraph 1 through 58, inclusive, of this Complaint as if set forth fully herein.

60. By their actions and conduct as alleged herein, Defendants have committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200 ("UCL") that constitute unfair, unlawful and/or fraudulent business practices as those terms are defined under California law.

61. Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members. These business practices, described above, include creating false advertisements on product packaging and directly on the product itself. The false advertisements are substantially injurious because they induce consumers to make purchases that they would not otherwise make, in expectation of receiving benefits that they do not receive. Further, the impact of the practice against Plaintiff and the Class Members far outweighs any possible justification or motive on the part of Defendant. The impact on Plaintiff

and the Class Members has been described.  Defendants can have no possible justification for including a false inducement to purchase its product.  Plaintiff and the Class Members could not reasonably have avoided this injury because they relied on Defendants' advertisement as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do.

62. Defendants' false advertisement is violative of public policy as expressed in the False Advertising Law.  Each of these statutes strictly forbids false advertisement such as Defendants have disseminated and/or caused to be disseminated, and represent expressions of public policy against this practice.

63. Defendants' business practices are also unfair because they significantly threaten or harm competition.  Competition is fostered by an environment in which information can be relied upon, so that consumers can make wise decisions, and so that products which accurately reflect the consumers' wishes can flourish.

64. As shown above, Defendants' business practices are also unlawful because they violate the False Advertising Law.

65. Defendants' business practices are also fraudulent under the UCL because they constitute representations to the public which are likely to deceive the public.  The representations indicate that it has been proven that the product will kill 99.99% of germs, when in fact it has not been so proven, and, instead, it has been proven that the product will not kill many types of germs.  The public, receiving these representations, is likely to believe that it has been proven that the product will kill 99.99% of germs, and is so deceived.

66. Defendants' representations are likely to deceive the public because they are untrue and because they create the impression that the product has been proven to kill 99.99% of germs.  A reasonable consumer would be likely to believe that, if Defendants state their product kills a very exact percentage of germs, that it has in fact been proven to kill all of those germs.

67. Plaintiff and the Class Members relied on these representations when they purchased the CVS hand-sanitizer, which they would not have otherwise purchased.

68. Plaintiff has suffered monetary injury in fact as a direct and proximate result of the acts of unfair competition committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

(1) For compensatory damages in an amount to be proven at trial;

(2) For restitutionary damages in an amount to be proven at trial;

(3) For affirmative injunctive relief mandating that Defendants remove the false advertisements from their product and product packaging;

(4) For costs of suit and litigation expenses;

(5) For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: May 21, 2020

**WILSHIRE LAW FIRM**

By _____
Thiago M. Coelho
*Attorneys for Plaintiff and the Proposed Class*