Justin F. Marquez, (Cal Bar No. 262417)
justin@wilshirelawfirm.com
Thiago M. Coelho (Cal Bar No. 324715)
thiago@wilshirelawfirm.com
Robert Dart (Cal. Bar No. 264060)
rdart@wilshirelawfirm.com
Cinela Aziz (Cal Bar No. 318192)
cinela@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff Joseph Mier*
*and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH MIER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS HEALTH, a Rhode Island limited liability company; and DOES 1 to 100, inclusive,<br><br>Defendants. | CASE NO. 8:20-cv-01979-DOC-ADS<br><br>**PLAINTIFF JOSEPH MIER'S OPPOSITION TO DEFENDANT CVS HEALTH'S MOTION TO DISMISS**<br><br>Hon. David O. Carter<br><br>Date: November 23, 2020<br>Time: 8:30 a.m.<br>Room: 9D |

*WILSHIRE LAW FIRM, PLC*
*3055 Wilshire Blvd, 12th Floor*
*Los Angeles, CA 90010-1137*

# TABLE OF CONTENTS

Headings                                                                    Page(s)

I.      INTRODUCTION……………………………………………………1

II.     PERTINENT FACTS……………………………………………....2

III.    ARGUMENT……………………………………………………3

        A. Legal Standard for 12(b)(1) Motion……………………………..3

        B. Legal Standard for 12(b)(6) Motion……………………………..3

        C. Plaintiff Has Article II Standing Because He Surrendered
           More in a Transaction than He Would Have……………………4

                1.  The Injury in Fact is Concrete and Particularized………..6

                2.  The Injury is Actual and Imminent………………………7

                3.  The Injury is Fairly Traceable to Defendant's Conduct….7

                4.  It Is Likely, as Opposed to Merely Speculative, that the
                    Injury Will Be Redressed by a Favorable Decision...........7

        D. Plaintiff Meets Rule 9(b)'s Heightened Pleading Standard……..8

        E. A Reasonable Consumer Would, Reading the False Statement
           on the Front Product Label, Be Misled…………………………9

        F. Plaintiff States a Valid False Advertising Law Claim………….11

        G. Plaintiff States a Valid UCL Claim Under All Three Prongs…..12

        H. Plaintiff States a Valid Intentional Misrepresentation Claim…...13

        I.  Plaintiff's Intentional and Negligent Misrepresentation Claims
            Are Not Barred by the Economic Loss Rule……………………14

        J.  Under Controlling Supreme Court Precedent, Plaintiff's Claims
            Are Not Expressly Preempted by the FDCA……………………16

        K. Neither Field Preemption Nor Conflict Preemption Apply……..17

        L. Primary Jurisdiction Doctrine Does Not Apply…………………20

        M. Plaintiff Is Entitled to Equitable Relief…………………………24

IV.     CONCLUSION…………………………………………………..25

i

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                 Page(s)

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015)…………………………………………17, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) …………………………………………………4

*Berke v. Whole Foods Market, Inc., et al.*
    2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020) …………....…6, 17

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009)…………………………………………6

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)…………………………………………………17

*Boysen v. Walgreen Co.*,
    2012 2953069, at *4-5 (N.D. Cal. July 19, 2012)…………………6

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018)…………………………2, 3, 8, 9, 10, 11, 14

*Braunstein v. Arizona Dep't of Transp.*,
    683 F.3d 1177 (9th Cir. 2012)……………………………………...3

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531, 534 (9th Cir. 2016)……………………………25

*Brown v. MCI WorldCom Network Servs.*,
    277 F.3d 1166 (9th Cir. 2002)……………………………………..21

*Chacanaca v. The Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010)……………………………22

*Chapman v. Skype*,
    220 Cal.App.4th 217 (2013)…………………………………………11

*Chavez v. Blue Sky Nat. Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)…………………………………19

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008)……………………………………20, 21, 22

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994)………………………………………...4

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
    398 F. Supp. 3d 623 (N.D. Cal. 2019)……………………………..11

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
    228 F.3d 24 (1st Cir. 2000)…………………………………………11

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

ii

TABLE OF AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

<u>Cases continued</u>                                              Page(s)

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)……………………………………………12

*Dana v. Hershey Co.*,
    180 F. Supp. 3d 652 (N.D. Cal. 2016),
    aff'd, 730 F. App'x 460 (9th Cir. 2018)……………………………6

*De Buono v. NYSA-ILA, Med. and Clinical Servs. Fund*,
    520 U.S. 806 (1997)…………………………………………19

*Degelmann v. Advanced Med. Optics, Inc.*,
    659 F.3d 835 (9th Cir. 2011)………………………………5

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016)………………………………..14

*Delacruz v. CytoSport*,
    2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012)……………..22

*Drum v. San Fernando Valley Bar Ass'n*,
    182 Cal. App. 4th 247 (2010)…………………………………12

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010)………………………………8

*Erickson v. Pardus*,
    551 U.S. 89 (2007)…………………………………………4

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999)………………………………………..14

*Hawkins v. Kellogg Co.*,
    224 F. Supp. 3d 1002 (S.D. Cal. 2016)………………………19

*Hillsborough County v. Automated Medical Laboratories, Inc.*,
    471 U.S. 707 (1985)………………………………………..19

*Hitt v. Arizona Beverage Co., LLC*,
    2009 WL 449190, at *5 (S.D. Cal. Feb. 4, 2009)…………………18

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
    129 Cal. App. 4th 1228 (2005)………………………………..24

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015)………………………..12

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir.1994)………………………………..8

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012)……………………………7

TABLE OF AUTHORITIES

<u>Cases continued</u>                                                                  Page(s)

*In Re: Juul Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
 2020 WL 6271173, at *13 (N.D. Cal. Oct. 23, 2020)............17, 20, 21, 22

*In re LinkedIn User Privacy Litig.*,
 2014 WL 1323713, at *4 (N.D. Cal. Mar. 28, 2014).................6

*In re Pfizer Inc. Sec. Litig.*,
 584 F. Supp. 2d 621 (S.D.N.Y. 2008)..................................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
 996 F. Supp. 2d 942 (2014).............................................16

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009)...............................................12, 25

*J2 Cloud Servs., Inc. v. Fax87*,
 2016 WL 6833904, at *4 (C.D. Cal. Nov. 18, 2016).................15

*J'Aire Corp. v. Gregory*,
 24 Cal. 3d 799 (1979)................................................15, 16

*Jacobs v. Sustainability Partners LLC*,
 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020)...............14

*Joli Grace, LLC v. Country Visions, Inc.*,
 2016 WL 6996643, at *9 (E.D. Cal. Nov. 30, 2016).................15

*Jones v. ConAgra Foods, Inc.*,
 912 F. Supp. 2d 889 (N.D. Cal. 2012)...............................22

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
 315 F. App'x 603 (9th Cir. 2008).....................................16

*Knox v. Phoenix Leasing, Inc.*,
 29 Cal. App. 4th 1357 (1994)........................................24

