## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS            Date: March 22, 2021

Title: JOSEPH MIER v. CVS PHARMACY, INC. ET AL

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [8]**

Before the Court is a Motion to Dismiss ("Motion") (Dkt. 8) brought by Defendants CVS Pharmacy ("CVS" or "Defendant") and Vi-Jon, LLC ("Vi-Jon")[1] (collectively, the "Defendants"). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.

Having reviewed the moving papers submitted by the parties, the Court now GRANTS in part and DENIES in part Defendants' Motion.

**I. Background**

    **A. Facts**

Unless otherwise stated, the following facts are drawn from Plaintiff Joseph Mier's ("Plaintiff" or "Mier") original Complaint ("Compl.") (Dkt. 1-2) in this action. This putative class action stems from Plaintiff's allegations that CVS's Advanced Formula Hand Sanitizer,

---

[1] Defendant Vi-Jon, LLC joined the Motion (Dkt. 32).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS												Date: March 22, 2021

Page 2

(the "Product") misleads consumers by representing that it kills 99.99% of germs. Compl. ¶ 2, 24.

Plaintiff purchased a bottle of CVS's Advanced Formula Hand Sanitizer on or about August 1, 2019. *Id.* ¶ 2. The front label of the Product read "Kills 99.99% of Germs*." *Id.* ¶¶ 2, 15. The asterisk on the front label refers the consumer to language on the back label "*Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." *Id.* ¶ 15; Mot. at 3. Plaintiff alleges that a reasonable consumer reading the front label would believe that the Product kills 99.99% of all germs. *Id.* ¶¶ 2-5, 16-22. Plaintiff contends the statement on the front label is extremely doubtful in light of evidence that shows many types of germs are not killed by alcohol-based hand sanitizers and no scientific evidence supports the claim that alcohol-based hand sanitizers kill 99.99% of all germs. *Id.* Accordingly, Plaintiff asserts that the Defendant misled him and other class members into "purchas[ing] hand-sanitizer which does not perform as advertised." *Id.* ¶ 6.

Defendant CVS Pharmacy is a Rhode Island corporation that does substantial business, including selling its health products, in Orange County, California. *Id.* ¶ 8. Defendant Vi-Jon, LLC is the manufacturer of the CVS product at issue, Advanced Formula Hand Sanitizer. Motion to Intervene (Dkt. 12).

In response, CVS maintains that its labels are not misleading to a reasonable customer. Mot. at 1, 10-13. CVS claims that the statements on its labels are truthful, well substantiated by product testing, and are not misleading to a reasonable consumer. Mot. at 3-4, 10-15, 17-18. CVS further asserts that the Products are labeled in compliance with Food and Drug Administration's (FDA) guidelines and are regulated exclusively by the FDA. Mot. 16-22. Accordingly, CVS denies that Plaintiff is entitled to any of the relief that he seeks. Mot. at 22-23.

  **B.**  **Procedural History**

On May 26, 2020, Plaintiff filed the original Complaint in the Superior Court of California, County of Orange. The Defendant removed the case to the United States District Court, Central District of California on October 13, 2020. Notice of Removal (Dkt. 1). The Complaint states the following four claims:

  (1) Intentional Misrepresentation,
  (2) Negligent Misrepresentation,
  (3) Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, and
  (4) Violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

*See generally* Compl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                Date: March 22, 2021

Page 3

Defendants brought the instant Motion (Dkt. 8) on June 1, 2020, seeking the dismissal of all claims for Plaintiff's lack of standing, failure to state a claim, preemption by federal law, preclusion from equitable relief, and ineligibility for restitution. Plaintiff filed their Opposition ("Opp'n.") (Dkt. 40) on June 22, 2020, and Defendants submitted their Reply (Dkt. 45) on November 11, 2020.

## II.     Legal Standard

### A.     Rule 12(b)(1)

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) when a court lacks subject matter jurisdiction due to a plaintiff's lack of Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (noting that Article III standing bears on the court's subject matter jurisdiction, and is therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1)).

The "irreducible constitutional minimum" of Article III standing contains three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.*; *see also Spokeo v. Robins*, 136 S. Ct. 1540, 1548–49 (2016). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 560. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id. Ultimately, the plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements. See id. at 561.

Under Rule 12(b)(1), a defendant may also move to dismiss a case for a lack of subject matter jurisdiction when it is not clear that the proper jurisdictional requirements have been met. See Fed. R. Civ. P. 12(b)(1). Federal district courts generally have subject matter jurisdiction over civil cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. See Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1068 (9th Cir. 2005).