*Kwikset Corp. v. Superior Court*,
 51 Cal.4th 310 (2011)................................................1, 5

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
 235 Cal. App. 3d 1220 (1991)........................................14

*Lazar v. Superior Court*,
 12 Cal. 4th 631 (1996)...............................................15

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001)........................................4, 22

*Lee v. Fed. St. L.A.*,
 2016 WL 2354835, at *9 (C.D. Cal. May 3, 2016)..................15

*///*

iv

TABLE OF AUTHORITIES

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

<u>Cases continued</u>                                                          Page(s)

*Lockwood v. Conagra Foods, Inc.*,
 597 F. Supp. 2d 1028 (N.D. Cal. 2009)……………………………….19, 22

*Loomis v. Slendertone Distribution, Inc.*,
 420 F. Supp. 3d 1046 (S.D. Cal. 2019)……………………………..20

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)…………………………………………………..3

*Madenlian v. Flax USA Inc.*,
 2014 WL 7723578, at *3 (C.D. Cal. Mar. 31, 2014)………………10

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*,
 658 F.3d 1038 (9th Cir. 2011)………………………………………...21

*Maui Vacation Rental Ass'n, Inc. v. Cty. of Maui*,
 2007 WL 4440962, at *3 (D. Haw. Dec. 19, 2007),
 *aff'd*, 303 F. App'x 416 (9th Cir. 2008)………………………………3

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012)………………………………………1, 2, 5, 6

*Medtronic, Inc. v. Lohr*,
 518 U.S. 470 (1996)…………………………………………………..19

*McMahon v. Take-Two Interactive Software*, Inc.,
 640 F. App'x 669 (9th Cir. 2016)…………………………………..12

*Medtronic, Inc. v. Lohr*,
 518 U.S. 470 (1996)…………………………………………………..17

*Nelson v. Serwold*,
 687 F.2d 278 (9th Cir.1982)…………………………………………25

*Parks School of Business, Inc., v. Symington*,
 51 F.3d 1480 (9th Cir. 1995)………………………………………….3

*Philips v. Ford Motor Co.*,
 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015)………………24

*Pirozzi v. Apple, Inc.*,
 966 F. Supp. 2d 909 (N.D. Cal. 2013)……………………………...5

*Polo v. Innoventions Int'l, LLC*,
 833 F.3d 1193 (9th Cir. 2016) ………………………………………7

*Prata v. Superior Court*,
 91 Cal.App.4th 1128 (2001)…………………………………………10

*Prescott v. Bayer HealthCare LLC*,
 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020)…..18, 20, 21, 22, 23, 24

v

TABLE OF AUTHORITIES

Cases continued                                                                                      Page(s)

*R Power Biofuels, LLC v. Chemex LLC*,
    2017 WL 1164296, at *5 (N.D. Cal. Mar. 29, 2017)………………14

*Rhoades v. Avon Prods.*,
    504 F.3d 1151 (9th Cir. 2007)………………………………...21

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)……………………………………………17

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004)……………………………………..14, 15

*Samet v. Procter & Gamble Co.*,
    2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013)………………6

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009)…………………………………24

*Sciortino v. Pepsico, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015)………………………17

*Simpson v. The Kroger Corp.*,
    219 Cal. App. 4th 1352 (2013)………………………………10

*Soo v. Lorex Corp.*,
    2020 WL 5408117, at *6 (N.D. Cal. Sept. 9, 2020)………………12

*Sperling v. Stein Mart, Inc.*,
    2016 WL 11265686, at *5 (C.D. Cal. Mar. 15, 2016)……………..10

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016)…………………………………………...6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)………………………………………4

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011)…………………………...5, 6, 12

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir.2002)………………………………..20

*Tabler v. Panera, LLC*, Case No,
    2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019)……………18, 22, 23

*Tran v. Sioux Honey Ass'n, Coop.*,
    2018 WL 10612686, at *3 (C.D. Cal. Aug. 20, 2018)……………..18, 19

*Troyk v. Farmers Grp., Inc.*,
    171 Cal.App.4th 1305 (2009)………………………………………5

*///*

TABLE OF AUTHORITIES

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
    660 F. Supp. 2d 1163 (C.D. Cal. 2009)……………………………15
*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987)……………………………………….4
*Ventress v. Japan Airlines*,
    603 F.3d 676 (9th Cir.2010)……………………………………….16
*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir.2003)……………………………………8
*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015)……………………………25
*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008)……………………………………8, 10
*Wyeth v. Levine*,
    555 U.S. 555 (2009)………………………………………………..17
*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018)……………………………...13

Codes                                                                                          Page(s)

Cal. Civ. Code § 3343……………………………………………………25
28 U.S.C. § 1447(c)…………………………………………………7

Rules                                                                                          Page(s)

Federal Rules of Civil Procedure 8(a)(2)…………………………………4
Federal Rules of Civil Procedure 9(b)……………………………………4
Federal Rules of Civil Procedure 12(b)(1)………………………………..3

Other Authority                                                                                Page(s)

Safety and Effectiveness of Consumer Antiseptic Rubs; Topical
Antimicrobial Drug Products for Over-the-Counter Human Use,
84 FR 14847-01……………………………………………………18, 19
Topical Antimicrobial Drug Products for Over-the-Counter Human Use;
Tentative Final Monograph for Health-Care Antiseptic Drug Products,
59 FR 31402-01………………………………………………18, 20, 23, 24

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

vii

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant CVS Health ("CVS")[1] believes that the law allows it to make a patently false statement on the front label of its product, attempt to qualify it on the back label in smaller font, and use this bait-and-switch tactic to sell its hand-sanitizer product to a trusting public during a pandemic.  Defendant is wrong.  Courts consistently find that plaintiffs alleging false statements in product labeling have stated valid claims.  *See, e.g., Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).  Nonetheless, CVS tries to edge its way out of this case in a number of ways, each one utterly fruitless.  First, CVS, relying on a line of cases involving only product defects, and not affirmative misstatements, argues that Plaintiff Joseph Mier does not have standing.  In fact, the Ninth Circuit has held consistently that a plaintiff who alleges that he paid money for that he would not have paid but for a misrepresentation has standing to sue.  *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012).

Second, Defendant argues that Plaintiff has failed to meet Rule 9(b)'s particularity requirement in pleading fraud-based claims.  In fact, Plaintiff has alleged "who"—CVS—"what"—printed a misrepresentation on the front label of its hand-sanitizer, namely that it "kills 99.99% of germs" (Complaint, ¶ 2)—"when"—on August 1, 2019, when Plaintiff purchased a bottle of CVS Advanced Formula Hand Sanitizer (*id.*, ¶ 7)—"where"—on the CVS hand sanitizer bottle, sold at CVS stores and elsewhere (*id.*, ¶ 2)—and "how"—CVS printed the misleading statement on its labels in order to induce consumers to purchase its hand sanitizer.  (*Id.*, ¶ 5).  Plaintiff has also alleged why the statement is deceptive: "The product labels are therefore materially misleading, in that they plainly state, in a manner giving the impression that it has been scientifically proven, that the product kills

---

[1] CVS claims that Plaintiff has misnamed it in the Complaint.  Upon discovery showing that CVS Pharmacy, Inc., is the proper Defendant, Plaintiff will amend the Complaint to change the name of Defendant.