### B.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide

Case 8:20-cv-01979-DOC-ADS   Document 46   Filed 03/22/21   Page 4 of 18   Page ID #:1588

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                                                 Date: March 22, 2021

Page 4

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

      **C.**      **Leave to Amend**

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**III.**      **Discussion**

      **A.**      **Injury-in-fact**

CVS argues that Plaintiff did not show that he suffered any palpable injury to establish standing under Article III. Mot. at 5. Plaintiff responds that he satisfied the injury-in-fact requirement when he paid more for the Product than he would have had he known that it would not perform as advertised. Opp'n. at 5.

To satisfy the injury-in-fact requirement, the Supreme Court has held that the injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Spokeo, Inc.*, 136 S. Ct. at 1545. An injury is "particularized" if the effects of the alleged wrongdoing actually "affect the plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S. Ct. at 1548. To be "concrete" the injury must be "de facto; that is, it must actually exist." *Id.*

The Court finds that the Plaintiff has satisfied the injury-in-fact requirement. Under California law, a plaintiff suffers an economic injury in fact for purposes of Article III standing if she "would not have bought [a] product but for [some] misrepresentation." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 890 (2011) ); *Omidi v. Wal-Mart Stores, Inc.*, 742 F. App'x 260, 262 (9th Cir. 2018).

Here, Plaintiff has alleged that he would not have bought the Product had he known that it does not kill 99.99% of all germs. Plaintiff claims that the Product's front label misleads a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                                                   Date: March 22, 2021

Page 5

reasonable consumer into believing the Product kills 99.99% of all germs. Compl. ¶ 5. Plaintiff relied on this belief when purchasing the Product. *Id.* ¶ 16. However, as the Plaintiff alleges and CVS does not deny, the Product does not actually kill 99.99% of all germs. *Id.* ¶ 17; *see* Mot. at 11-12. Plaintiff asserts that "he would not have purchased [the Product] had he known that the misrepresentation on the front label of the product were in fact misrepresentations." Opp'n. at 6. Thus, Plaintiff has satisfied the injury-in-fact requirement by alleging that he "would not have bought [the Product] but for [the] misrepresentation." *See Hinojos v. Kohl's Corp.*, 718 F.3d at 1104 (citations omitted).

Accordingly, the Motion with respect to the injury-in-fact requirement is DENIED.

### B.      Rule 9(b)

Next, CVS argues that Plaintiff's claims for fraud do not meet the heightened standard for fraud pleadings under Rule 9(b). Mot. at 8. Plaintiff disagrees and asks for leave to amend if necessary. Opp'n. at 8-9, 25.

#### 1.      Legal Standard

Federal Rule of Civil Procedure 9(b) governs pleading the special matters of fraud, mistake, and conditions of mind. An allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This standard applies to claims arising under state law, and requires a claimant to set forth "the who, what, when, where, and how" of the alleged fraud, including "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 371 F.3d 1097, 1103, 1107 (9th Cir. 2003). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103.

This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

#### 2.      Discussion

The Court finds that the Complaint provides enough detail to satisfy Rule 9(b). Plaintiff specifies what statement on the Product's label was misleading—"kills 99.99% of germs" (Compl. ¶ 2); where and when the statement was made—on a bottle of CVS Advanced Formula

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                            Date: March 22, 2021

Page 6

Hand Sanitizer that the Plaintiff purchased from a CVS store on August 1, 2019 (*id.* ¶ 2,7); and how is was misleading—CVS printed a misleading statement on the Product's front label, which "combined with the disclaimer on the back of the packaging, created the false impression that the product would in fact kill 99.99%" upon which the Plaintiff relied in purchasing the Product. (*id.* ¶ 10). Other courts have found such allegations to be sufficient for the heightened pleading standard for fraud. *See, e.g., Ang v. Bimbo Bakeries USA, Inc.,* 2013 WL 5407039, *3 (N.D.Cal.2013) ("[P]laintiffs have identified 'the who' as defendant and 'the when' as the timeframe for the class allegations. Plaintiffs have also identified with specificity the precise representations alleged to be illegal, fraudulent, and misleading, as well as the specific products on which that language is found.") (emphasis omitted); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D.Cal.2010) ("[P]laintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used. As such, they have satisfied the requisite 'who, what, when, where, and how' of the misconduct charged.").

Whether Plaintiff will be able to prove the elements of misrepresentation and fraud is not properly before the Court at this juncture. CVS, though, has clear notice of the conduct underlying Plaintiff's claims and ample opportunity to prepare defenses to these accusations. Consistent with controlling Ninth Circuit interpretation of the requirements of Rule 9(b), the Court thus finds that Plaintiff has met the heightened pleading requirement and may proceed with these claims.