1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

99.99% of germs, when studies show that it does not kill many types of germs." (*Id.*)  Plaintiff has also linked these numerous studies.

The statement is deceptive simply because it is, on its face, false. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018) ("[T]here is no protection for literal falseness.").  And this is true even if the language on the back of the bottle could be said to "take back" the promise.  *Id.* at 1172 ("You cannot take away in the back fine print what you gave on the front in large conspicuous print.").  But the language on the back of the bottle does not actually take back the promise in any event.  It states, "Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." (Complaint, ¶ 15).  Theoretically a hand-sanitizer could both kill 99.99% of germs and kill a subset of those germs in 15 seconds or less.  The language on the back of the bottle is not inconsistent with, and therefore does not render any less misleading, the promise on the front.  Defendant makes other arguments, none of them availing.  It has misled consumers and will have to pay the price.

## II.    PERTINENT FACTS

On or about August 1, 2019, Plaintiff purchased a bottle of CVS's Advanced Formula Hand Sanitizer, an alcohol-based hand-sanitizer, from a CVS store in Santa Ana, CA. (Complaint, ¶ 7).  When Plaintiff purchased the hand-sanitizer, the front label of the bottle stated prominently that the product would "kill[] 99.99% of germs." (*Id.*, ¶ 14).  Yet many studies show that alcohol-based hand-sanitizer does not kill many types of germs, such as norovirus, bacterial spores, protozoan cysts, some parasites like Giardia, and the diarrhea-causing bacterium Clostridium difficile.  (*Id.*, ¶ 4).  Moreover, studies have shown that bacteria are becoming alcohol-resistant.  (*Id.*)  According, "kills 99.99% of germs" is a false statement. (*Id.*, ¶ 22).  The front label of each bottle of CVS's hand-sanitizer contains an asterisk which leads to a statement on the back label, in miniscule font.  (*Id.* at ¶ 15).  That statement reads, "Effective at eliminating 99.99% of many common

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

2

harmful germs and bacteria in as little as 15 seconds." (*Id*.)  This language plainly does not take back the promise on the front label, but merely provides an ancillary promise that the product will kill 99.99% of a subset of germs in a specific time period. (*Id*.)  Regardless, Plaintiff did not read that language on the back label.  (*Id*.) Plaintiff did read the promise on the front label that the product "kills 99.99% of germs" and relied on it in purchasing the hand-sanitizer.  (*Id*., ¶ 23).  Plaintiff received a product that did not kill 99.99% of germs.  (*Id*.)  Plaintiff did not receive his benefit of the bargain.  (*Id*.)

## III.   ARGUMENT

### A.   Legal Standard for 12(b)(1) Motion

"While it is true that *some* Rule 12(b)(1) motions allow the court to look beyond the allegations of the complaint, this is not the proper standard of review for a motion to dismiss for lack of standing." *Maui Vacation Rental Ass'n, Inc. v. Cty. of Maui*, No. 07-00495 JMS/KSC, 2007 WL 4440962, at *3 (D. Haw. Dec. 19, 2007), *aff'd*, 303 F. App'x 416 (9th Cir. 2008).  "To satisfy Article III standing, a plaintiff must show (1) he has suffered an 'injury in fact' that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012). "The plaintiff bears the burden of establishing these elements."  *Id*. "[G]eneral allegations of injury can suffice at the pleading stage. . . ."  *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

### B.   Legal Standard for 12(b)(6) Motion

Dismissal for failure to state a claim under Rule 12(b)(6) is a ruling on a question of law. *Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether the plaintiff ultimately will prevail, but

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

3

whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the.... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal quotations omitted). Although in order to state a claim a complaint "does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570.  Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id*.

> ## C.   Plaintiff Has Article III Standing Because He Surrendered More in a Transaction than He Would Have.

Defendant argues that Plaintiff, who alleges that he purchased the product in reliance on a false representation on its front label, and that he would not have paid the price he paid for it if he had not believed the false representation to be true, cannot state an injury in fact.  This contention is belied by controlling Ninth Circuit

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

4

precedent.   In *Mazza*, 666 F.3d at 595, the Ninth Circuit rejected the defendant's argument that class members could potentially lack standing where the plaintiffs contended that each of them had "paid more for the [product] than they otherwise would have paid, or bought it when they otherwise would not have done so, because [the defendant] made deceptive claims and failed to disclose the system's limitations."   The basis of the injury in fact was not any injury caused by the defective product, but by the act of paying money that the class members would not have paid had they not been deceived.  *Id.* ("To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'").[2]

*Kwikset* was a California Supreme Court case dealing with standing under the Unfair Competition Law, which is a more strenuous standard than Article III standing.[3]   The court in *Kwikset* held unequivocally that a plaintiff, such as ours, who paid more for a product in reliance on false advertising than he or she otherwise would have, had standing to sue under the UCL.  *Kwikset*, 51 Cal.4th at 329.   The Ninth Circuit has applied the holding in *Kwikset* to Article III standing.   *See Degelmann*, 659 F.3d at 839–40 ("Had the product been labeled accurately, they

---

[2] *See also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839–40 (9th Cir. 2011), *vacated*, 699 F.3d 1103 (9th Cir. 2012)[2] (adopting the California Supreme Court's reasoning in *Kwikset*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, to Article III standing in holding that plaintiffs who "paid more for a product due to reliance on false advertising" had stated an injury in fact, despite that they would have "bought other contact lens solution had they not purchased MoisturePlus"); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (injury was concrete and particularized where "each alleged class member was relieved of money in the transactions")

[3] "California courts have distinguished the UCL standing requirement as more stringent than the federal Article III standing requirement, noting that '[w]hereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involves 'lost money or property.''' *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013) (quoting *Troyk v. Farmers Grp., Inc.*, 171 Cal.App.4th 1305, 1348, n. 31, 90 Cal.Rptr.3d 589 (2009)). "Conversely, '[i]f a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact.''' *Id.* (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 325, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)).

5

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1  would not have been willing to pay as much for it as they did, or would have refused

2  to purchase the product altogether. The district court's reasoning—that class

3  members would have bought other contact lens solution, and therefore suffered no

4  economic harm—conceived of injury in fact too narrowly."); *Mazza*, 666 F.3d at

5  595; *Stearns*, 655 F.3d at 1021; *see also In re LinkedIn User Privacy Litig.*, No.