Relatedly, CVS argues that Plaintiff's claims put forth a lack of substantiation argument which is not permissible under California law. Mot. at 9. The Court disagrees. "In the false advertising context, an advertising claim is false if it has actually been disproved, that is, if the plaintiff can point to evidence that directly conflicts with the claim." *Nathan v. Vitamin Shoppe, Inc.*, 2019 WL 1200554, *3 (S.D. Cal. 2019) (internal quotation marks omitted). By contrast, lack of substantiation claims "arise[ ] where, absent any evidence suggesting a representation is false or misleading, a plaintiff demands a defendant either 'put up or shut up.'" *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 876 (N.D. Cal. 2016).

Here, Plaintiff refers to scientific studies that show that hand sanitizer, including the Product, do not kill 99.99% of all germs. Compl. ¶¶ 18-21. Specifically, the studies show that certain types of bacteria are becoming alcohol-resistant and that alcohol-based hand sanitizers do not kill many non-enveloped viruses, bacterial spores, and protozoan cysts. *Id.* Because the Plaintiff has put forth evidence that shows why CVS's claims on the Product are false, Plaintiff's claims do not fall under the lack of substantiation category.

Accordingly, the Motion with respect to the Rule 9(b) standard is DENIED.

  **C.**  **Reasonable Consumer**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS　　　　　　　　　　　　　　　　　Date: March 22, 2021

Page 7

CVS contends that Plaintiff is not a reasonable consumer because a reasonable consumer, reading the labels as a whole, would not interpret them to mean that the Product "kill[s] every conceivable disease-causing microorganism." Mot. at 10. Plaintiff responds that under California law, qualifying "language on the back cannot take back the promise on the front." Opp'n. at 10-11.

### 1.　　Legal Standard

Under California law, claims under the False Advertising Law (FAL) and Unfair Competition Law (UCL) are governed by the reasonable consumer test. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted). Under the reasonable consumer standard, a plaintiff must "show that members of the public are likely to be deceived." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (quotations omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal.Rptr.2d 486 (2003). Rather, it must be "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* The relevant consumer is "the ordinary consumer within the larger population," not the "least sophisticated consumer" nor one that is "exceptionally acute and sophisticated." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304, 128 Cal.Rptr.3d 109 (2011) (citation omitted).

Generally, however, "whether a reasonable consumer would be deceived...[is] a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "In *rare* situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193; *see, e.g., Werbel ex rel. v. Pepsico, Inc.*, No. 09–cv–04456–SBA, 2010 WL 2673860, at *3 (N.D.Cal. July 2, 2010) (a reasonable consumer would not be deceived into believing that cereal named "Crunch Berries" derived significant nutritional value from fruit) (emphasis added). This action does not present one of those rare situations.

### 2.　　Discussion

On the front label, the Product claims that it "[k]ills 99.99% of germs." Compl. ¶ 3. Plaintiff alleges that the Product does not kill 99.99% of all germs. *Id.* ¶ 17. CVS asserts that the labels are not misleading because it truthfully states on the back label that the Product is "[e]ffective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." Mot. at 10. Whether this qualification on the back label clears up a consumer's potential confusion that the Product kills 99.99% of germs is a question of fact not appropriate for the pleadings stage. If anything, as the Plaintiff suggests, the mention of the Product's speed

Case 8:20-cv-01979-DOC-ADS   Document 46   Filed 03/22/21   Page 8 of 18   Page ID #:1592

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                                        Date: March 22, 2021

Page 8

and efficiency on the back label may be read as an additional claim, having the effect of reassuring a consumer of the Product's efficacy. Opp'n. at 11.

Furthermore, even if we were to accept CVS's argument that no reasonable consumer viewing the package as a whole would conclude that the Products contain collagen, the Ninth Circuit has warned that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939. Therefore, the Court determines that Plaintiff has stated a plausible claim that a reasonable consumer would be deceived by CVS's labeling.

Accordingly, the Motion with respect to the reasonable consumer standard is DENIED.

### D.    False Advertising Claim

CVS argues that Plaintiff's conclusory accusations are insufficient to establish a claim under False Advertisement Law ("FAL"). Mot. at 13. Plaintiff counters that he need only to state the alleged false or misleading statement to make a claim under FAL. Opp'n. at 11.

California's FAL "makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1083 (C.D. Cal. 2018) (quotations omitted). FAL has been interpreted to apply both to advertising that is false and advertising "that is literally true, but which is 'actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 846 (9th Cir. 2019) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

To establish a claim under the FAL, a plaintiff must show that the defendant's misrepresentations are likely to deceive a reasonable consumer. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017-18 (9th Cir. 2020); *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1084 (C.D. Cal. 2018). To satisfy the reasonable consumer test, plaintiff must show "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the product's label. *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016).

As discussed above, the Plaintiff has made a sufficient argument under the reasonable consumer standard and therefore, has stated a plausible claim under FAL. Accordingly, the Motion with respect to the FAL claim is DENIED.