6  5:12-CV-03088-EJD, 2014 WL 1323713, at *4 (N.D. Cal. Mar. 28, 2014) ("The

7  Article III standing cases in the Ninth Circuit agree that plaintiffs who make

8  allegations similar to those made in *Kwikset* . . . would also satisfy Article III's

9  standing requirements."). Under this line of authority, Defendant cannot plausibly

10  argue that Plaintiff lacks Article III standing.[4]

### 1. The Injury in Fact is Concrete and Particularized.

12  The Supreme Court has stated that an injury-in-fact must be both "concrete

13  and particularized." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). An injury

14  is "particularized" if the effects of the alleged wrongdoing actually "affect the

15  plaintiff in a personal and individual way." *Id*. To be "concrete" the injury must be

16  "*de facto*; that is, it must actually exist." *Id*. Here, the injury is both concrete and

17  particularized. Plaintiff alleges that he paid for hand-sanitizer that he would not

18  have purchased had he known that the misrepresentation on the front label of the

19  product were in fact misrepresentations. This injury affects Plaintiff in a personal

20  and individual way. It is literally money out of his own pocket. The injury is also

21  *de facto*: it exists. Plaintiff paid money for the product. This requirement is

---

[4] Defendant's cases do not hold otherwise. While there is a line of cases holding that where the plaintiff merely alleges that the product is unsafe, its purchase may not constitute an economic injury, *see e.g., Birdsong v. Apple, Inc*., 590 F.3d 955 (9th Cir. 2009), "courts in this Circuit have distinguished these cases from those where the allegations at issue rely on false or misleading advertising." *Berke.*, 2020 WL 5802370, at *7; *see also Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 662 (N.D. Cal. 2016), aff'd, 730 F. App'x 460 (9th Cir. 2018) (distinguishing *Birdsong*, 590 F.3d at 957 62); *Samet v. Procter & Gamble Co*., No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013) (distinguishing *Boysen* on the ground that the *Boysen* court based its "decision on the fact that the plaintiff did 'not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice.'")

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

therefore easily met.

### 2.     The Injury is Actual and Imminent.

Plaintiff's injury is actual and imminent because Plaintiff has in fact purchased the product.  Any additional injury which could occur from the product not working as advertised is secondary to this primary act of purchase.  Plaintiff has not, and need not, alleged that the product caused him to be sick.  The product did not have the attributes that Defendant said it had, and Plaintiff bought it in reliance on those representations.  That money lost is an actual and imminent injury.

### 3.     The Injury is Fairly Traceable to Defendant's Conduct.

Defendant cannot reasonably dispute that the injury in fact is fairly traceable to Defendant's conduct.  Plaintiff purchased the hand-sanitizer in reliance on Defendant's representations made on the front product label.  Therefore, this requirement is met.  *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055–56 (N.D. Cal. 2012) (injury is fairly traceable to defendants' conduct when the complaint "assert[s] conduct by Defendants which directly or indirectly led to the alleged harm").

### 4.     It Is Likely, as Opposed to Merely Speculative, that the Injury Will Be Redressed by a Favorable Decision.

Plaintiff seeks monetary damages, including restitution for the money he paid for the hand-sanitizer, as well as an injunction barring Defendant from making the misrepresentation at issue on its product labeling.  It is likely, and not merely speculative, that this relief will compensate Plaintiff for his injury, as it will repay Plaintiff the money he spent for the product, which is the basis for his injury.[5]

---

[5] Further, since this case was removed from state court, even if the Court were to find that Plaintiff lacked standing, the proper recourse would be remand to California Superior Court, and not dismissal.  "In an ordinary removal case, '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.'" *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (emphasis in original) (quoting 28 U.S.C. § 1447(c)).  "The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case." *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### D.     Plaintiff Meets Rule 9(b)'s Heightened Pleading Standard.

"'[I]n alleging fraud or mistake,' Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.'" *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003)). "In addition, '[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id*. (quoting *Vess*, 317 F.3d at 1106); *see also Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir.1994) (en banc)).

Plaintiff has done precisely this.  He has alleged "who"—CVS—"what"—printed a misrepresentation on the front label of its hand-sanitizer, namely that it "kills 99.99% of germs" (Complaint, ¶ 2)—"when"—on August 1, 2019, when Plaintiff purchased a bottle of CVS Advanced Formula Hand Sanitizer (*id.*, ¶ 7)—"where"—on the CVS hand sanitizer bottle, sold at CVS stores and elsewhere (*id.*, ¶ 2)—and "how"—CVS printed the misleading statement on its labels in order to induce consumers to purchase its hand sanitizer.  (*Id.*, ¶ 5).  Plaintiff has also alleged why the statement is deceptive:  "The product labels are therefore materially misleading, in that they plainly state, in a manner giving the impression that it has been scientifically proven, that the product kills 99.99% of germs, when studies show that it does not kill many types of germs."  (*Id.*) Plainly, the label states that the product kills 99.99% of germs while studies show that it does not kill many types of harmful germs.  The statement on the label would lead one to believe that the product kills 99.99% of germs because that is what it precisely says.  And yet it is not so.  That is a false statement.  Accordingly, Plaintiff was misled.  And, in fact, under California law, a disclaimer on the back label cannot render a misstatement on the front label anything less than misleading.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018) ("You cannot take away in the back fine print what you gave on the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

front in large conspicuous print."). Further, the Complaint alleges that the back label *does not even take back* the promise on the front label, but merely provides an ancillary statement which is consistent with, and does not reduce the magnitude of, the promise on the front. (Complaint, ¶ 15). And that is, in fact, the case. The statement on the back label is, "[e]ffective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." (*Id.*) A hand sanitizer might, theoretically, be both effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds, and capable of killing 99.99% of all germs. The statement on the back doesn't state that the hand-sanitizer *doesn't* kill 99.99% of all germs. It would seem to be an extra promise, and not anything which takes away the promise on the front label.

Defendant's assertion that the Complaint does not describe how the misleading statement—"kills 99.99% of germs"—misled him into purchasing the product is simply a fairy tale. The Complaint states that "Plaintiff read these statements on the product labels and relied on them when purchasing the products," and further that, "Plaintiff believed that this statement meant that a scientific study proved that the product would kill 99.99% of all germs." (*Id.*, ¶ 16). Plaintiff was not required to delve further into his mental processes when purchasing the product than this. Once again ignoring the fact that Plaintiff's injury is the money he paid for the product, Defendant disingenuously asks which specific germ he believed himself protected from. Plaintiff believed that he was protected from 99.99% of all germs, and yet he was not. That is the basis for the fraud-based claims.

### E.   A Reasonable Consumer Would, Reading the False Statement on the Front Product Label, Be Misled.

Apparently conceding that the front label, alone, is misleading, Defendant argues that the entire label, taken as a whole, would not deceive a reasonable consumer. Yet it is firmly established that, under California law, a rear label cannot take back, especially in miniscule font, a promise made on a front label. In *Brady*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

9

1   *v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172, 237 Cal. Rptr. 3d 683, 696 (2018), the

2   court found that a false advertising case could proceed past the pleading stage where

3   the plaintiff alleged that the claim "one a day" on the front of a package for vitamin

4   gummies was misleading in light of the fact that two gummies per day was the

5   recommended dosage, per language on the back of the bottle.  The court found that

6   fact issues existed as to whether a consumer would even look on the back of the

7   bottle, holding that "[y]ou cannot take away in the back fine print what you gave

8   on the front in large conspicuous print. The ingredient list must confirm the

9   expectations raised on the front, not contradict them."  *Id.*[6]  At the very least, "the

10  extent to which" an asterisk and "additional language clarifies the ambiguity of the

11  representation is a fact question not suitable for resolution" on a motion to dismiss.