### E.    Unfair Competition Claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS												Date: March 22, 2021

Page 9

*Unfair Prong*

CVS argues that Plaintiff's Unfair Competition Law ("UCL") claim should be dismissed because Plaintiff fails to point out conduct by CVS that would offend an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Mot. at 13-14. Plaintiff counters that he has satisfied the unfair prong through both the "balancing test" and the "tethering test." Opp'n. at 12-13.

The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut.*, Inc., 142 Cal.App.4th 1457, 1473, 49 Cal.Rptr.3d 227 (2006). California law is currently unsettled with regard to the standard applied to consumer claims under the unfair prong of the UCL. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citing *Lozano v. AT & T Wireless Servs.*, Inc., 504 F.3d 718, 735-36 (9th Cir. 2007)). The California Supreme Court has rejected the traditional balancing test for UCL claims between business competitors and instead requires that claims under the unfair prong be "tethered to some legislatively declared policy." *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 186, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). However, the *Cel-Tech* court explicitly limited its holding to claims alleging unfairness to business competitors, and California courts are divided as to the correct test to apply to consumer actions. *See Lozano*, 504 F.3d at 735-36. Pending resolution of this issue by the California Supreme Court, the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions. *Id*

CVS, in its motion, however, does not tell us how the Plaintiff's claim is insufficient under either of those tests. CVS contends that Plaintiff has not adequately alleged a violation of the unfair prong because he did not identify conduct by CVS that was immoral, oppressive, or substantially injurious to consumers. Mot. at 13-14. But Plaintiff alleges that CVS creates "false advertisements on product packaging and directly on the product itself" that substantially injure consumers because they "induce consumers to make purchases that they would not otherwise make, in expectation of receiving benefits that they do not receive;" "violates public policy as expressed in False Advertisement Law;" harms competition; and deceives the public. Compl. ¶ 61-66. CVS has not shown why such allegations are insufficient to state a claim under the unfair prong or why they fail under either the balancing test or the tethering test. *See Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1105–06 (S.D. Cal. 2015) (similarly denying defendant's motion to dismiss because although the defendant asserted that the plaintiff had not identified a public policy the defendant's conduct violated, the plaintiff had in fact alleged how the defendant's conduct violated public policy and the defendant had not stated why the plaintiff's allegation was insufficient under either of the tests). Without more, the Court cannot address CVS's argument to dismiss Plaintiff's unfairness claim and therefore, the Motion with respect to the unfair prong of UCL is DENIED.

*Unlawful Prong*

Next, CVS argues that Plaintiff's "unlawfulness claim fails because he has not alleged any facts to support a violation of any underlying law." Plaintiff counters that he only needs to state a valid claim under FAL to state a valid claim under UCL. Opp'n. at 12-13.

"By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotation marks omitted). "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Thus, a violation of the FAL also constitutes a violation of the UCL. *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1083 (C.D. Cal. 2018).

Plaintiff has stated a valid claim under the unlawful prong of UCL by, as discussed above, stating a plausible claim under FAL. Accordingly, the Motion with respect to the unlawful prong of UCL is DENIED.

### F.     Intentional Misrepresentation Claim

CVS argues that Plaintiff's intentional misrepresentation claim fails because (1) the Product's label would not mislead a reasonable consumer and (2) Plaintiff cannot allege CVS acted with the requisite fraudulent intent to deceive because CVS disclosed the truth on the back label. Mot. at 14-15. As discussed above, we cannot address the reasonable consumer standard at this stage of the proceeding, and therefore, we focus on CVS's second argument.

Under California law, the elements of an intentional representation claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Roper v. Big Heart Pet Brands, Inc.*, No. 119CV00406DADBAM, 2020 WL 7769819, at *3 (E.D. Cal. Dec. 30, 2020) (citations omitted).

CVS argues that intent is absent because the Product "publicly disclosed on the back panel that the 99.99% claim applied to "many common harmful germs & bacteria." Mot. at 15. In response, Plaintiff argues that CVS cannot negate intent by pointing to the disclosures that it made elsewhere in its materials. Opp'n. at 14. Plaintiff asserts that the primary purpose of CVS's advertising was to induce reliance and deceive. *Id.*

The Court agrees with CVS that Plaintiff has not come forward with evidence showing that CVS intended to defraud consumers. Plaintiff reviews CVS's purported misstatements, but does not point to circumstantial evidence that might suggest that CVS intended or "reasonably

Case 8:20-cv-01979-DOC-ADS   Document 46   Filed 03/22/21   Page 11 of 18   Page ID #:1595

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                      Date: March 22, 2021

Page 11

expected" to benefit from the misstatements. *See Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001)). Although Plaintiff asserts that the misstatements were intended to induce consumers to buy CVS's products, the Court agrees with CVS that such an allegation is too conclusory to raise a genuine dispute of material fact. *See Hobbs* 2016 WL 7647674 at *8–9.