12  *Madenlian v. Flax USA Inc.*, 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31,

13  2014).

14      Defendant cites cases where promissory language on the front of a product

15  was qualified by prominent language which was also on the front of the product.

16  Indeed, California courts have held that language on the *front* of the product

17  packaging or labeling can qualify other promissory language also on the front of

18  the product.  *See Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1362-64,

19  1373-77 (2013).  But California courts have drawn the line against qualifying

20  language contained on the *back* of the product or product packaging, especially

21  where it is in a smaller font than the language on the front.  *See Brady*, 26 Cal. App.

22

23  ────────────────
[6] *See also Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008) ("We
disagree with the district court that reasonable consumers should be expected to

24  look beyond misleading representations on the front of the box to discover the truth
from the ingredient list in small print on the side of the box."); *Prata v. Superior

25  Court*, 91 Cal.App.4th 1128, 1145, 111 Cal.Rptr.2d 296, 309 (2001) ("The fact that
disclosures and the credit agreement issued by Bank One stating the 'details' of the

26  program may have explained that the program was, in fact, not as advertised, does
not ameliorate the deceptive nature of this advertising."); *Sperling v. Stein Mart,

27  Inc.*, No. CV1501411BROKKX, 2016 WL 11265686, at *5 (C.D. Cal. Mar. 15,
2016) (holding that defendant's asterisk leading to qualifying language was not "so

28  unambiguous and express such that a reasonable consumer is unlikely to be
deceived as a matter of law.").

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

10

5th at 1169–70 (explaining this difference as the "front-back dichotomy"); *Chapman v. Skype*, 220 Cal.App.4th 217, 223 (2013).  The language on the back cannot take back the promise on the front.  And the promise on the front, as shown, is literally false.  Accordingly, it is per se misleading.  "[T]here is no protection for literal falseness."  *Brady*, 26 Cal. App. 5th at 1167.[7]

Further, as noted above, the language on the rear label of the bottle does not actually take back the promise on the front of the bottle, but merely provides a second promise—"[e]ffective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds"—which does not even imply that the product does not kill 99.99% of germs.  Instead, the language on the back label puts forward a new claim as to the amount of time it takes the hand-sanitizer to kill an amorphous subset of germs.  The most reasonable interpretation of both promises is that the hand-sanitizer kills 99.99% of all germs, and that it also kills 99.99% of an undefined subset of germs in as little as 15 seconds.  Accordingly, even if all of the labeling were to be analyzed together, as Defendant suggests, that labeling would still contain a false promise.

### F.    Plaintiff States a Valid False Advertising Law Claim.

Defendant argues that Plaintiff "fails to allege facts, rather than self-serving conclusory statements, supporting his claim that the products were advertised as effective at eliminating 99.99% of all disease-causing microorganisms."  Plaintiff has alleged the plain statement of the front label of the product, which states that the product "kills 99.99% of germs."  The label's plain language is a fact.  Since the product plainly states that it kills 99.99% of germs, Plaintiff need only allege the label itself in order to allege that Defendant did in fact advertise its products as effective at eliminating 99.99% of all disease-causing microorganisms.[8]

---

[7] *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 36 (1st Cir. 2000) (plaintiff stated a claim under the Lanham Act based on literal falsity of product name); *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 638 (N.D. Cal. 2019) (literal falsity as basis for false advertising claims).
[8] It is important to note that, under the False Advertising Law, Plaintiff need not

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### G.   Plaintiff States a Valid UCL Claim Under All Three Prongs.

Plaintiff states a valid UCL claim under the fraudulent prong by stating a claim under the False Advertising Act; as shown, he has done so.  *McMahon v. Take-Two Interactive Software*, Inc., 640 F. App'x 669, 671 (9th Cir. 2016). Plaintiff also states a valid claim under the "unfair" and "unlawful" prongs. "'Unfairness' is statutorily undefined; as such, courts apply three tests under the UCL's unfair prong when evaluating a defendant's practices." *Soo v. Lorex Corp.*, No. 20-CV-01437-JSC, 2020 WL 5408117, at *6 (N.D. Cal. Sept. 9, 2020) (citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015)). "The first, the 'tethering test,' requires 'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL [ ] be tethered to specific constitutional, statutory, or regulatory provisions.'" *Id.* (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). "The second 'balancing test' asks whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (quoting *Drum*, 182 Cal. App. 4th at 257). "The third test 'requires: (1) that the consumer injury be substantial; (2) that the injury not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided.'" *Id.* (quoting *Drum*, 182 Cal. App. 4th at 257).

Plaintiff has satisfied all three tests.  As to the first, the "tethering test," the Complaint alleges that "Defendant's false advertisement is violative of public

---

allege that CVS knew or had reason to know that the false statements were false. Instead, "[t]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 207 P.3d 20, 29 (2009)).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

policy as expressed in the False Advertising Law." (Complaint, ¶ 62). The False Advertising Law is a specific statutory provision to which the claim is tethered.

As to the second, the "balancing test," the Complaint alleges that "Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members . . . because they induce consumers to make purchases that they would not otherwise make, in expectation of receiving benefits that they do not receive." (*Id.*, ¶ 61). Weighing the utility of defendant's conduct against the gravity of the harm, the Complaint alleges that "the impact of the practice against Plaintiff and the Class Members far outweighs an possible justification or motive on the part of Defendant," that impact being the loss of money paid directly to Defendant based on a false promise, and that "Defendants can have no possible justification for including a false inducement to purchase its product." (*Id.*)

As to the third test, the Complaint defines a substantial consumer injury in the form of lost money paid for hand-sanitizer that did not live up to the promises on its label (*id.*, ¶ 39), and alleges that it is not outweighed by countervailing benefits, (*id.*, ¶ 61), and that "Plaintiff and the Class Members could not reasonably have avoided this injury because they relied on Defendants' advertisement as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do." (*Id.*) Plainly, each test was met.

Plaintiff also states a claim under the "unlawful" prong because the practices violate the False Advertising Law. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) (FAL claim "may serve as predicate violation[] for a claim under the UCL's 'unlawful' prong."). As shown, the False Advertising Law claim is well-pled; accordingly, the "unlawful" prong is also satisfied.