Accordingly, the Motion with respect to the intentional misrepresentation claim is GRANTED with leave to amend.

### G. Economic Loss Rule

CVS contends that the economic loss rule bars Plaintiff's claims for intentional and negligent misrepresentation. Mot. at 15-16. Plaintiff asserts that the rule is inapplicable here. Opp'n. at 14-16.

The "economic loss rule" prohibits plaintiffs from suing in tort for damages that lie only in contract. The economic loss rule concerns situations in which the alleged wrongful conduct and associated damages are demarcated by the contract itself, and so assessing the misconduct and injury under a tort framework would frustrate the very notion of a contract at all. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (Cal. 2004). "Put simply, the economic loss doctrine was created to prevent 'the law of contract and the law of tort from dissolving one into the other.' " *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014) (quoting *Robinson Helicopter Co.*, 34 Cal.4th at 988 (internal quotations omitted)). "When applied to product liability suits, one may still sue for damage to property other than the product under the economic loss rule, but losses to the allegedly defective product itself are barred as 'economic' losses." *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 1:16-cv-00371-DAD-SMS, 2016 WL 3519294, at *4 (E.D. Cal. June 27, 2016).

In California, courts have found that there are certain exceptions to this general rule. First, the economic loss rule does not apply to claims of affirmative misrepresentation. In *Robinson Helicopter*, the California Supreme Court determined that the economic loss rule did not bar claims for fraud and misrepresentation but stated that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson Helicopter Co.*, 34 Cal.4th at 993. Second, some courts have found that the economic loss rule does not apply where there is a "special relationship" between the plaintiff and the defendant such that "it would be equitable to impose a duty of care to avoid purely economic loss." *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 903 (E.D. Cal. 2018). Third, some district courts—including the Central District of California, recently—have found that there is a blanket exception for negligent misrepresentation claims. *See Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 626 (C.D. Cal. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                                         Date: March 22, 2021

Page 12

Here, the Court agrees with CVS that the economic loss rule bars the Plaintiff's intentional misrepresentation claim. Even though Plaintiff may have alleged affirmative misrepresentations, he has failed to allege that these misrepresentations exposed him to liability for personal damages independent of his economic loss. Plaintiff alleges that the Product's label makes a false claim and that he suffered injury when paid for a product that did not perform as advertised. Compl. ¶¶ 16-17, 23, 40. Plaintiff does not deny that his only losses are economic losses; instead, he attempts to argue that there was a "special relationship" between him and CVS such that the economic loss rule does not apply here. Opp'n. at 14-16.

An exception to the economic loss rule exists where the relationship between the parties is such that it would be equitable to impose a duty of care to avoid purely economic loss. *Ott v. Alfa–Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1448–49, 37 Cal.Rptr.2d 790 (1995). A special relationship depends on "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the Electrolux's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804, 157 Cal.Rptr. 407, 598 P.2d 60 (1979).

Whether a transaction is intended to affect the plaintiff in a particular manner under the first factor of the *J'Aire* test is a critical foundational requirement for a special relationship. *Ott*, 31 Cal. App. 4th at 1455–56, 37 Cal.Rptr.2d 790. Under *J'Aire*, the transaction must be intended to affect the plaintiff in a manner particular to him. *Id.* A special relationship is precluded where intent to affect the particular buyer in a particular way is absent. *Id.* In a typical retail transaction, the product is intended to affect a particular purchaser in the same manner as all other retail buyers, not in a manner particular to any individual buyer. Plaintiff has alleged no facts showing the transaction was intended to affect Plaintiff specifically. There is no allegation CVS was aware of Plaintiff's hand-sanitizer purchase, and no suggestion that the hand-sanitizer was intended to affect Plaintiff in any way different from any other purchaser. As Plaintiff does not allege CVS intended to affect him in a particular manner, distinct from other retail buyers, a special relationship with CVS is foreclosed. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1054 (N.D. Cal. 2004) ("In this regard, California courts have been able to prevent the expansion of manufacturer liability for economic injuries suffered by a retail buyer at large, while at the same time allowing a particular party of whom the manufacturer has specific knowledge to go forward with a negligence action."). Therefore, the Court rejects this argument and finds that the economic loss rule bars Plaintiff's intentional misrepresentation claim.