## H.    Plaintiff States a Valid Intentional Misrepresentation Claim.

Defendant alleges that the statement, "kills 99.99% of germs," is not misleading because it doesn't indicate that the product kills, in fact, 99.99% of

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

germs.  As shown, Defendant is wrong.  *Brady*, 26 Cal. App. 5th at 1167 ("[T]here is no protection for literal falseness.").  Defendant's only other objection to this claim is that "Plaintiff has not, and cannot, allege that CVS acted with the requisite fraudulent intent to deceive."  But Plaintiff has alleged that Defendant was aware, or should have been aware, of studies showing that its product does not kill many types of germs.  This is sufficient to plead fraudulent intent.  *See In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 639 (S.D.N.Y. 2008), *abrogated on other grounds by Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016).  Further, Plaintiff has alleged that Defendant specifically placed the statement on its label in order to induce consumers to buy its product.   (Complaint, ¶ 37).  Nonetheless, Defendant argues that its inclusion of the language, "[e]ffective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds," on the back label was inconsistent with any intent to deceive.  On the contrary, the inclusion of a disclaimer in small lettering on the back of the bottle, indicates two motivations:  to deceive, and to get away with it.

## I.      Plaintiff's Intentional and Negligent Misrepresentation Claims Are Not Barred by the Economic Loss Rule.

The economic loss rule does not apply, under California law, where an independent duty was breached. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989, 102 P.3d 268, 273 (2004) ("a party's contractual obligation may create a legal duty and that a breach of that duty may support a tort action.").  One example of a breach of an independent duty arises in actions for fraud, such as has been alleged here.  *Id*. at 990; *see also Las Palmas Assocs. v. Las Palmas Ctr. Assocs*., 235 Cal. App. 3d 1220, 1230, 1 Cal. Rptr. 2d 301, 305 (1991); *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999).[9]

---

[9]  *Jacobs v. Sustainability Partners LLC*, No. 20-CV-01981-PJH, 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020) (promissory fraud claim for fraudulent inducement sufficient to trigger exception to economic loss rule); *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *5 (N.D. Cal. Mar. 29, 2017) ("[F]raudulent inducement is a well-recognized exception to the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

The negligent misrepresentation claim is also not barred because it too involves the breach of an independent duty. *Robinson Helicopter*, 34 Cal. 4th at 991 (tort damages available where the "tortious conduct was separate from the breach itself"). As expressed in the False Advertising Law, companies who place products on the shelves are under a duty to consumers to truthfully advertise those products on the product labeling, and elsewhere. Defendant breached that duty independently of any contract when it included a false statement on the product packaging. While the purchase is required to show damages, the breach of the duty took place as soon as Defendant placed its product, with the false statement on its label, on the shelves.

The economic loss rule is inapplicable for an additional reason as well: under *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804, 598 P.2d 60, 63 (1979), a special relationship exists between Plaintiff and Defendant. The "special relationship" exception does not, despite its name, depend on an ongoing business or fiduciary relationship between the parties. *Id*. The factors courts must consider are as follows:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the

economic loss rule.") (quoting *Lee v. Fed. St. L.A.*, 2016 WL 2354835, at *9 (C.D. Cal. May 3, 2016)); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) ("[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud.") (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 645, 909 P.2d 981, 990 (1996)); *Joli Grace, LLC v. Country Visions, Inc.*, No. 2:16-1138 WBS EFB, 2016 WL 6996643, at *9 (E.D. Cal. Nov. 30, 2016) ("the economic loss rule does not bar a properly pled fraudulent inducement claim"); *J2 Cloud Servs., Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2016 WL 6833904, at *4 (C.D. Cal. Nov. 18, 2016) ("economic loss rule cannot preclude Plaintiffs' promissory fraud claim at this stage of the litigation").

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

policy of preventing future harm.

*Id*. at 804.  "All six factors must be considered by the court and the presence or absence of one factor is not decisive." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d at 968 (citing *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605-06 (9th Cir. 2008)).

Each factor weighs in favor of tort liability.  First, as the consumer, Plaintiff was the target of the transaction, and it was intended to affect him to a high degree, which is demonstrated by companies such as CVS's marketing budgets.  Second, the foreseeability of harm to Plaintiff was high.  CVS knew, or had strong reason to know, that its product did not kill 99.99% of all germs and also knew or had reason to know that its label advertisement would induce persons like Plaintiff to purchase the hand-sanitizer.  Once purchased, there was reason to believe that persons like Plaintiff would not be receiving the product they intended to purchase, because its label contained a false promise.  Third, it is certain that Plaintiff suffered injury.  Plaintiff paid money for a product that was not as advertised.  As shown above, that is a de facto injury under California and Ninth Circuit law.  Fourth, defendant's conduct was very closely connected to the injury suffered.  Plaintiff purchased the product in reliance on the label's claim.  Were it not for that claim, he would not have purchased it.  Fifth, Defendant's conduct is morally blameworthy.  It is immoral to promise on the front label of a product that the product has attributes that it does not have.  Doing so creates an opportunity to enrich oneself at the expense of the public.  And sixth, it is sound public policy to disincentivize behavior such as Defendant's by holding companies who lie to the public liable.

**J.      Under Controlling Supreme Court Precedent, Plaintiff's Claims Are Not Expressly Preempted by the FDCA.**

"Our preemption analysis is . . . guided by the presumption that 'because the States are independent sovereigns in our federal system, . . . Congress does not cavalierly preempt state-law causes of action.'" *Ventress v. Japan Airlines*, 603

F.3d 676, 682 (9th Cir.2010) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).  The FDCA does not have an express preemption provision applicable to hand-sanitizer.  *Wyeth v. Levine*, 555 U.S. 555, 574, 129 S. Ct. 1187, 1200, 173 L. Ed. 2d 51 (2009) ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70–year history.").[10] Defendant has put forward no statutory language exempting state law claims for hand-sanitizer.  That the FDCA does not create a private right of action itself does not entail that it preempts other private rights of action.  Accordingly, express preemption simply does not exist here.

### K.   Neither Field Preemption Nor Conflict Preemption Apply.

Ninth Circuit precedent as well as district court cases in the Ninth Circuit are inconsistent with a finding that Congress intended to occupy the entire field of food and drug regulation in passing the FDCA.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015) ("[T]he FDCA does not preempt state laws that allow consumers to sue cosmetics manufacturers that label or package their products in violation of federal standards.")[11]

---

[10] *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 327, 128 S. Ct. 999, 1009, 169 L. Ed. 2d 892 (2008) ("Congress could have applied the pre-emption clause to the entire FDCA. It did not do so, but instead wrote a pre-emption clause that applies only to medical devices.").  "Its silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness."  *Wyeth*, 555 U.S. at 574.  "As Justice O'Connor explained in her opinion for a unanimous Court: 'The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.'" *Id.* (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–167, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989)).