Finally, the Court disagrees with CVS's claim the economic loss rule bars Plaintiff's negligent misrepresentation claims. The issue of whether the economic loss rule bars claims for negligent misrepresentation claims under California law is unsettled. The Central District of California recently held that the economic loss rule does not apply to negligent misrepresentation claims. *Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 626 (C.D. Cal. 2020). "California law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS　　　　　　　　　　　　　　　　　Date: March 22, 2021

Page 13

classifies negligent misrepresentation as a species of fraud[ ] for which economic loss is recoverable." *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F.Appx. 603, 607 (9th Cir. 2008) (internal citation omitted). Therefore, the Court finds that this rule does not apply to Plaintiff's negligent misrepresentation claim.

Accordingly, the Motion with respect to the intentional misrepresentation claim is GRANTED and with respect to the negligent misrepresentation claim is DENIED.

### H.　　Preemption

CVS argues that Plaintiff's claims are both explicitly and implicitly preempted by the Federal Food, Drug, and Cosmetic Act (FDCA). Mot. at 18-20. Plaintiff counters that the FDCA does not extinguish parallel state law claims. Opp'n. 16-20.

*Express Preemption*

Under the Supremacy Clause, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992) (citing U.S. CONST. art. VI, cl. 2). Federal preemption of state law, however, "will not lie unless it is the clear and manifest purpose of Congress." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993) (citation omitted). If a federal statute contains an express preemption clause, the plain wording of the clause necessarily contains the best evidence of Congress' preemptive intent. *Id.*

Here, CVS cites to FDCA § 337(a) that requires that all proceedings "for the enforcement, or to restrain violations, of" the FDCA must "be by and in the name of the United States." Mot. at 18 (quoting 21 U.S.C. § 337(a)). Under this provision, private plaintiffs may not bring actions to enforce violations of the FDCA. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) (citing 21 U.S.C. § 337(a)). Private plaintiffs may, however, bring analogous state law claims. *See Farm Raised Salmon Cases*, 42 Cal.4th 1077, 72 Cal.Rptr.3d 112, 175 P.3d 1170, 1177 (2008).

In the false advertisement context, this means that the FDCA bars claims that argue a lack of substantiation but not claims where a plaintiff proffers evidence showing that an advertised claim is false. The FDCA requires that manufacturers have substantiation for their labeling claims, under California law but the FDCA does not allow private plaintiffs "to demand substantiation for advertising claims." *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1345, 133 Cal.Rptr.2d 207. See *also Korolshteyn v. Costco Wholesale Corp.*, 393 F.Supp.3d 1019, 1023 (S.D. Cal. 2019) ("Although the FDCA requires manufacturers to have substantiation for their structure/function claims, California law does not allow private plaintiffs to demand substantiation for advertising claims."). Instead, "a plaintiff in a false advertising or unlawful competition action has the burden of producing evidence that the challenged advertising claim is false or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                          Date: March 22, 2021

Page 14

misleading." *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th at 1344, 133 Cal.Rptr.2d 207. Thus, a plaintiff "may instead bring a UCL action and prove that the claims are false or misleading." *Brannon v. Barlean's Organic Oils, LLC*, No. 318-CV-01619-BTM-MDD, 2019 WL 4393653, at *2 (S.D. Cal. Sept. 12, 2019) (citing *Dachauer v. NBTY, Inc.*, 913 F.3d at 547).

       That is precisely what Plaintiff has done here. Plaintiff has asserted a false advertising claim by proffering evidence that shows why the Product's labelling is false or misleading. Compl. ¶¶ 18-22. Plaintiff refers to scientific studies that show that hand sanitizers, including the Product, do not kill 99.99% of all germs. Specifically, the studies show that certain types of bacteria are becoming alcohol-resistant and that such alcohol-based hand sanitizers do not kill many non-enveloped viruses, bacterial spores, and protozoan cysts. *Id.* Therefore, the FDCA does not preempt Plaintiff's analogous state-law claims.

       Accordingly, the Motion with respect to explicit preemption is DENIED.

### *Implied Preemption*

       Implied preemption occurs when "[1] state law actually conflicts with federal law; or [2] federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir.2010) (internal quotation marks and citations omitted).

       CVS asserts that Plaintiff's claims are impliedly preempted under the doctrine of field preemption because Congress and the "FDA have promulgated a vast body of federal law regulating the food, drug and cosmetic industry, especially with regard to labeling of antimicrobial products." Mot. at 20 (citing FDCA, 21 C.F.R. §§ 201 *et seq.,* 21 U.S.C. §§ 301 *et seq.*; discussing in detail, the 1994 Tentative Final Monograph (59 FR 31402)). According to CVS, these laws and regulations reflect an intent to "occupy the entire field of antimicrobial product labeling regulation," thus preempting state law claims based on alleged deceptive labeling of antimicrobial products. *Id.*

       Plaintiff argues that CVS's reliance on the 1994 Tentative Final Monograph to show implied preemption is misplaced because it has been superseded by the 2019 Rule in which "the FDA expressly left open whether alcohol-based antiseptic rubs were safe for use." Opp'n. at 18 (citing Safety and Effectiveness of Consumer Antiseptic Rubs; Topical Antimicrobial Drug Products for Over-the-Counter Human Use, 84 FR 14847-01, 14848).