[11] *See also Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 797 (N.D. Cal. 2015) (FDCA does not occupy entire field with regard to food regulation); *In Re: Juul Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2020 WL 6271173, at *13 (N.D. Cal. Oct. 23, 2020) (field preemption "not contemplated by the text, history, and precedent under and in light of the Congressional amendments to and extension of the Federal Food Drug, and Cosmetic Act (FDCA)"); *Berke v. Whole Foods Mkt., Inc.*, No. CV 19-7471 PSG (KSX), 2020 WL 5802370, at *8–10 (C.D. Cal. Sept. 18, 2020) ("false advertising

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

17

Against this authority, Defendant puts forward no statutory provision that would indicate that Congress intended to occupy the entire field of hand-sanitizer regulation.  Defendant puts forward a proposed rule which includes proposed regulations for topical antimicrobial drug products.  Topical Antimicrobial Drug Products for Over-the-Counter Human Use; Tentative Final Monograph for Health-Care Antiseptic Drug Products, 59 FR 31402-01.  But there is nothing in this proposed rule that indicates that federal rulemaking occupies the entire field, or that state law causes of action are prohibited.  Further, this proposed rule has been superseded by the 2019 Rule, Safety and Effectiveness of Consumer Antiseptic Rubs; Topical Antimicrobial Drug Products for Over-the-Counter Human Use, 84 FR 14847-01.  In that Rule, the FDA expressly left open whether alcohol-based antiseptic rubs were safe for use.  84 FR 14847-01, 14848 ("FDA does not make a generally recognized as safe and effective (GRAS/GRAE) determination in this document for these three active ingredients for use in OTC consumer antiseptic rubs."). This hardly indicates an intent to occupy the field.

Conflict preemption also does not apply.  Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law either when "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and

claims that rely on voluntary, positive statements about a product are not preempted"); *Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020) (lawsuit challenging use of "mineral-based" on packaging not preempted by the FDCA); *Tabler v. Panera, LLC*, Case No, 19-cv-01646-LHK, 2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019) (lawsuit challenging use of "clean" or "100% clean" in food packaging not preempted by the FDCA); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-CV-110-JLS-JCGX, 2018 WL 10612686, at *3 (C.D. Cal. Aug. 20, 2018) ("Should Tran ultimately prevail in her suit, requiring Sioux Honey to remove the words "Pure" or "100% Pure" from its Sue Bee Products would not conflict with any FDA regulation."); *Hitt v. Arizona Beverage Co., LLC*, No. 08 CV 809 WQH (POR), 2009 WL 449190, at *5 (S.D. Cal. Feb. 4, 2009) ("[T]here is nothing in the statutory provisions of FDCA, its implementing regulations or its legislative history to suggest that Congress intended to exclusively occupy the field of labeling beverages that purport to contain fruit.").

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

18
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

objectives of Congress." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985)).  "There is a presumption against conflict preemption when state law 'operates in a field that 'has been traditionally occupied by the States.''" *Tran*, 2018 WL 10612686 at *3 (quoting *De Buono v. NYSA-ILA, Med. and Clinical Servs. Fund*, 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (citation omitted). "'Because the regulation of health and safety is a field traditionally occupied by states,' the presumption against preemption applies to this case." *Id*. (citing *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1014 (S.D. Cal. 2016); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

Here, conflict preemption does not exist because there is simply no conflict. As noted, the applicable 2019 Rule does not determine whether alcohol-based hand sanitizers are even safe for use.  84 FR 14847-01, 14848.  Neither does it include any regulation as to what claims hand-sanitizers can make as to efficacy in killing germs.  *Id*.  Compliance with the 2019 Rule and the state laws underlying Plaintiff's causes of action is quite feasible.  As such, Plaintiff's causes of action do not stand as an obstacle to the accomplishment and execution of the 2019 Rule.  The 2019 Rule is primarily concerned with the ineligibility status of certain ingredients—not alcohol—that were identified in the 2016 proposed rule.   Rulemaking as to benzalkonium chloride, ethyl alcohol, and isopropyl alcohol, has been deferred.  *Id*. Nothing in the rule permits hand-sanitizers to make any specific claims regarding efficacy at killing germs.  *See Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010) ("defendants have not persuaded the court that plaintiff's state law claims obstruct federal regulation of food labeling, particularly statements of geographic origin."); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1034 (N.D. Cal. 2009) ("A manufacturer could comply, that is, not violate, the FDA's policy as to use of the term 'natural' and still comply with state law as articulated by plaintiffs in this case.")

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The 1994 Proposed Rule cited by Defendant actually prohibits the type of claim being made by Defendant here when it states, "[t]here must be no claims, either direct or by implication, that a product has any activity against an organism or that it reduces the number of organisms for which it has not been tested." 59 FR 31402-01, 31442. That is precisely what Defendant has done: claimed to eliminate germs which it has not tested. Where claims are in line with FDA regulations, so long as there is an independent basis for the claims, they are not preempted. *Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020) (No conflict preemption exists where "Plaintiffs' claim that Defendants mislead by calling their sunscreen is 'mineral-based' is in line with FDA regulations."); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1074 (S.D. Cal. 2019) ("The FDCA therefore does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws."). Further, the 1994 Proposed Rule has never been adopted; accordingly, no regulations are in place covering the offending advertisement.

## L.      Primary Jurisdiction Doctrine Does Not Apply.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "The doctrine is a 'prudential' one, 'under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *In Re: Juul Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2020 WL 6271173, at *6 (N.D. Cal. Oct. 23, 2020) (quoting *Clark*, 523 F.3d at 1114); *see also Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir.2002)). However, "[n]ot every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

20

the doctrine is reserved for a 'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark*, 523 F.3d at 1114). "[T]he doctrine is not designed to 'secure expert advice' from agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002). It is "[c]ommon sense," for example, that "even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Id.*

"Courts consider several factors when considering primary jurisdiction, including whether the issue (1) is within the conventional experience of judges; (2) 'involves technical or policy considerations within an agency's field of expertise'; (3) is 'particularly within the agency's discretion'; or (4) 'there exists a substantial danger of inconsistent rulings.'" *Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958, at *3 (N.D. Cal. July 31, 2020) (quoting *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1049-50 (9th Cir. 2011) (internal quotations omitted). "The Ninth Circuit has cautioned that primary jurisdiction is inappropriate 'when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.'" *Id.* (citing *Astiana*, 783 F.3d at 761). "The deciding factor should be efficiency." *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1165 (9th Cir. 2007). Accordingly, the first two, most important factors, are (1) efficiency, and (2) the delay from the stay. *In Re: Juul Labs*, 2020 WL 6271173, at *6.

Defendant has failed to analyze any of these factors. Had it done so, it would have been led to the ineluctable conclusion that, as in many other cases for false advertising implicating the FDA, the primary jurisdiction doctrine is inapplicable here. For instance, in *In re: Juul Labs*, 2020 WL 6271173, at *6, in which the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

21

defendant had recently filed a premarket tobacco application with the FDA as to which the FDA would likely soon issue a ruling, the court found that primary jurisdiction nonetheless did not apply because the FDA's action would be forward-looking, and not address the past harms at issue in the plaintiff's claims.[12]

Here, the factors weigh even more strongly against a stay or dismissal. First, unlike in *In Re: Juul Labs*, there is no pending action on behalf of the FDA which relates specifically to Defendant. Defendant has produced language from the FDA's website—which was not attached to Plaintiff's Complaint, and therefore cannot be considered by the Court, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)—which nonetheless indicates merely that the FDA is looking into product safety of hand-sanitizers, and not the permissibility of any specific claims made on the product labels. The FDA is not determining whether Defendant can tell consumers that its product kills 99.99% of germs. Even if it were, as in *In Re: Juul Labs*, that determination would be forward-looking, and would not grant the relief for past injury which Plaintiff seeks in this lawsuit. Accordingly, the "deciding factor" of efficiency weighs even more strongly against a stay here than it did in *In Re: Juul Labs*.