       The Court finds that implied preemption does not apply here. Although Section 337(a) of the FDCA prohibits private enforcement actions, Plaintiff's claims are not based on the FDCA but rather, are based on parallel state laws that mirror the relevant sections of the FDCA. They do not require the Court to interpret any provision of the FDCA or regulation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS            Date: March 22, 2021

Page 15

promulgated thereunder. Indeed, the only specific regulation that CVS cites, the Tentative Final Monograph, was never adopted and has the legal status of only a proposed rule. *See Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *17 (N.D. Cal. Apr. 16, 2013) (declining to find plaintiff's false advertisement impliedly preempted because the TFM only has the status of a proposed rule). Instead, Plaintiff's claims only require the court to make a factual determination as to whether the statements on the Product's label are false or misleading. And, as many other district courts have found, such determinations are not barred by implied preemption. *See id.*(finding that implied preemption did not apply to plaintiff's FAL, CLRA, UCL claims because plaintiff's claims did not require the court to interpret any provision of the FDCA, instead, they "only require[d] the court to make a factual determination as to whether the statements on the labels of Defendants Sanitizing Products [were] false"); *In Re: Epogen & Aranesp OffLabel Marketing & Sales Practices Litig.*, 590 F.Supp.2d 1282, 1291 (C.D.Cal.2008) (holding that state consumer-fraud claims based on the allegation that statements made by the defendants were literally false were not preempted by the FDCA, even though the statements at issue touched upon an area dealt with by the FDA); *Summit Technology, Inc. v. High-Line Medical Instruments Company, Inc.*, 922 F.Supp. 299, 307 (C.D.Cal.1996) ("a plaintiff may bring a Lanham Act cause of action for affirmatively misrepresenting facts, even if the truth of those facts may be governed by FDA regulations"); *Grove Fresh Distributors, Inc. v. The Flavor Fresh Foods, Inc.*, 720 F.Supp. 714, 715 (N.D.Ill.1989) (holding that FDCA did not preempt state-law claims against false statements on the product's label because the claim turned on a factual determination that could be resolved without reference to any FDA regulation).

Accordingly, the Motion with respect to implied preemption is DENIED.

      **I.**       **Primary Jurisdiction**

CVS argues that the FDA has primary jurisdiction over the claims in this case and therefore the case should be dismissed until the FDA has had a chance to address these claims. Mot. at 20-22. Plaintiff responds that the doctrine of primary jurisdiction is only applicable in a limited set of circumstances—instances that involve particularly complicated issues or issues of first impression—which do not apply here. Opp'n. at 20-24.

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (internal quotation marks omitted). Courts consider the following non-exhaustive factors in deciding whether the doctrine applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                         Date: March 22, 2021

Page 16

However, "[n]ot every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a limited set of circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Astiana*, 783 F.3d at 760 (internal quotation marks omitted). The Ninth Circuit has further stated that "even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation[,]" or when "referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Id.* at 761. Courts should take into account "whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Id.* at 760.

The Court finds that the doctrine of primary jurisdiction does not apply here. It is undisputed that the FDA has the authority to regulate the labeling and testing of hand sanitizers and antimicrobial products. However, as discussed earlier, the Plaintiff's claims in this case do not turn on determinations that require the expertise of the FDA. Plaintiff's claims present a "typical false advertising case well within the province of the courts because allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 623 (C.D. Cal. 2020) (quoting *Nathan v. Vitamin Shoppe, Inc.*, 2019 WL 1200554, *6 (S.D. Cal. 2019)).

Accordingly, the Motion with respect to primary jurisdiction is DENIED.

      **J.**        **Equitable Damages**

Finally, CVS argues that Plaintiff is barred from seeking equitable relief because Plaintiff has not alleged that he does not have an adequate remedy at law. Mot. at 22-23.

A plaintiff seeking equitable relief under FAL or UCL must establish that she lacks an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (stating that "Sonner must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA," citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law.")).

Accordingly, CVS argues that Plaintiff cannot seek equitable relief under FAL or UCL because he has also stated claims for monetary damages under FAL and UCL. Mot. at 22-23. Indeed, "numerous district courts have dismissed, at the pleading stage, claims for restitution and injunctive relief under the UCL (in addition to the FAL and CLRA) where the plaintiff is seeking or could seek damages." *Copelan v. Infinity Ins. Co.*, 359 F. Supp. 3d 926, 930 (C.D. Cal. 2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS　　　　　　　　　　　　　　　　　　Date: March 22, 2021

Page 17

Here, however, the Court finds that Plaintiff may seek equitable relief under FAL and UCL to the extent that his claims are premised on alleged future harm. Although *Sonner* only spoke about restitution for past harms, various district courts have since found that the decision applies to equitable claims for injunctive relief based on future harm as well. *Roper v. Big Heart Pet Brands, Inc.*, No. 119CV00406DADBAM, 2020 WL 7769819, at *8–9 (E.D. Cal. Dec. 30, 2020) (finding that the plaintiffs request for equitable relief with respect to future harm in a false advertising claim was not barred because there was no adequate remedy at law to address that future harm). In *Roper*, the court found that the plaintiff stated a viable claim for injunctive relief to stop the defendant from using misleading labels on its products because "[a]lthough monetary damages may ultimately fully address plaintiff's harm, at this stage of the litigation there is an ongoing, prospective nature to plaintiff's allegations given her contention that she and other future purchasers will continue to be misled. [Therefore,] . . . the allegations of the complaint are 'sufficient to suggest a likelihood of future harm amenable to injunctive relief.'" *Roper v. Big Heart Pet Brands, Inc.*, No. 119CV00406DADBAM, 2020 WL 7769819, at *8–9 (E.D. Cal. Dec. 30, 2020) (quoting *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020)). Here too, Plaintiff seeks injunctive relief "mandating that [CVS] remove the false advertisements from their product and product packaging" (Compl. ¶ 13) to "stop innumerable innocent and guileless consumers from paying for a product that does not do what it plainly promises on its front label to do" (Opp'n. at 24). Therefore, Plaintiff has sufficiently pled the likelihood of future harm for which he has no adequate remedy at law, and is not barred from seeking injunctive relief for the same.

Accordingly, the Motion with respect to equitable relief is DENIED.

### Restitution

Relatedly, CVS seeks dismissal of Plaintiff's claim for restitution under FAL and UCL. CVS asserts that the exclusive measure of restitution under the FAL and UCL is the difference between the amount paid and the value received. Mot. at 23. CVS argues that Plaintiff's claim for restitution should be dismissed because Plaintiff has not alleged that "the hand sanitizer he purchased was worth less than what he paid for it," and thereby, he has not alleged "any basis on which restitution could be rewarded." *Id.* In response, Plaintiff contends that he seeks full refund of the price he paid for the Product because only a full refund will fulfil the true purpose of restitution. Opp'n. at 25.

The courts are authorized by statute "to fashion remedies to prevent, deter, and compensate for unfair business practices." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 176 (2000) (emphasis added). This includes broad discretion under the UCL and FAL to make "such orders or judgments . . . as may be necessary to restore to any person . . . any money or property" which may have been acquired by means of behavior prohibited by California's consumer protection laws. Cal. Bus. & Prof. Code §§ 17203, 17535. The California Supreme Court has given these provisions a broad, liberal reading. *See Fletcher v. Security Pac. Nat'l*

Case 8:20-cv-01979-DOC-ADS   Document 46   Filed 03/22/21   Page 18 of 18   Page ID #:1602

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-01979-DOC-ADS                                          Date: March 22, 2021

Page 18

*Bank*, 23 Cal.3d 442, 449, 153 Cal.Rptr. 28, 591 P.2d 51 (1979) (holding that the "general equitable principles underlying [these provisions] as well as [their] express language arm the trial court with the cleansing power to order restitution to effect complete justice."); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 179, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) (discussing the court's broad powers to fashion appropriate relief).

Here, CVS asserts that the difference in value is the proper method of calculating restitution and that the Plaintiff has not alleged that "the hand sanitizer he purchased was worth less than what he paid for it." Mot. at 23 (citing to *Brazil v. Dole Packaged Foods*, LLC, 660 Fed. Appx. 531 (9th Cir. Sept. 30, 2016)). CVS is correct in that the price/value differential is *a* measure of restitution. CVS fails, however, to cite any authority indicating that this is the *only* measure of restitution. *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559, at *3-5 (C.D. Cal. Mar. 23, 2015) (recognizing that a value-paid-minus-value-received approach is not the only one permitted).

Furthermore, Plaintiff has suggested an alternate viable measure of restitution: complete restitution. Opp'n. at 25; *see id.* at *5–6 (finding that the plaintiff's proposal for complete restitution was a viable measurement of restitution). CVS does not tell us why the Plaintiff's proposed measurement of restitution is incorrect. Without more, the Court cannot find in favor of CVS.

Accordingly, the Motion with respect to restitution is DENIED.

### IV.   Disposition

For the reasons set forth above, the Court GRANTS with respect to the intentional misrepresentation claim and DENIES with respect to all other claims, CVS's Motion.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                          Initials of Deputy Clerk: kd
CIVIL-GEN