---

[12] *See also Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958, at *5 (N.D. Cal. July 31, 2020) (primary jurisdiction inapplicable to suit alleging that sunscreen label contained misleading statement despite FDA's proposed rule that had been under consideration over a year prior); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *7 (N.D. Cal. Oct. 29, 2019) ("The question of whether Plaintiff's statements about the Products are misleading thus does not require the Court to determine 'a particularly complicated issue that Congress has committed to' the EPA." *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *7 (N.D. Cal. Oct. 29, 2019) (quoting *Clark*, 523 F.3d at 1114). "Indeed, Plaintiff's complaint is 'far less about science than it is about whether a label is misleading.'" *Id.* (quoting *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012)). Furthermore, "'every day courts decide whether conduct is misleading,'" and the "'reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'" *Jones*, 912 F. Supp. at 899 (quoting *Lockwood*, 597 F. Supp. 2d at 1035, and *Delacruz v. CytoSport*, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012)); *see also Chacanaca v. The Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (stating that plaintiffs advance a "relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. This is a question courts are well-equipped to handle").

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

22

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    The same concern—the lack of a terminable process in place with the FDA—

2    means that the second factor, the delay from a stay, would be indefinite.  That is

3    simply not acceptable where the rights of a substantial class of consumers is at stake.

4    The class members have paid for a product that does not do what it says it does, and

5    they deserve redress against Defendant for its ill-gotten gains.  Defendant cannot

6    evade liability forever because the FDA puts guidance for consumers on its website.

7        The remaining factors also weigh against a stay.  First, as the court held in

8    *Prescott*, "false advertising suits like this one are squarely within the conventional

9    experiences of judges and courts."  2020 WL 4430958 at *4.  "[E]very day courts

10   decide whether conduct is misleading, and the reasonable-consumer determination

11   and other issues involved in Plaintiff's lawsuit are within the expertise of the courts

12   to resolve.'" *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529,

13   at *7 (N.D. Cal. Oct. 29, 2019) (internal quotations omitted).  Second, this case does

14   not involve technical or policy considerations within the FDA's field of expertise.

15   As in *Prescott*, "the crux of [Plaintiff's] lawsuit concerns whether Defendants'

16   description of their product is misleading."  Accordingly, the suit does not require

17   the Court to determine anything regarding the chemical make-up of the hand-

18   sanitizer.  The most science that is required of the Court is to determine that alcohol

19   does not kill 99.99% of germs.  And that has been proven in the scientific studies

20   linked in Plaintiff's Complaint.  Indeed, as in *Prescott*, Defendant appears to

21   concede this issue of active ingredients, that ethyl alcohol does not kill 99.99% of

22   all germs.  Neither is the question particularly within the FDA's discretion.  On the

23   contrary, questions regarding the misleading nature of product labeling is uniquely

24   within the realm of the courts, as is shown by the fact that, when the 1994 Proposed

25   Rule was published, it included commentary to that the labeling issue was not

26   properly before the FDA, but reserved for the courts.  *See* 59 FR 31402-01, 31408.

27   ("Several comments contended that FDA does not have the authority to restrict

28   OTC labeling claims to exact wording.").  Finally, there does not exist a substantial,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

23

or even minor, risk of inconsistent rulings.  The FDA, when it has spoken on this issue, has indicated that hand-sanitizers may not state that they eliminate germs which have not been tested, which the statement at issue plainly does.  59 FR 31402-01, 31442.  Further, as over twenty-five years have passed since that proposed rule was issued, with no final rule addressing labeling being propounded, there is little risk that the FDA plans to issue a final ruling on the subject.  *Prescott*, 2020 WL 4430958, at *4 ("Heeding the Ninth Circuit's guidance that '[t]he deciding factor should be efficiency,' it makes little sense to halt this lawsuit because of a proposed rule that was under consideration over a year ago.").

### M.   Plaintiff Is Entitled to Equitable Relief.

"A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (citing *Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357, 1368 (1994) ); *see also Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").  Here, there is no adequate remedy at law, supporting both injunctive relief and restitution.

First, as to injunctive relief, Plaintiff seeks to prevent Defendant from continuing to lie to its customers in the future.  No award of monetary damages will stop Defendant from continuing to print on its bottles that its hand-sanitizer kills 99.99% of germs.  Nothing will stop innumerable innocent and guileless consumers from paying for a product that does not do what it plainly promises on its front label to do.  An injunction is, by its nature, forward-looking.  "The purpose of a prohibitory injunction is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1266, 29 Cal. Rptr. 3d 521, 551 (2005) (citation omitted).  There is no adequate remedy at law which will prevent Defendant from continuing to print "Kills 99.99% of germs" on its

24

front label; accordingly, there is no adequate remedy at law which will grant Plaintiff the relief that his injunction seeks.

Second, as to restitution, Plaintiff seeks a full refund of the price he paid for the hand-sanitizer.  His damages for his actions at law will be limited to "the difference between the actual value" of the price of the hand-sanitizer and "the actual value of that which he received," *i.e.*, the actual value of the hand-sanitizer. Cal. Civ. Code § 3343.  Accordingly, for his actions at law, Plaintiff will not receive the full price he paid for the hand-sanitizer.  Restitution has two purposes: "to restore the defrauded party to the position he would have had absent the fraud," and "to deny the fraudulent party any benefits, whether or not for[e]seeable, which derive from his wrongful act." *Nelson v. Serwold*, 687 F.2d 278, 281 (9th Cir.1982) (citing the Restatement of Restitution).  Those purposes are only served by a return of Plaintiff's full purchase price.  However, as noted, that remedy is not available at law.  Therefore, Plaintiff has no adequate remedy at law.[13]

## IV. CONCLUSION

Respectfully, Defendant's motion should be denied in its entirety.  Should the Court in its discretion choose to grant Defendant's motion in any respect, Plaintiff respectfully requests leave to amend.

Dated: November 2, 2020                    Respectfully submitted,


                                           /s/ *Robert J. Dart*
                                           Justin F. Marquez, Esq.
                                           Thiago M. Coelho, Esq.
                                           Robert J. Dart, Esq.

---

[13] Defendant's caselaw is, once again, unavailing.  In *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1093 (C.D. Cal. 2015), restitution was unavailable because the plaintiff failed to allege that he paid any money to the defendant—he had merely downloaded a free app.  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 784, 192 Cal. Rptr. 3d 881, 886 (2015) affirmed a bench trial verdict issued after the parties had the chance to gather and produce evidence at trial, and does not set forth a pleading standard.  Likewise, *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) dealt with a damages limitation on class certification, and did not set forth a pleading requirement.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

25

Cinela Aziz, Esq.

*Attorney for Plaintiff Joseph Mier and the putative class*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS