STEPTOE & JOHNSON LLP
Carol R. Brophy (SBN 155767)
cbrophy@steptoe.com
One Market Plaza, Spear Tower, Suite 3900
San Francisco, California 94105
Telephone: (415) 365-6700; Fax: (415) 365-6699

Melanie Ayerh (SBN 303211)
mayerh@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9432; Fax: (213) 439-9599

*Attorneys for Defendant CVS HEALTH and Intervenor-Defendant VI-JON, LLC*

[ADDITIONAL COUNSEL OF RECORD IDENTIFIED BELOW]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MIER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>CVS HEALTH, Rhode Island corporation; and DOES 1 to 100, inclusive,<br><br>    Defendants. | Case No.: 8:20-cv-01979 DOC (ADSx)<br>Presiding Judge: Judge David O. Carter<br><br><u>[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]</u><br><br>**JOINT STIPULATION RE: CVS HEALTH CORPORATION'S AND VI-JON, LLC'S MOTION FOR SANCTIONS, MOTION TO COMPEL PLAINTIFF TO SUBMIT TO AN ADDITIONAL DEPOSITION AND MOTION FOR COST SANCTIONS**<br><br>Discovery Cut-Off:  September 7, 2021<br>Pretrial Conference: December 13, 2021<br>Trial Date:       January 25, 2022 |

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

STEPTOE & JOHNSON LLP
Anthony Hopp (Illinois SBN 6199290) (*admitted pro hac vice*)
ahopp@steptoe.com
227 West Monroe St., Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1249;
Facsimile: (312) 577-1370

*Attorneys for Defendant CVS HEALTH and
Intervenor-Defendant VI-JON, LLC*

Justin F. Marquez (Cal Bar No. 262417)
justin@wilshirelawfirm.com
Thiago M. Coelho (Cal Bar No. 324715)
thiago@wilshirelawfirm.com
Robert Dart (Cal. Bar No. 264060)
rdart@wilshirelawfirm.com
Cinela Aziz (Cal Bar No. 318192)
cinela@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff Joseph Mier
and the Putative Class*

---

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

# TABLE OF CONTENTS

**Page**

I. DEFENDANTS' INTRODUCTORY STATEMENT ................................... 1

II. PLAINTIFF'S INTRODUCTORY STATEMENT ................................. 3

III. DEFENDANTS' CONTENTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 5

    A. Background Facts ................................................................................. 5

    B. Argument ............................................................................................ 6

        1. This Court Has Ample Authority to Impose Sanctions ............. 6

        2. Wilshire Repeatedly Violated The Standards Governing Deposition Conduct ................................................................. 7

            a) The Improper Instructions Not to Answer Violated Rule 30 .................................................................... 8

                (1) Solicitation Information ................................... 8

                (2) When Plaintiff Contacted his Attorney .............. 12

                (3) Documents Plaintiff Reviewed in Preparation for Deposition ................................ 14

                (4) Identity of Plaintiff's Co-Workers .................... 14

            b) Continual Speaking Objections And Witness Coaching Violated Rule 30 and Obstructed the Deposition ................................................................. 15

        3. Monetary Sanctions and a Renewed Deposition of Mier Are Warranted ................................................................. 22

        4. The Fees Incurred in Connection with the Instant Motion Are Recoverable ................................................................. 24

IV. DEFENDANTS' CONCLUSION ................................................................. 24

V. PLAINTIFF'S CONTENTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 24

    A. Pertinent Facts ................................................................................. 24

    B. Argument ............................................................................................ 25

-i-

**TABLE OF CONTENTS**
(continued)

Page

1.   Plaintiff Has Provided All of the Documents Viewed in Preparation of the Deposition to Defendant, the List of which, in Any Event, Was Privileged........................................25

2.   The Identity of Plaintiff's Co-Workers is Irrelevant to this Case. ........................................27

3.   All of the Information Sought Regarding Plaintiff's Advertisement Has Been Produced to Defendant and the Court. ........................................30

4.   Sanctions Are Not Warranted. ........................................35

C.   Defendant's Counsel Received Clear Answers to the Vast Amount of Questions, Despite Counsel for Plaintiff's Spirited Objections........................................40

VI.   CONCLUSION ........................................45

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1     Pursuant to Local Rule 37-2.1, the parties hereby submit this Joint

2  Stipulation in connection with disputed discovery issues.

3  **I.     DEFENDANTS' INTRODUCTORY STATEMENT**

4     Plaintiff Joseph Mier ("Mier") claims that when he saw the statement

5  "Kills 99.99% of germs*" on the Defendants' hand sanitizer Product that he

6  purchased (the "Product"), he assumed that the Product would kill all germs

7  known to mankind, and all germs yet to be discovered. (Dkt. No. 57 at 25.) He

8  alleges that he was disappointed when he found out that the Product was actually

9  intended to kill common germs on consumers' hands with 99.99% efficacy.[1]

10  Defendants CVS Health ("CVS Health") and Vi-Jon, LLC ("Vi-Jon") initiated

11  discovery to try to find out why an alleged consumer like Mier would think a

12  *hand sanitizer* would be effective against obscure and even undiscovered germs.

13  Plaintiff's counsel, however, attempted to improperly stymie Defendants'

14  discovery efforts.  Compounding the issue, on reply in support of their class

15  certification motion, Plaintiff's counsel attempted to argue facts that they

16  improperly shielded from discovery, resulting in the need to file this motion.

17     As Defendants demonstrated in their response to Plaintiff's Motion for

18  Class Certification, Mier appears to be an "empty vessel." He apparently knows

19  next to nothing about the allegations in his complaint, and he refused to answer

20  questions that go to the very heart of why he filed this case, including when and

21  why he allegedly became dissatisfied with the Product and what prompted him to

22  contact a lawyer and seek to represent a putative class of California consumers.

23  He also refused to identify other potential witnesses and the documents he

24  reviewed in preparation for his deposition. The primary reason Mier would not or

25  could not answer these key questions is that his counsel instructed him not to, or

26

27  _____

28  [1] The Product's rear label states that it is "*Effective at eliminating 99.99% of many
common harmful germs and bacteria in as little as 15 seconds."

1

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

otherwise coached him and obstructed the record to the extent that his answers were unintelligible. Under prevailing law, this Court can and should sanction Mier's counsel, including ordering a renewed deposition, awarding Defendants the costs and fees incurred in taking Plaintiff's first deposition in the amount of $14,468.40. (Ayerh Decl.¶ 9, 10; Ex. G.), and awarding the necessary costs associated with Plaintiff's renewed deposition and all fees incurred in bringing the instant motion.

These Defendants and Defense counsel are generally reluctant to seek sanctions against litigation opponents – particularly on close or fairly debatable issues. But this case is different. Plaintiff's counsel's conduct and improper instructions prevented Defendants from obtaining clear, key testimony regarding the bases for Plaintiff's claims, why he filed this lawsuit, and whether he is a *bona fide* consumer or rather an empty vessel. Defendants are entitled to this information and to a clear record. *See, Holloway v. Cty. of Orange*, No. SACV1901514DOCDFMX, 2021 WL 430697, at *14 (C.D. Cal. Jan. 11, 2021) ("Defendants are entitled to a deposition that is not marred by improper instructions to answer and misconduct of Plaintiff's counsel"); *In re Ford Motor Co. DPS6 PowerShift Transmission Prod. Liab. Litig.*, No. 218CV1893ABFFMX, 2019 WL 3815721, at *6–7 (C.D. Cal. May 13, 2019) (Finding that Plaintiff's counsel used improper objections and coaching, asserted improper objections not to answer, and asserted meritless objections with an improper purpose); *Claypole v. Cty. of Monterey,* 2016 WL 145557, at *3 (N.D. Cal. 2016) (sanctions ordered in response to "extremely long speaking objections, coaching witnesses, cutting off witnesses and even answering for them.").  Accordingly, by this motion, Defendants request appropriate sanctions be ordered pursuant to Federal Rule of Civil Procedure 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent power to sanction attorney deposition misconduct.

---

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

Defense counsel has met and conferred with Mier's counsel in an effort to avoid filing this motion. But Mier's counsel remained obstinate. On Monday March 29, 2021, defense counsel held a telephonic meet and confer call with counsel for Plaintiff. Defense counsel identified each deposition topic that Mr. Mier was improperly instructed not to answer, outlined the bases for this sanctions motion, and provided Plaintiff's counsel with the applicable case law on which this motion will be based. The parties were unable to resolve the disputes raised by this motion. Plaintiff's counsel agreed that Defendants had satisfied their meet and confer obligations under the Local Rules and that any future meet and confer efforts would be futile. (Ayerh Decl. ¶ 2.)

## II.   PLAINTIFF'S INTRODUCTORY STATEMENT

Defendant CVS Health ("CVS"), and its counsel cannot keep from telling whoppers.  First, CVS's product label stated that its hand-sanitizer "kills 99.99% of germs."  Now, CVS and its counsel claim that the product kills the "common germs on consumers' hands with 99.99% efficacy."  However, Defendant's own studies show that its product does not kill many harmful germs which are found on hands, such as norovirus.  According to the International Journal of Environmental Research and Public Health, a kill rate which is equal to or less than 1 $\log_{10}$ is "not significant or effective."  Int. J. Environ. Res. Public Health 2020, 17, 3326 at p. 11.  All of Defendant's studies regarding norovirus show that it kills at most 1 $\log_{10}$—and in most cases, significantly less than that—of norovirus.  (Dkt. 59-2, at p. 26, 28.)  Defendant's product does not kill 99.99% of the germs on consumers' hands, and it does not kill 99.99% of germs overall, which is what it claims to do.  Defendant has printed lies on its product label to induce consumers into buying a product which is less effective than soap and water.

Faced with significant liability for its false and misleading statements, Defendant has gone on the offensive, seeking to label Plaintiff an "empty vessel"

because he does not remember when, specifically, he purchased the individual product in question. Most people would not remember exactly when they purchased the hand-sanitizer. However, no evidence suggests that Plaintiff purchased the product after he communicated with his counsel, as Defendant unfairly suggests. In fact, Defendant's extracare records show that he purchased hand sanitizer on February 26, 2020, and March 16, 2020. (Dkt. 63-7 at p. 15-18.) Plaintiff's counsel did not start its advertising campaign related to this case until March 25, 2020. (Dkt. 63-8.) Mr. Meir did not respond to the advertisement until April 3, 2020. (Dkt. 63-9.) Accordingly, even if Defendant's extracare records are correct, neither Plaintiff's counsel's advertisement nor Plaintiff's counsel can have influenced Mr. Mier's decision to purchase the items at issue in this case.

And there is good reason to doubt the extracare records. Plaintiff testified at deposition that he does not always use his extracare account when making purchases. Further, records show that the specific product Plaintiff purchased—with 70% alcohol, as opposed to 62%, and garden orchid scent—was not being produced as of January, 2020, and likely was not on the shelves by late February and mid-March 2020, when there were runs on all available hand sanitizer in stores like CVS. (Dkt. 63-10.) Defendant reduced its alcohol content, and discontinued the garden orchid scent, as of January, 2020. (*Id.*) The most likely explanation is that Plaintiff purchased the hand-sanitizer without using his extracare account when he said he did, in August 2019.

In short, while Defendant proposes to ask Plaintiff additional questioning about his purchase of hand-sanitizer, Plaintiff has provided Defendant with sufficient discovery to show definitively that he did not purchase the hand-sanitizer in question after he communicated with his attorneys. No amount of quotations, taken out of context, from Plaintiff's deposition can change that fact. If Mr. Mier did not remember at his first deposition specifically when he made his purchases, he

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

is not going to remember at his next deposition when he made them.  Defendant is, to put it simply, making a mountain out of a mole hill.  Despite the fact that counsel on both sides got chippy during Plaintiff's deposition, Defendant was able to ask Plaintiff all of the questions that it proposes to ask at his next deposition.  There is simply no basis for an additional deposition, and no cause for sanctions.

## III.   DEFENDANTS' CONTENTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Background Facts

On February 24, 2021, CVS Health and Vi-Jon took the deposition of Plaintiff Joseph Mier ("Mier"). Throughout the deposition, Mier's counsel, the Wilshire Law Firm ("Wilshire"), engaged in improper, obstructionist behavior, including asserting: (1) improper instructions not to answer; (2) improper speaking objections, coaching, cutting off the witness; and, (3) *ad hominem* attacks on opposing counsel.

The deposition transcript of Plaintiff is replete with examples of inappropriate behavior by Wilshire which impeded, delayed and frustrated Defendants' attempts to obtain critical deposition testimony. Indeed, while approximately 1,224 lines transcribed were of Mier's testimony, about 1,034 lines recorded colloquy from Mier's counsel alone. Very rarely did defense counsel ask a question without Wilshire objecting. And most were speaking objections that consumed time and had the improper effect of coaching the witness, and confusing the record. Counsel improperly instructed Mr. Mier not to answer questions on several **key topics:** (1) the documents he reviewed and relied on in preparation for his deposition; (2) the identity of Plaintiff's coworkers; (3) the solicitation material Plaintiff viewed before becoming a party in the action; (4) when Plaintiff viewed that solicitation material in relation to learning about the efficacy of hand sanitizers; and (5) whether Plaintiff contacted his attorney after he purchased the hand sanitizer products, all on the grounds of "privilege",

"privacy" and/or that the question was already "asked and answered." Counsel's instructions not to answer were not only impermissible on their face; she stymied Defendants' attempt to obtain powerfully relevant information from the witness. The transcript of the deposition is attached as Exhibit A to the declaration of Melanie A. Ayerh. Defendants encourage the Court to read the entire transcript to get a full understanding of Mier's Counsel's conduct during the deposition.

### B.    Argument

#### 1.    This Court Has Ample Authority to Impose Sanctions

Fed. R. Civ. P. 30(d)(2), 28 U.S.C. § 1927, and the court's inherent authority empower this Court to sanction attorney deposition misconduct. *Williams v. Rockwell Intern. Corp.*, 116 F.3d 488, at *3, (9th Cir. June 5, 1997). "[A] district court has the inherent power to impose sanctions on counsel who willfully abuses judicial processes." *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (*quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) [other portion of Roadway op. superseded by statute]). Similarly, 28 U.S.C. § 1927 admonishes that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The imposition of sanctions under section 1927 requires a finding that counsel acted recklessly or in bad faith, while those imposed under the court's inherent power require a finding that counsel's conduct constituted or was tantamount to bad faith." *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983).

Federal Rule of Civil Procedure 30(d)(2) specifically authorizes the imposition of sanctions for misconduct during depositions: "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." A heightened finding of

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1  recklessness or bad faith is not required to impose Rule 30(d)(2) sanctions. *See,*
2  *e.g., Horowitz v. Chen*, 2018 WL 4560697, at *5 (C.D. Cal. 2018) ("The Court
3  finds that monetary sanctions in the form of attorney's fees and costs are
4  warranted. [Defense / deponent's counsel's] behavior through coaching, breaks,
5  and frequent unprofessional comments wasted a large portion of Chen's
6  deposition time and forced Plaintiffs to seek the Court's intervention. A monetary
7  sanction is warranted to make Plaintiffs whole"); *Hernandez v. Lynch*, 2019 WL
8  6998774, at *4 (C.D. Cal. 2019) ("the Court finds that the Special Master was
9  correct to conclude that Plaintiffs' counsels' conduct was improper and impeded
10  Defendants from conducting a fair deposition and pursuing relevant lines of
11  inquiry. In light of this, it was proper to order new depositions of the Named
12  Plaintiffs.").

13         **2.     Wilshire Repeatedly Violated The Standards Governing**
14                 **Deposition Conduct**

15         Plaintiff's counsel deliberately frustrated, delayed, and impeded Mr. Mier's
16  deposition. Attorney conduct at depositions is governed by Federal Rule of Civil
17  Procedure Rule 30. Under FRCP 30(c)(2), an objection "must be made concisely in
18  a nonargumentative and nonsuggestive manner." The Advisory Committee's
19  comments to Rule 30 instruct that argumentative objections, suggestive objections,
20  and improper directions to a deponent not to answer, improperly disrupt, prolong,
21  and frustrate deposition testimony. *See* Fed. R. Civ. P. 30(d)(2), Advisory
22  Committee notes (1993 amendments); *see also Sec. Nat'l Bank of Sioux City v.*
23  *Jones Day*, 800 F.3d 936, 942 (8th Cir. 2015). "An excessive number of
24  unnecessary objections may itself constitute sanctionable conduct." *Id*. "Counsel
25  for the witness being deposed is prohibited from acting as an intermediary,
26  interpreting questions, assisting the deponent with formulation of answers, or
27  deciding which questions should be answered." *Bd. of Trustees of Leland*
28  *Stanford Junior Univ. v. Tyco Int'l Ltd.,* 253 F.R.D. 524, 526 (C.D. Cal. 2008).

And counsel should avoid the prohibited practice of engaging in so-called "Rambo tactics" where counsel attacks or objects to every question posed, thus interfering with, or even preventing, the elicitation of any meaningful testimony and disrupting the orderly flow of the deposition. *Madrigal v. Allstate Indem. Co.,* No. CV 14-4242 SS, 2015 WL 12747906, at *8 (C.D. Cal. Sept. 30, 2015).

### a) The Improper Instructions Not to Answer Violated Rule 30

"Directions to a deponent not to answer a question can be even more disruptive than objections." Fed. R. Civ. Proc. 30, Advisory Committee's notes (1993 Amendment). Indeed, instructions not to answer are expressly limited to three situations: (1) where counsel is protecting a privilege, (2) enforcing a court-imposed limitation, or (3) preparing to present a protective motion. *See* Fed. R. Civ. Proc. 30(c)(2). Instructions not to answer on any other basis are impermissible. "Plaintiffs' counsels' role during a deposition does not include the authority to essentially rule on their own objections and determine whether such questions need to be answered." *See, Lucas v. Breg, Inc.,* 2016 WL 2996843, at *12 (S.D. Cal. May 13, 2016).

### (1)   Solicitation Information

Mr. Mier provided inconsistent and vague testimony regarding the solicitation information he viewed prior to becoming a plaintiff in this case. He testified that, sometime after he purchased the Product, he "saw [on] a billboard or on the news" that if he had used CVS[2] hand sanitizer, he could join a *pending* lawsuit. (*Id*. at 139:24-140:2; 141:6-9.)  His lawyer then instructed him not to

---

[2] The Product Mier purchased stated on its label that it was "Distributed by CVS Pharmacy, Inc." But for reasons he has yet to explain, Mier named CVS Health as the Defendant in this case. CVS Health has repeatedly informed Mier that CVS Health is the wrong defendant. (*See*, Ayerh Decl., Ex. F, Dkt. No. 57 at p. 10-11.)

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1   answer any further questions regarding the solicitation information he saw that

2   prompted him to "join" a pending lawsuit, claiming privilege and privacy:

3       **Mr. Hopp**. So -- and I want to make sure I understood that answer. You saw
        somewhere, either a billboard or the news, you said, if you've used CVS
4       hand sanitizer contact an attorney. Is that what you said?
        **A**. I said there's a -- a pending lawsuit, yes.
5       **Mr. Hopp**. It was your understanding at the time that you saw the billboard
        or the -- or the news item that you just mentioned that there was already a
6       pending lawsuit. Is that right?
        **MS. AZIZ: Objection. It's attorney-client privilege and privacy. And
7       it's already been asked and answered. And I'm going to instruct my
        client to not answer any further questions about this.**
8       **MR. HOPP**: This is not attorney-client privilege.
        This is – we'll take this to the judge.
9

10  (*Id*. at 140:5-22.)

11      When the defense attorney attempted a second time to clarify Mr. Mier's

12  vague testimony regarding this solicitation information he apparently saw, his

13  counsel again instructed him not to respond:

14      **Q**. Is it your testimony that you saw some sort of statement in the news or
        somewhere else indicating that a lawsuit was pending and that you then
15      signed up for that lawsuit?
        **MS. AZIZ: Objection. Asked and answered. Attorney-client privilege.
16      The record will speak for itself. I'm instructing my client to not say
        anything further about this. Do not answer**.
17      **MR. HOPP**: That is not an appropriate objection. Mr. Mier, you're entitled
        to answer this question, and I am telling you that we will go to the judge and
18      get an answer. You can answer the question if you choose to. Do you choose
        to answer the question?
19      **A**. I'm going to go with what my attorney said.
        **Q**. All right. Mr. Mier, we'll see what the judge says.
20      **MS. AZIZ**: **We will see what the judge says**.[3]

21

22  (*Id*. at 143:1-21.)

23

24  _____

25  [3] Defense counsel repeatedly warned Mier and his counsel that Defendants would

26  seek Court intervention and seek a new deposition if Counsel's inappropriate
    objections and instructions continued. Despite being on notice that Defendants
27  intended to bring her conduct to the Court's attention, Mier's counsel continued to
    make inappropriate objections and to instruct Mier not to answer questions seeking
28  relevant, non-privileged, information.

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1    Mr. Mier was also instructed not to answer any questions regarding the

2    *sequence of events* following Mier's learning that the Product's label was allegedly

3    misleading and when he saw the solicitation material he previously testified about.

4    Mr. Mier testified that he learned "on [] news media" that hand sanitizer was not

5    effective as soap and water. (*Id*. at 157:8-14.) Later, in response to whether he saw

6    the solicitation material at some point *after* he learned that hand sanitizer was

7    allegedly not effective, he vaguely responded "[n]o. That was before…The way I

8    understand your question is after this came on is when I got informed of it. No, it

9    was before." (*Id*. at 157:18- 158:2.) His counsel instructed him not to answer any

10   questions meant to clarify this testimony:

11   **Mr. Hopp**. All right.  And so sometime between August of 2019 when you
     bought this particular bottle and May of 2020, which is the date of the letter
12   we looked at, Exhibit 1, you became aware of some information that you just
     described about hand sanitizer. Right?
13   **A**. Yes.
     **Mr. Hopp**. Is it your testimony that after you became aware of that
14   information, you saw some sort of notice that you could contact a lawyer?
     **MS. AZIZ**: **Objection. Attorney-client privilege. My client's not going to**
15   **answer.**
     **MR. HOPP**: That's not a privileged conver- -- I'm not asking for a
16   privileged conversation. I'm going to ask it one more time, and if you're
     going to instruct him not answer this is something we'll address in our
17   motion after the --
     **MS. AZIZ**:  **That's fine. Please do. He's not going to answer.**
18

19   (*Id*. at 160:25- 161:18)

20   Defendants are entitled to discovery into the nature of the solicitation

21   material Mier viewed before he decided to become a Plaintiff in this case, as well

22   as, *when* he saw that solicitation material. This information is critical to evaluating

23   Mier's veracity, his motivation in joining what he testified to be a *pending* lawsuit

24   against CVS[4] and his adequacy as a class representative. There is nothing

25   _____

26   [4] CVS Health is not aware of any pending lawsuits involving CVS store brand hand
     sanitizer other than this one, which Mier filed. In addition, CVS Health had
27   repeatedly informed Mier that CVS Health is the wrong defendant. A Westlaw
     search would have revealed to Plaintiff's counsel that CVS Health is the wrong
28   defendant. CVS Health has been routinely dismissed on similar grounds. *Tashjian*

10

1   privileged or private about publicly disclosed solicitation material that a putative
2   class representative views prior to filing a lawsuit. Solicitation material published
3   by Plaintiff's counsel does not constitute a "confidential communication between
4   client and lawyer during the course of the attorney-client relationship." Cal.
5   Evid.Code § 952. And certainly, the sequence of events is not privileged.
6   Defendants are entitled to know whether Plaintiff contacted a lawyer or saw
7   information regarding the efficacy of the Product before or after he saw the
8   solicitation material.

9         Plaintiff's counsel's conduct since Mier's deposition demonstrates that they
10  fully understand how inappropriate their objections and instructions were.  After
11  Defendants threatened a motion to compel, Plaintiff's counsel provided a
12  supplemental written discovery response producing an *undated* Facebook
13  solicitation advertisement. (Ayerh Decl., Ex. B). But this supplemental response
14  only further confuses Mr. Mier's incomplete testimony. It does not explain the
15  shift from his testimony that he saw a *billboard* ad or learned about hand sanitizer
16  "*on the news*" to what now appears to be a Facebook post. It also contradicts Mr.
17  Mier's general testimony. He testified that he does not own a computer. (*Id*., Ex. A
18  at 213:2-5.) He only "*thinks*" that he is on Facebook, but even then, he does not
19  access Facebook for any "information and news". (*Id*. at 133:12-13; 135:22-136:7.)

20        In their reply in support of Mier's Motion for Class Certification, Plaintiff's
21  counsel for the first time disclosed that they ran the Facebook advertisement
22  beginning on March 25, 2020 and that Mier allegedly first contacted counsel on
23  April 3, 2020. [Dkt. 63, p. 10][5] Defendants are entitled to question Mr. Mier on the
24  accuracy of these representations, what prompted him to respond to the Facebook

25  ───────────────
26  *v. CVS Pharmacy, Inc*., No. CV 19-11164-TSH, 2020 WL 1931859, at *4 (D. Mass.
27  Mar. 13, 2020); *Corcoran v. CVS Health Corp*., 169 F. Supp. 3d 970, 984 (N.D. Cal.
    2016); *Callum v. CVS Health Corp*., 137 F. Supp. 3d 817, 837 (D.S.C. 2015).
28
    [5] None of this information was produced in discovery.

11
JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

post, the discrepancy between his "billboard" or "on the news" testimony and the new evidence disclosed by counsel, when and how he viewed the Facebook post (without a computer) relative to allegedly finding out about the efficacy of the Product, and the date and contents of his retainer letter with counsel. Counsel's unexplained late disclosure of this information and their repeated instructions to Mier not to answer, prevented defendants from questioning Mier on these topics during his deposition.

Further compounding Mier's counsel's sanctionable conduct, on April 19, 2021, Mier's counsel sent an email to defense counsel seeking to meet and confer regarding a proposed amended complaint. (Ayerh Decl., Ex. D.) Plaintiff's counsel seeks to add new plaintiffs (suggesting that even his lawyers know that Mier is not an adequate or typical plaintiff, in part because of the questions they would not let him answer) and justifying their delay in seeking to amend by claiming that the new proposed plaintiffs had only *recently signed their retainer letters. Id.* Clearly, Mier's counsel fully understands that the date and contents of a retainer letter are significant issues in class action litigation. Yet they prevented Mier from providing this information, among other highly relevant facts.

### (2)    When Plaintiff Contacted his Attorney

Counsel further obstructed the deposition by improperly instructing Plaintiff not to disclose whether he purchased the Product before or after his first contact with his attorneys, based on the attorney-client privilege:

> **MR. HOPP**: Mr. Mier, the question is [] did you contact a lawyer after you purchased the product?
> **MS. AZIZ**: Objection. I've instructed my client not to answer based on attorney-client privilege.
> **THE WITNESS**: I'm not going to answer.

(Ex. A at 161:20-25.)

Inquiries into whether a putative class representative contacted his/her attorney after he purchased the Product that is the subject of his lawsuit are not

privileged or private. The attorney-client privilege protects only the "disclosure of communications between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication." *See, e.g., Madrigal v. Allstate Indem. Co*., No. CV 14-4242 SS, 2015 WL 12748277, at *4 (C.D. Cal. Nov. 5, 2015) (citation omitted). The attorney-client privilege does not protect independent facts related to the confidential communication, such as the fact that the communication took place, or the date, time, location of the communication, or the participants in the communication. *Id*.

Whether Mier purchased the Product before or after he met with his counsel is entirely relevant to whether he is an adequate class representative. The inconsistent testimony and discovery responses from Mier and his counsel, and the evidence to date, suggest that Mier saw a solicitation suggesting that he could derive some pecuniary gain from suing CVS, he then either met with his counsel and purchased the relevant hand sanitizer Product, or he purchased the Product and then called an attorney. When asked in his deposition whether he met with counsel before he purchased the Product, Mier did not deny it. He claimed he could not remember. (Ex. A at 162:4-6.) Confronted with his purchase history at his deposition (which contradicted his prior testimony) and asked again to state when he purchased the Product, Mier's new answer was, "I do not remember." (*Id*. at 252:22-253:7.) Then to further confuse the issue, following threats of a motion to compel, Mier's counsel served supplemental discovery claiming that Mier met with counsel for the first time on *February 23, 2021*, months after filing his complaint and serving verified discovery responses. (Ayerh Decl. Ex. C.) Defendants are entitled to question Mier at deposition to obtain clarification on this topic.

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

**(3)     Documents Plaintiff Reviewed in Preparation for Deposition**

Inquiries into the documents that a witness reviewed in preparation for deposition are routinely asked at depositions and this information is discoverable. *See, eg.  International Ins. Co. v. Montrose Chemical Corp. of Calif.*, 231 Cal.App.3d 1367, 1372-1373 (1991) (opposing counsel cannot properly refuse to produce documents shown to the deponent (party or nonparty) to refresh his or her recollection in preparation for the deposition.) Moreover, Fed. R. Evid. 612 provides that, if a witness uses a writing to refresh his recollection before or during his testimony, then an adverse party is entitled to "... have the writing produced at the hearing, to inspect it, to cross examine the witness thereon ..." *See* Fed.R.Civ.Proc.30(c). Mr. Mier testified that he reviewed four documents in preparation for his deposition, one of which was his responses to interrogatories. (*See* Ex. A at 10: 7-20.) He was, however, instructed not to identify the three remaining documents which he reviewed in preparation for his deposition. (*Id*. at 11:23-12:9.)[6] It is imperative that Defendants be allowed discovery into what three additional documents Plaintiff reviewed to refresh his memory prior to his deposition and to cross examine him on those documents.

**(4)     Identity of Plaintiff's Co-Workers**

Counsel also improperly instructed Mier not to provide the names of his coworkers on grounds that such information is "private". (*Id*. at 30:7-25.) Testimony regarding Mier's co-workers is relevant and discoverable. Mr. Mier is a security guard. (*Id*. at 21:4-9.) He testified he routinely shops at CVS on his way to work, but also testified that he stopped purchasing hand sanitizer altogether in the spring of 2020. (*Id*. at 97:6-20; 204:17-25.) His CVS purchase records contradict

---

[6] Plaintiff's counsel asked CVS's witnesses the same series of questions regarding the documents they reviewed in preparation for their depositions, and CVS's witnesses appropriately answered. (Ayerh Decl., Ex. E.)

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

that testimony. (Ayerh Decl. Ex. C.) He testified that he stopped using hand sanitizer in the spring of 2020, but also inconsistently testified that he continued to use it regularly at work. (Ex. A at 51:2-5; 88:15-89:12.)

Mr. Mier claimed that he has worked with the same crew of security guards for the past four years. (Ex. A at 29:15-21; 30:4-6). Defendants are entitled to the names of the persons with whom Mr. Mier has worked for the past four years (which encompasses the class period as defined by Plaintiff), who may have discoverable evidence regarding Mier's purchases and use of hand sanitizer during the relevant period, and any statements he has made regarding the efficacy of hand sanitizer or his reasons for pursuing this lawsuit. In general, the disclosure of the names and addresses of potential witnesses is a routine and essential part of pretrial discovery. *In re Littlefield* 5 Cal. 4th 122, 132 (1993). California's discovery statute recognizes that "the identity and location of persons having [discoverable] knowledge" are proper subjects of civil discovery. (Code Civ. Proc., § 2017.010.)

### b) Continual Speaking Objections And Witness Coaching Violated Rule 30 and Obstructed the Deposition

Mier's counsel's improper conduct was not limited to impermissible instructions not to answer. She also engaged in the prohibited practice of making speaking objections, coaching the witness, cutting off the witness, and even answering for him, contradicting the witness's own testimony, and making derogatory comments regarding the defense counsel. "A speaking objection is an objection that is argumentative or which suggests an answer to a witness" and "[is] prohibited by Fed. R. Civ. P. 30(c)(2)." *Jadwin v. Abraham*, 2008 WL 4057921, at *6 (E.D. Cal. Aug. 22, 2008). Two things are implicit in the Rule 30's command that examination must "proceed as [it] would at trial." First, attorneys must follow the same procedures as they would at trial. *See* Fed. R. Civ. P. 30(d)(2), Advisory Committee notes (1993 amendments) (discussing direct examination, cross

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

examination, and objections). Second, attorneys must conduct themselves as they would at trial. *Holloway*, 2021 WL 430697, at *11. "There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding what questions the witness should answer." *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.,* 253 F.R.D. 524, 527 (C.D. Cal. 2008). This type of conduct, though offered in the guise of helpfulness, is an attempt – often successful – to improperly influence the witness' answers. If the deponent is confused about a question, "the witness may ask deposing counsel to clarify the question; securing clarification is not the job of the witness' counsel." *Lucas v. Breg, Inc., No.* 315CV00258BASNLS, 2016 WL 2996843, at *4 (S.D. Cal. May 13, 2016). As this District recognized in *Holloway*:

> By convention, there are a few more things defending attorneys may do that are not expressly mentioned in Rule 30. They can do redirect following the completion of the examining attorney's questioning. They can ask to take a break every hour or so, and provided that no question is pending, that request should be agreed to. They can suggest a lunch break around noon. They can ask the videographer how much time has gone by on the record. And then when the seven hours are up, they can declare the deposition over, take their witness and leave.
>
> And that's it. They are not allowed to make long, argumentative objections, or reframe the question for the witness, or make speeches about the irrelevance of the examining attorney's questions, or get into arguments with the other side. None of that is allowed.

*Holloway,* 2021 WL 430697, at *9; *see, also, Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-05554, 2019 WL 1855989, at *7 (N.D. Cal. 2019).

Accordingly, sanctions are warranted where counsel improperly engages in speaking objections, frustrates the deposition process or coaches the deponent. *Holloway*, 2021 WL 430697, at *14 (C.D. Cal. Jan. 11, 2021) ("Defendants are entitled to a deposition that is not marred by improper instructions to answer and misconduct of Plaintiff's counsel.")

Plaintiff's counsel's obstructive conduct was pervasive. Samples of the more egregious instances of her tactics that, while utterly without merit, appeared

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

calculated to thwart inquiry into the heart of plaintiff's claims are highlighted below:

- Derogatory comments made against the questioning attorney:
  - **MS. AZIZ:…** "[b]ut you're asking a convoluted question, and **anybody with a brain can see that."** (Ex. A at 171:17-172:2)
    ---
  - **MR. HOPP:** Counsel, let's be clear. This is my deposition. I'm asking – **MS. AZIZ:** You're doing a terrible job taking it. (*Id.* at 249:3-5)

- Improper speaking objections, coaching, cutting off the witnesses, and even answering for him:
  (*Id.* at 119:17 – 120:14; 121:10-122:9)
  **Mr. Hopp:** Between May of 2016 and May of 2020 when you were purchasing hand sanitizer at CVS did you ever specifically evaluate the efficacy statement before you made the purchase?
  **MS. AZIZ: Objection as to form. It's vague and ambiguous. You're combining two different statements, and you're using terminology that the plaintiff doesn't even understand.**
  **MR. HOPP:** Okay. This is -- this is coaching, and this is entirely inappropriate.· This time we're going to the judge. He's going to answer this question the way it's phrased, or we're going to suspend the deposition and go to the judge.
  **MS. AZIZ: Why are you combining the two statements? You're assuming he read both.**
  **MR. HOPP:** The witness is answering the question. I am not engaging in colloquy with you, Counsel. This is entirely inappropriate. Your objections
  **MS. AZIZ: It's compound. It's compound. It's compound. Let's call the judge. Call the judge.**
  ---
  **MR. HOPP**: All right. Thiago, I'm going to ask my question. My question is going to involve the front and the back of the label. I'm not going to ask the question a different way. I'm not going to split up what -- the statements on the front and the back of the label. My question stands as it is.
  **MS. AZIZ: He didn't read the back. Repeatedly he has said that. So why are you combining the two? Because you're making the question compound.**
  **MR. COELHO**: He can ask a compound question, and we can object to it.
  **MS. AZIZ: I just want to make sure that the plaintiff understands what's being asked**.
  **MR. HOPP**: Now you're coaching. You're coaching. Highly inappropriate.
  **MS. AZIZ: You're misleading intentionally. You're intentionally trying to confuse the deponent.**
  **MR. HOPP**: We'll seek relief, Counsel. So, Thiago --
  **MS. AZIZ: You're intentionally trying to mislead the deponent.**

  (*Id.* at 70: 4- 71:22)

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

**MR. HOPP**: So, there's a stand with hand sanitizer; right?

**MS. AZIZ: Asked and answered.**

**MR. HOPP**: Can you describe what that looks like?

**MS. AZIZ: Objection. Calls for a narrative. Please ask a pointed question.**

**MR. HOPP**: Absolutely not. Counsel, we're going to call the magistrate. There is not a single question, I believe, that you haven't objected to. This is abusive of the process. There's nothing wrong with a narrative question when I'm asking him to describe something.

Mr. Mier, the question is: Can you describe the hand sanitizer that's available for the tenants as they enter the building?

**MS. AZIZ: Objection. Counsel, please let me respond, first. Second, that wasn't the initial question you asked, I don't believe. I'd like to hear the initial question if the court reporter wouldn't mind asking it again. Perhaps it's the same one, and I'm misremembering.**

**MR. HOPP**: It was the initial question, but I'm going to ask it again for clarity for the record.

**MR. HOPP**: Mr. Mier, can you describe for me the hand sanitizer that's available for tenants as they enter the building where you work?

**MS. AZIZ: Objection as to the form of the question. You're calling for a narrative. It's unclear what you're asking. Are you asking him to describe the product itself?**

**MR. HOPP**: Mr. Mier, can you answer this question?

**MS. AZIZ: I'm actually instructing him not to answer until we get clarification on what's being asked.**

**MR. HOPP**: All right.

**MS. AZIZ: What are you asking? It's so simple.**

**MR. HOPP**: We're definitely going to the ·magistrate. Let me clarify to save time.

(*Id*. at 173:25-176:2)

**MR. HOPP:** Is it your contention, your belief, that the 99.99 percent claim on the front label of the CVS hand sanitizer product has not been scientifically proven?

A. I -- I don't understand. Yeah.

**MS. AZIZ: I'm sorry. I'm going to object just because I feel like this is harassing. He's reading legal language, and he's not able to -- I'm sorry, Mr. Mier -- but he's not able to understand because it's legalese.**

**MR. HOPP**: You interrupted him in the middle of his answer, Counsel. That's highly inappropriate.

**MS. AZIZ: I see him struggling. He's uncomfortable. He's too shy to say that.**

**MR. HOPP**: Again, this -- now this is coaching.

**MS. AZIZ: It's not. I'm in the room. I can feel it. You're co-worker is here.**

**MS. AZIZ: You don't see him struggling.**

**MS. AYERH**: I see him trying to formulate an answer. Allow him to finish his answer.

**MS. AZIZ: I see him reading legal language that he's not able to understand.**

**MS. AZIZ:· You don't put legal language in a complaint.**

**MS. AYERH**: Allow the witness to complete his answer.

18

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

**MS. AZIZ**:· **Yeah, I'm sorry. She's not even supposed to be speaking.
But essentially the client is not -- I mean the plaintiff is not able to
understand this legal language. Why don't you ask him in plain terms so
that he can understand it? If you're asking him whether he thinks the
claim on the front of the label is false, ask him that. You have to speak
in plain English.**
**MR. HOPP**: That's not the question. And --
**MS. AZIZ**: **Then what is it?**
**MR. HOPP**: I just -- I've asked it.
**MS. AZIZ**: **He doesn't --**
**BY MR. HOPP**: Mr. Mier, I'm going to ask you the question.
All right? And, you know, we're going to keep going here, and if we have to
bring you back, we will. Because this is something the judge will have to
resolve.
**MS. AZIZ**: **Please ask questions in plain English. You're asking him to
read allegations from a complaint and verify them. He doesn't
understand the legalese.**

(*Id*. at 76:19-78:7)

**MR. HOPP**: What has changed about your awareness of hand hygiene
between May of 2020 and the present?
**MS. AZIZ: Objection. Vague and ambiguous. I'm objecting as to form.**
**A**:  When they -- when it started out, as I understand, hand sanitizers can be
better, but then as it came on, I realized -- I heard that, you know, soap and
water is better than hand sanitizers.
**MR. HOPP**: Okay. I appreciate that answer, Mr. Mier. I know you're trying,
but that wasn't what I asked. And so I want to repeat it.
**MS. AZIZ: Counsel, I disagree. I think it was responsive. And he's
answered the question already.**
 MR. HOPP: It absolutely was not responsive. We will go to the magistrate
on this one.
**MS. AZIZ**: Go ahead.
**MR. HOPP**: Mr. Mier --
**A**. Yes.
**Q**. -- can you tell me what has changed with respect to your understanding
of hand hygiene between 2020 -- May of 2020 and the present?
**MS. AZIZ: He's asked and answered it. It was absolutely responsive to
your question. You've already answered the question.**
**MR. HOPP**: You have not, Mr. Mier. With respect, will you answer the
question.
**MS. AZIZ: Counsel, he has answered it. He said that he thought it was -
- soap was more effective before, then understood that hand sanit- -- or,
I'm sorry. He thought hand sanitizer was more effective before, and
then he came to learn that soap and water is better. I mean, how is that
not responsive to hand hygiene?**

(*Id*. at 118:2-22)

**MR. HOPP**. I'm going to explain it to you, and we'll see if we can agree on
this definition.  When I say "efficacy statement," I mean the statement on the

19

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

label that says "Kills 99.99% of germs" and then an asterisk and the other language on the back. Do you understand that?

**MS. AZIZ: I'm sorry. Objection as to form. It's vague and ambiguous. What other statement on the back? And it's assuming a lot of facts not in evidence.**

MR. HOPP: Facts not in evidence is not an appropriate objection. There are no facts in evidence. This is a discovery deposition. So you need to stop that.

**MS. AZIZ: You're assuming facts.**

MR. HOPP: I can ask the question again if you would like me to.

**MS. AZIZ: Yeah. Because I don't understand the statement on the back piece.**

MR. HOPP: Counsel, you are not under oath.

**MR. HOPP.** Mr. Mier, do you want me to ask the question again?


(*Id*. 244:4-250:17)


**Mr. Hopp.** Do you believe that in February of 2018 you purchased hand sanitizer?

**MS. AZIZ: Object. The same objections as before. We're seeing this document for the first time. This is what you're representing.**

THE WITNESS: Yes.

MR. HOPP: All right. Mr. Mier, I'd like you to look at -- in all of 2019. Look at every entry in 2019 if you'd like. Take as much time as you want. And tell me whether you see hand sanitizer purchases at CVS in 2019 under ExtraCare record.

**MS. AZIZ: I just want to point out so that the record is clear, each one of these documents says 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 --**

THE REPORTER: Okay, Counsel. Slow down. That's impossible to report.

**MS. AZIZ: I'm sorry, Lori. I thought you would be able to do like a shorthand for a number to do that. I apologize about that.**

**But basically these documents have about 60 entries. Each one of these pages -- you produced about, I don't know, ten. Is that all of them? Maybe ten pages.**

**And in there there's one, two, three, four, five, six -- there's seven columns for each entry, and the fourth column has codes. They're not even words.**

**So you're asking him to read for an entire year every entry and tell you if it says hand sanitizer.**

**For the record, it's just vague and ambiguous because the client doesn't understand what this document is, has never seen this document before. This lacks authenticity. We don't know if it's privy -- and it's also just harassing and calling for him to have some kind of expert knowledge of CVS's -- what they mean. So if you want him to testify off of this printout which you have, you know, ask those questions, that's fine. But you have an unauthenticated document and tell you whether he purchased hand sanitizer for the entire year of 2019.**

MR. HOPP: Counsel, that objection is – it violates Rule 30, and we will seek appropriate rulings for that.

20

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

Mr. Mier, you were --

**MS. AZIZ: Please do. Be my guest.**

**MR. HOPP**: Mr. Mier, the question stands. Can you see in 2019 any purchases of hand sanitizer at CVS on this document?

**MS. AZIZ: So you have to review these pages. Can you do that? That's 2018. '19 is here. And it ends on the bottom of this page. Every time you read a code that you don't understand what the word is, I'd like you to say so. So go ahead and read the 4th all the way down. Read it out loud so I know what you're reading. They're codes. Go ahead.**

**[---]**

**MS. AZIZ: So please read the item on these three pages that are all -- well this is 2018. It begins here with 2019 here. '19 begins here. Start at the top. Sure, that's easier. Okay. So read -- if you can't read it, spell out the letters or something or try to read it. Okay. All the way through to 2019.**

**MR. HOPP**: Let's clarify, Mr. Mier. The question isn't read every entry for 2019. I have not asked you to do that into the record. I would not waste your time or my time. Mr. Mier, the question is, looking at entries for 2019 do you see anything to -- that indicates to you that you purchased hand sanitizer? Take your time. Review the documents --

**MS. AZIZ**: Go ahead.

**MR. HOPP**: -- and see if you see any entries in 2019 indicating that you purchased hand sanitizer during that calendar year.

**MS. AZIZ: What I'm instructing my client to do, because he has never seen this document before, is I'd like him to read out loud the center column so that we can all understand what is written here as the description of these documents. I think that is how we can create a complete record, and that's the only way that he's going to answer this question. So begin --**

**MR. HOPP**: That is not the question. That is obstructionist.

**MS. AZIZ: It is not.**

**MS. AZIZ: You're asking him to read off 60 lines per page for three pages and tell you whether any of them contain a hand sanitizer. He has to read every single line item, and I want to hear it. I don't have a copy of this document in front of me. I want to know what he's reading. And I want to understand whether he understands what he's reading. So that is how he's going to answer the question**

**MR. HOPP**: Counsel, let's be clear. This is my deposition. I'm asking --

**MS. AZIZ: You're doing a terrible job taking it. I don't know he if can. He has to understand what he's reading.**

**MR. HOPP**: When I'm finished with my questions, if you would like to ask the witness questions, that may or may not be your right, but he's answering my question. I am not asking him to read the entire document into the record, and I do not want him to do that.

**MS. AZIZ**: He's not reading the entire document into the record. You asked him to go **through every single purchase he made in 2019. I'm telling him to do the exact same thing; just read it out loud so that we can follow along and we can understand what's actually written on this document. Why don't you want the words that are written in this document to be on the record? Why?**

**MR. HOPP**: The document is in the record. It's a deposition exhibit.

21

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

**MS. AZIZ**: Why are you objecting to them reading it? You're telling him to read it. Why can't he read it out loud? Why?

**MR. HOPP**: Mr. Mier, can you --

**MS. AZIZ**: Go ahead and read it out loud. Go ahead and read it out beginning with that entry, right now, please.

**MR. HOPP**: For the record, this is obstructionist, this is coaching the witness.

**MS. AZIZ**: This is literally what you told him to do. You told him to read all the entries. All I'm asking is for him to read it out loud. You want to keep going. We'll be here all day.

**MR. HOPP**: This is your choice. This is 180 degrees from what I asked him to do, and you know that, Counsel.

**MS. AZIZ**: No, it's not. You said read every single item for 2019. Go ahead and read it, please.

- Other instances are identified in the transcript. (*See Id*. at 80:18-81:8; 150:11-151:5; 153:19-154:6; 154:11-156:5; 164:21-165:1; 169:12-25; 242:4-15.)

Counsel's conduct was improper and impeded Defendants from conducting a fair deposition and pursuing relevant lines of inquiry. As illustrated above, large portions of the deposition veered from questions and answers to lengthy speaking objections, coaching, and derogatory comments regarding defense counsel. As noted by the Court in *Hardin*, this type of behavior "substantively interferes with the whole point of a deposition" and "makes the discovery process valueless because it prevents the other side from building its case." *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019 WL 1855989, at *7 (N.D. Cal. Apr. 25, 2019). "The court may impose an appropriate sanction – including the reasonable attorney's fees included by any party – on a person who impedes, delays, or frustrates the fair examination of a deponent." Fed. R. Civ. P. 30(d)(2).

### 3. Monetary Sanctions and a Renewed Deposition of Mier Are Warranted

Fed. R. Civ. P. 30(d)(2) provides that "[t]he court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." *See, Horowitz,* 2018 WL 4560697, at *5. ("The Court finds that monetary sanctions in the form of attorney's fees and costs are

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

warranted. [Defense / deponent's counsel's] behavior through coaching, breaks, and frequent unprofessional comments wasted a large portion of Chen's deposition time and forced Plaintiffs to seek the Court's intervention. A monetary sanction is warranted to make Plaintiffs whole"). The court may also order depositions to be resumed or taken again and that the cost be borne by the party whose counsel's conduct necessitated retaking the deposition. *Holloway*, 2021 WL 430697, at *13. Wilshire's conduct warrants sanctions. *Funk v. Town of Paradise*, 2011 WL 2580357, at *2 (E.D. Cal. 2011) (Fees and expenses were an appropriate remedy where "counsel repeatedly interrupted the proceedings, interjected editorial comments, and coached or suggested information to the witnesses" and "because defense counsel's inappropriate conduct led to the disruption of the depositions, it was entirely appropriate for the magistrate judge to order the depositions reconvened at Defendants' expense.").

In addition to the monetary sanctions requested above, this Court's sanctions order should also include a renewed deposition so that Defendants may re-examine Mier on those questions to which he was improperly instructed not to respond, and the questions on which he was coached to respond in a specific way. *See, Hernandez v. Lynch*, 2019 WL 6998774, at *4 (C.D. Cal. 2019) ("the Court finds that the Special Master was correct to conclude that Plaintiffs' counsels' conduct was improper and impeded Defendants from conducting a fair deposition and pursuing relevant lines of inquiry. In light of this, it was proper to order new depositions of the Named Plaintiffs."); *IPS Grp., Inc. v. Duncan Sols., Inc.*, 2017 WL 3457141, at *6 (S.D. Cal. 2017) ("Plaintiff must reimburse DPT for reasonable travel, attorney's fees, court reporting and any facility costs for [a] renewed deposition.") (emphasis added.)

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

### 4. The Fees Incurred in Connection with the Instant Motion Are Recoverable

The fees incurred in connection with drafting the instant motion and reply brief, as well as attending the hearing on the instant motion, are recoverable as well. "Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if a court grants a motion to compel discovery it must, after giving an opportunity to be heard, require the non-moving party to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Holloway*, 2021 WL 430697, at *14. Here, Defendants have incurred a total likely in excess of $15,000.00 in fees associated with the instant fee motion. (Ayerh Decl., ¶ 11.) The total amount of additional fees and costs that the Defendants will seek for time incurred in connection with this fee motion will be set forth in a declaration that will be filed concurrently with Defendants' supplemental brief. (*Id*.)

## IV. DEFENDANTS' CONCLUSION

Depositions are intended to be question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit. When a deposition becomes something other than that because of the strategic interruptions, suggestions, statements, arguments of counsel, and impermissible instructions not to answer, it ceases to serve the purpose of the Federal Rules of Civil Procedure. Mier's counsel violated the Federal Rules governing deposition conduct. For all of the above reasons, Defendants request that this Court grant their Motion for Sanctions.

## V. PLAINTIFF'S CONTENTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES

### A. Pertinent Facts

Defendant took Plaintiff's deposition on February 24, 2021. Throughout the deposition, whenever Defendant made a valid objection—and she did make a few—Defendant's counsel threatened to go to the judge or magistrate and/or

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

chastised Plaintiff's counsel for improperly "coaching" the witness. The term "judge" appears in the transcript 21 times, while the term "magistrate" appears 22 times. Defense counsel accused Plaintiff of coaching the witness 11 times. Nonetheless, in almost every case, after Plaintiff's counsel made her objection, she allowed her client to answer the question to the full extent of his ability. Defendant wants another bite at the apple, to question Plaintiff on matters as to which he already provided sufficient responses, and which are privileged, irrelevant, and repetitive of discovery Defendant has already obtained. Defendant's counsel should not get this chance to harass Plaintiff a second time.

Defendant seeks to re-depose Plaintiff on the following topics for which an instruction not to answer was allegedly given: (1) the documents Plaintiff reviewed and relied upon in preparation for his deposition; (2) the identity of Plaintiff's coworkers; and (3) information related to Plaintiff's Facebook advertisement, including the date Plaintiff viewed it and whether Plaintiff contact his attorneys before or after he purchased the hand-sanitizer. Defendant does not point out a single instance of an incomplete or deficient answer to any other line of questioning.

### B. Argument

#### 1. Plaintiff Has Provided All of the Documents Viewed in Preparation of the Deposition to Defendant, the List of which, in Any Event, Was Privileged.

"In a federal action such as this based on diversity of citizenship jurisdiction, state law governs attorney-client privilege claims." *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1081 (C.D. Cal. 2010) (citing Fed. R. Evid. 501); *see also Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir. 1993) ("In determining the existence or extent of the privilege in this case, California law controls."); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal.

1998) ("In a federal action based on diversity of citizenship jurisdiction, state law governs privilege claims.").  Under California law, "[t]he attorney-client privilege is grounded in public policy considerations and 'is in furtherance of the proper and orderly functioning of our judicial system, which necessarily depends on the confidential relationship between the attorney and the client.'" *Kandel*, 683 F. Supp. 2d at 1081 (quoting *People v. Gionis*, 9 Cal.4th 1196, 1207, 40 Cal.Rptr.2d 456, 461–62, 892 P.2d 1199 (1995)); *see also People v. Velasquez*, 192 Cal.App.3d 319, 327, 237 Cal.Rptr. 366, 370 (1987). "In enacting the attorney-client privilege, the California Legislature recognized 'the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.'" *Kandel*, 683 F. Supp. 2d at 1081 (quoting *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732, 101 Cal.Rptr.3d 758, 219 P.3d 736 (2009)); *see also Mitchell v. Superior Court*, 37 Cal.3d 591, 600, 208 Cal.Rptr. 886, 890, 691 P.2d 642 (1984)).

Under California law, there is a valid claim of privilege as to communications provided by an attorney to her client, even when they are reviewed in advance of a deposition.  *Mize v. Atchison, T. & S. F. Ry. Co.*, 46 Cal. App. 3d 436, 449, 120 Cal. Rptr. 787, 796 (1975) ("the mere fact of allowing a witness to refresh his recollection from a communication by him to his attorney and then calling him as a witness does not necessarily waive the lawyer-client privilege.").  Accordingly, Plaintiff's attorney stated a valid claim of privilege as to the identity of these documents.  There is good cause for this rule.  The particular documents that an attorney decides to show her client may be indicative of legal strategies or theories which should remain private between attorney and client.  Regardless of the federal rule, as shown, state law governs claims of attorney-client privilege in diversity cases and, here, the state rule is that these communications are privileged.  *See Calvert v. State Bar*, 54 Cal.3d 765, 779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) ("Confidential

communications include *information* transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" (emphasis added) (quoting Cal. Evid. Code § 952); *see also Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371, 853 P.2d 496, 499–500 (1993) ("The attorney-client privilege applies to communications in the course of professional employment that are intended to be confidential."). Accordingly, counsel for Plaintiff was correct in her assertion of privilege and there is, therefore, no basis for a second deposition on this line of questioning.

Moreover, under Fed. R. Civ. P. 26(b)(2)(C), a motion to re-depose a witness must be denied where "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Here, either Plaintiff or Defendant has produced all of the documents that Plaintiff reviewed in anticipation of his litigation. Plaintiff is not hiding documents from Defendant. Accordingly, the discovery sought can, and has been, obtained from some other source that is more convenient, less burdensome, or less expensive.

## 2. The Identity of Plaintiff's Co-Workers is Irrelevant to this Case.

Courts in this Circuit have denied requests from Defendants for "an order compelling deposition answers to [their] irrelevant questions." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 313–14 (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, No. 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020). This is because "depositions are generally limited to questions that seek relevant information." *Id.* (citing *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) (recognizing the "general deposition rules" under Rule 26(b)(1) that "relevant questions may be asked")). "Moreover, courts have a duty to limit discovery that is 'outside the scope permitted by Rule 26(b)(1).'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(c)(iii)). "Hence, even though a witness may

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

have improperly declined to answer deposition questions, courts are within their discretion to not compel further deposition testimony on irrelevant matters." *Id.* (citing *Space Data Corp. v. Google LLC*, Case No. 16-cv-03260 BLF, 2018 WL 3054797, at *1 N.D. Cal. June 11, 2018 (declining to compel further testimony on unanswered deposition questions regarding litigation funding given the irrelevance of that testimony); *see also Rivera v. NIBCO, Inc.*, 204 F.R.D. 647, 649 (E.D. Cal. 2001) (despite previous non-answer at deposition regarding place of birth, granting protective order against further questioning at redeposition given the irrelevance of that testimony); *Nguyen v. LVNV Funding, LLC*, Case No. 15cv758-LAB (RBB), 2017 WL 951026, at *11 (S.D. Cal. Mar. 10, 2017) (notwithstanding previous instruction not to answer, declining to compel further deposition testimony that was irrelevant and instead issuing a protective order).

In fact, in *V5 Techs.*, the Court held that "Notwithstanding the improper instruction not to answer here, the Court declines, based on the circumstances of this case, to a compel further deposition testimony given that the subjects are irrelevant and, therefore, beyond the scope of allowable discovery." *V5 Techs.*, 334 F.R.D. at 313-314, n.9. Such is the case here. Regardless of the merits of Plaintiff's counsel's instruction not to answer, the Defendant sought, and continues to seek, plainly irrelevant materials which will not serve this case in any manner and do not justify requiring Plaintiff to sit for a second deposition. To fall within the ambit of discoverable material, questioning must be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and it must also be "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Further, "[d]istrict courts have broad discretion in determining relevancy for discovery purposes." *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

1          The identity of Plaintiff's co-workers is plainly irrelevant to his case against

2   CVS for false advertising.  Plaintiff has not brought an employment case against

3   CVS.  He has not brought a case that touches on his line of work in any manner.

4   He has brought a case against CVS for printing a lie on the front of its product.

5   Defendant alleges that this line of questioning is relevant because Plaintiff's co-

6   workers might have seen him use hand-sanitizer at work.  But Plaintiff admits that

7   he has used hand-sanitizer at work, and still uses it, though significantly less

8   frequently than he once did.  Accordingly, what can be gained from this line of

9   questioning, that would justify requiring Plaintiff to sit for a second deposition?

10  Identifying Plaintiff's co-workers, and potentially questioning them as to

11  Plaintiff's use of hand-sanitizer, is plainly not proportional to the needs of this

12  case.  Defendant seeks to turn this litigation into an inquisition and memory test

13  upon Plaintiff, but plainly, the focus of this litigation is on CVS and on its decision

14  to place a plain falsehood on the front of its product.  Nor is questioning Plaintiff's

15  co-workers likely to result in admissible evidence in that the result would plainly

16  not be relevant to a determination as to the falsity and materiality of CVS's product

17  statement, which are the central issues in this case.  Defendant's entire line of

18  questioning here is a mere distraction from the parties' case in chief, regarding

19  which, Defendant apparently needs a distraction.  The Court should not allow itself

20  to be distracted by Defendant's tactics.

21         Defendant's cited cases do not hold otherwise.  For instance, in *Hernandez

22  v. Lynch*, No. EDCV16620JGBKKX, 2019 WL 6998774, at *2 (C.D. Cal. June 18,

23  2019), in two depositions, "Plaintiffs' counsel instructed [the deponent] not to

24  answer questions on the grounds that they were not relevant more than a dozen

25  times" in each deposition.  Here, Plaintiff instructed not to answer the irrelevant

26  question on privacy grounds, which are significant, given that the Plaintiff's co-

27  workers have no relation to this case.  Further, the court in *Hernandez* proceeded to

28  find that the lines of questioning *were* relevant.  *Id*. at *4.  Here, the questioning

29
JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

plainly was not.  In *Holloway v. Cty. of Orange*, No. SACV1901514DOCDFMX,
2021 WL 430697, at *2 (C.D. Cal. Jan. 11, 2021), "Defendants' counsel terminated
Deputy Renegar's deposition early, unilaterally leaving after approximately 5 1/2
hours of on-the-record testimony."  Here, Plaintiff's counsel did not terminate the
deposition.  While Defendant objects to several off-the-cuff remarks, Defendant
can identify very few specific questions as to which it was denied a response, and
Defendant has failed to identify any case law for the proposition that a second
deposition be allowed merely because, at the first deposition, there were colorful
remarks.  In *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253
F.R.D. 524, 525 (C.D. Cal. 2008), the defendant's 30(b)(6) deponents were
unprepared on 10 and 14 deposition topics, respectively, and refused to provide
answers as to numerous exhibits.  Plaintiff responded to questioning on an exhibit
produced, for the first time, at deposition, and cannot have been said to have been
unprepared for any matters discussed.

> **3.     All of the Information Sought Regarding Plaintiff's
>         Advertisement Has Been Produced to Defendant and the
>         Court.**

As noted in Plaintiff's introduction, all of the information Defendant seeks
related to Plaintiff's advertisement has been produced to Defendant and placed
before the Court.  Plaintiff has produced the advertisement in question.  Plaintiff
has produced an email showing when the advertisement became operational.  Plaintiff
has produced evidence showing when Plaintiff first contacted his
counsel.  This evidence plainly shows that Plaintiff, even according to
Defendant's own records, must have purchased the product before he saw the
advertisement, and before he contacted his counsel.  Defendant is unhappy with
this result.  It wants to ask Plaintiff more questioning about what the evidence
already plainly shows.  But the Federal Rules don't afford Defendant that chance.
Under the Federal Rules, parties are not allowed to re-depose parties to ask them

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

questions as to which documentary evidence has already provided a resounding answer. "Rule 26 is designed in part to limit discovery that is unreasonably cumulative or duplicative or that could be obtained from some other source that is more convenient, less burdensome, or less expensive." *S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL 1296043, at *3 (N.D. Cal. Apr. 1, 2011) (citing Fed. R. Civ. P. 26(b)(2)(C)); *see also Sloan v. Oakland Police Dep't.*, No. C–00–4117 CW (JCS), 2006 U.S. Dist. LEXIS 25100, at *15 n. 2, 2006 WL 753013 (N.D.Cal. Mar. 23, 2006) (noting, among other things, that should defendants bring a motion to compel responses to interrogatories served before plaintiff's deposition, such a motion will only be granted if the additional interrogatory responses sought are not duplicative of information already obtained, through deposition or otherwise); *Pulsecard, Inc. v. Discover Card Services, Inc.*, Civ. A. No. 94–2304–EEO, 168 F.R.D. 295, 306 (D. Kan. 1996) ("That litigants may engage in successive forms of discovery 'is not a license to engage in repetitious, redundant and tautological inquiries.'") (quoting *Richlin v. Sigma Design West, Ltd.*, 88 F.R.D. 634, 640 (E.D. Cal. 1980)) (internal quotation marks omitted); *Penk v. Oregon State Bd. of Higher Education*, 1983 U.S. Dist. LEXIS 10463, at *1–2, 1983 WL 144448 (D. Or. Dec. 23, 1983) (defendant had taken extensive depositions of most of plaintiffs' experts and also had the reports the experts prepared for use at trial, so defendant had had "complete access to the requested information through the other discovery devices it has chosen to use").

Under Rule 26:

"A party must obtain leave of court [if the deponent has already been deposed in the case], and the court must grant leave to the extent consistent with Rule 26(b)(2)." Fed.R.Civ.P. 30(a)(2) (A)(ii).

Rule 26(b)(2) provides that the court may alter the length of deposition under Rule 30. Fed.R.Civ.P. 26(b)(2)(A). However, "the

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1    court must limit the frequency or extent of discovery otherwise

2    allowed by these rules or by local rule if it determines that:

3    (i) the discovery sought is unreasonably cumulative or duplicative, or

4    can be obtained from some other source that is more convenient, less

5    burdensome, or less expensive;

6    (ii) the party seeking discovery has had ample opportunity to obtain

7    the information by discovery in the action; or

8    (iii) the burden or expense of the proposed discovery outweighs its

9    likely benefit, considering the needs of the case, the amount in

10   controversy, the parties' resources, the importance of the issues at

11   stake in the action, and the importance of the discovery in resolving

12   the issues.

13   Fed.R.Civ.P. 26(b)(2)(C).

14   *Jones v. Cunningham*, No. C 99-20023 RMW (PVT), 2009 WL 3398801, at *1

15   (N.D. Cal. Oct. 20, 2009).  Here, all three factors enumerated under Rule

16   26(b)(2)(C) of the Federal Rules of Civil Procedure weigh against allowing a

17   second deposition on the material in question.  Given that Plaintiff has already

18   provided Defendant with evidence documenting the timeline in question, the

19   evidence sought is "unreasonably cumulative or duplicative" and can be—and in

20   fact, has been—"obtained from some other source that is more convenient, less

21   burdensome, or less expensive." *Id.*  It would be frankly absurd to force Plaintiff

22   to sit for a second deposition merely to be questioned on matters that have been

23   affirmatively proven through documentary evidence.  As Defendant cannot come

24   up with an actual justification for doing so, it can be presumed that Defendant's

25   real desire is simply to harass the Plaintiff.  Second, Defendant has had ample

26   opportunity to obtain the information by discovery—and in fact has obtained it.

27   Third, the burden and expense of the proposed discovery clearly outweighs its

28   likely benefit.  It is unclear what specifically Defendant hopes to accomplish

---

32

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1  through a second deposition of Plaintiff.  Given that Plaintiff has already
2  produced records showing the timeline in question, Defendant cannot hope to
3  allege that it seeks, in any way, the truth.  The truth has been provided to
4  Defendant.  But in its pique, Defendant wants to seek a means, however it can, to
5  bend the truth.  That is not the purpose of a deposition.  Defendant must not be
6  allowed to abuse the rules of discovery.

7      Moreover, as in *Jones*, Defendant "has not stated that the motion for leave
8  to take further deposition stems from the development of new evidence or new
9  theories."  *Jones*, 2009 WL 3398801 at *2 (citing *Graebner v. James River Corp.,
10  et al.*, 130 F.R.D. 440, 441 (N.D. Cal. 1990) ("... repeat depositions are
11  disfavored except in certain circumstances, [including] long passage of time with
12  new evidence, new theories to the complaint, etc."). Therefore, as in *Jones*, "a
13  second deposition of plaintiff would be duplicative [because] . . . [D]efendant . . .
14  has had ample opportunity to obtain discovery by deposition." *Id*.  Here, not only
15  has Defendant failed to show the development of new theories and new evidence
16  supporting a second deposition, Defendant has also failed to show that it cannot
17  obtain—because it has in fact obtained—the information from other sources.  *See*
18  *Est. of Richardson v. Kanouse*, No. CV 10-5999 DDP (SSX), 2013 WL
19  12113222, at *3 (C.D. Cal. Mar. 18, 2013) (motion to compel deposition
20  testimony denied without further showing of need after exhaustion of alternative
21  means and sources of obtaining the information); *Holguin v. County of Los
22  Angeles*, 2011 WL 7128640 at *4 (C.D. Cal. Oct. 12, 2011) (allowing deposition
23  of first deponent to go forward but granting motion for protective order as to
24  second deponent in part on the ground that first deponent may be able to provide
25  the information sought from second deponent); *Garcia v. Benjamin Grp.
26  Enterprises, Inc.*, No. CV-09-2671 SJ VVP, 2010 WL 2076093, at *1 (E.D.N.Y.
27  May 21, 2010) (although discovery was relevant, motion to compel was denied
28  because defendants did not make showing that the information was not readily

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

available from other sources); *In re Plastics Additives Antitrust Litig.*, No. CV 03-2038, 2005 WL 8149514, at *3 (E.D. Pa. Aug. 9, 2005) (denying motion to compel, although facts sought were "vital" to the defense, because "the information sought . . . is available through other sources"); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001) (affirming district court's refusal to permit plaintiff to depose defendant's corporate counsel regarding investigation of age discrimination policy, as other avenues were available to obtain requested information); *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 211-212 (D.P.R. 1998) (denying motion to compel deposition of plaintiff's attorney on reasons for terminating agreement because information available through alternative means, such as deposing plaintiff's executives); *Richlin v. Sigma Design W., Ltd.*, 88 F.R.D. 634, 640 (E.D. Cal. 1980) ("In light of the Magistrate's finding that the information sought to be ascertained is duplicative of that already discovered, the burden to the plaintiffs, as weighted against the marginal benefit which the defendants stand to gain, tips the scales in favor of the plaintiffs.").

And what is more, the requested discovery, which, in any event, has been provided, is not even relevant to this case. In *Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584–85 (C.D. Cal. 2007), the court found that although "some of plaintiff's attorney-client privilege objections to the deposition questions were not well taken," that the witness need not answer the questions at issue in a second deposition because the requested testimony was covered by other objections. Here, a clear objection of relevance applies to the requested testimony. Under California law, individual reliance as to a UCL and FAL claim is presumed upon a showing of materiality; accordingly, Plaintiff's specific state of mind when he purchased the hand-sanitizer is not relevant; what is relevant is whether a reasonable consumer would have found the statement at issue to be an important consideration. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 531-32 (C.D. Cal. 2011)

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

(individualized proof of injury is not needed as to UCL and FAL claims; "economic loss caused by the defendant" is shown through "the purchase of defendants product containing misrepresentations."); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 207 P.3d 20, 39 (2009) ("a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material") *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 561, 128 Cal. Rptr. 3d 888, 903 (2011), as modified (Aug. 1, 2011) ("reliance is irrelevant to plaintiffs' cause of action under the UCL"); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997). Accordingly, questioning related to Plaintiff's individual motives when purchasing the hand-sanitizer cannot lead to admissible evidence, and is not proportional to the needs of this case. In short, the entire line of questioning, to which Defendant has obtained an answer, is a complete distraction from the real issues at stake in this case.

### 4. Sanctions Are Not Warranted.

In *Carter v. Telecare Corp.*, No. CV1810748RGKPLAX, 2019 WL 6703392, at *8 (C.D. Cal. Aug. 16, 2019), the Court denied a request for sanctions where a young attorney became overzealous on the record at a deposition. That is what happened here. In *Carter*, unlike the case at hand, the plaintiff's attorney had instructed his client not to answer questioning that unmistakably sought relevant, discoverable testimony. *Id*. Nonetheless, citing the youth of the attorney, and the fact that the defendant's attorney also engaged in heated debate on the record, the court found that sanctions were not necessary. *Id*. Sanctions are also unwarranted because Defendant sought sensitive information, as to which instructions not to answer were imminently conceivable. *See Doe v. City of San Diego*, No. 12-CV-0689-MMA DHB, 2013 WL 6577065, at *8 (S.D. Cal. Dec. 13, 2013) ("The City's counsel's instructions, while erroneous, appear to have been made in an abundance of caution in light of the sensitive issues at play.").

Here, Plaintiff's attorney, seeking only to be a protective advocate, made some colorful remarks on the record which are regrettable.  However, counsel for Defendant stoked the fire by threatening, within the first few minutes of the deposition, to call the magistrate, and stating that it "was a promise" that he would do so.  (Mier Dep. at p. 17:17-18:11) ("We will again go to the magistrate.  I'm not threatening you.  It's a promise.")  Further, counsel for Defendant produced as an exhibit, for the first time, a voluminous spreadsheet, which counsel for Defendant demanded that Plaintiff read for the first time at his deposition, and answer questions on.  (*Id*. at p. 232:13-261:24) ("Counsel, did we already receive this in some -- in our document production? MR. HOPP:· You have not.  MS. AZIZ:· We've never received it.· This is the first time I'm seeing it? MR. HOPP:· That's correct.").  And counsel for Defendant refused to provide a second copy of this document for counsel for Plaintiff.  (*Id*. at p. 247:4-5.)  Additionally, counsel for Defendant, without cause, accused Plaintiff of lying "repeatedly."  (*Id*. at p. 239:19-20) ("this client of yours has lied repeatedly.")

Finally, Defendant's counsel questioning Plaintiff at length as to legal theories and expert testimony involving medical terminology in the Complaint, demanding answers on attorney work-product.  (*Id*. at p. 126:12-131:5; 147:24-152:16.)  At times, counsel for Defendant misstated what the Complaint stated in an attempt to get an admission out of Plaintiff.  (*Id*. at p. 169:12-171:25).  It was only in reaction to this improper and fraudulent line of questioning that counsel for Plaintiff made her "anybody with a brain" comment.  (*Id*. at p. 171:9-172:2.)  Plaintiff's counsel's frustration was, if regrettable, understandable under the circumstances.  This testimony was protected by the attorney-client privilege, and it was improper for Defendant to demand it.  *See Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584–85 (C.D. Cal. 2007):

> For instance, although Ms. Armstrong and Mr. Sommer were deposed as percipient witnesses, defendant repeatedly asked questions

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

improperly seeking their legal or expert opinions, *cf. United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir.) ("The lay witness may not, however, testify as to a legal conclusion, such as the correct interpretation of a contract."), *cert. denied*, 534 U.S. 972, 122 S.Ct. 393, 151 L.Ed.2d 298 (2001); *Evangelista v. Inlandboatmen's Union of the Pac.*, 777 F.2d 1390, 1398 n. 3 (9th Cir.1985) (same), and since plaintiff's objections of "legal conclusion" were proper, the witnesses need not answer these questions.

Yet Defendant continued to ask questions seeking legal contentions, which courts in this Circuit have repeatedly held are more appropriately framed as contention interrogatories, and not deposition questioning. *See McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal.), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) ("no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party [such as plaintiff or defendant].*"); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 12-CV-0260-H WVG, 2013 WL 3467413, at *6 (S.D. Cal. July 10, 2013) ("Further, case law suggests that a . . . deposition is inefficient as opposed to ROGs, which in this case have already been asked and determined to be sufficiently answered.") *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-475 PJH MEJ, 2012 WL 1413368, at *3 (N.D. Cal. Apr. 23, 2012) (Denying request to compel deposition where "TVI is able to learn the same information it seeks through this deposition from appropriately framed contention interrogatories, which TVI has already propounded."). Despite this case law, Defendant's counsel asked:

Paragraph five starts "Defendant was aware that no scientific study supported it's '99.9%' claims, yet it proceeded to make

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1  those claims on the product labels, creating the clear impression

2  that it had been scientifically proven." Do you see that? A.· Yes.

3  Q.· Is it your contention, your belief, that the 99.99 percent

4  claim on the front label of the CVS hand sanitizer product has

5  not been scientifically proven? A.· I -- I don't understand.·

6  Yeah.

7  MS. AZIZ:· I'm sorry.· I'm going to object just ·because I feel

8  like this is harassing. He's reading legal language, and he's not

9  able·to -- I'm sorry, Mr. Mier -- but he's not able to·understand

10  because it's legalese.

11  (*Id*. at p. 173:18-174:8.)   And despite Plaintiff's counsel's objections that

12  Plaintiff did not understand the legalese, and that the question called for a

13  legal conclusion, and despite Plaintiff's repeated affirmation that he did not

14  in fact understand the question, counsel for Defendant continued to repeat

15  this question four times.  (*Id*. at p. 173:18-177:22.)  One can understand why

16  counsel for Plaintiff may have become frustrated.

17  *IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15CV1526-CAB-MDD, 2017

18  WL 3457141, at *1 (S.D. Cal. Aug. 11, 2017), which Defendant cites in its

19  favor, is not on point.   In *IPS Grp.*, the plaintiff's counsel instructed

20  witnesses not to answer on numerous instances on grounds of relevance,

21  presented two witnesses under Rule 30(b)(6) who were not properly

22  prepared, "instructed witnesses to read every page of lengthy documents on

23  the record to add to the running time; and engaged in unprofessional conduct

24  including standing and leaning over the table, pointing and yelling." *Id*.

25  None of that conduct occurred at Plaintiff's deposition.  When Plaintiff's

26  counsel instructed not to answer—although, as noted, many of the lines of

27  questioning were clearly irrelevant—she did so on privacy and privilege

28  grounds.   Further, while Plaintiff's counsel at one time suggested that

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1   Plaintiff read a new document that had not previously been produced on the
2   record, she did not ultimately demand that happen, and it did not, in fact,
3   happen.   (Mier Dep. at p. 252:14-21.)   And there is absolutely no
4   contention—as it did not occur—that Plaintiff's counsel stood or raised her
5   voice during the deposition.   In short, *IPS Grp.* involves conduct which
6   simply did not occur at Mr. Mier's deposition.

7        Likewise, in *Horowitz v. Chen*, No. SACV1700432AGDFMX, 2018
8   WL 4560697, at *3 (C.D. Cal. Sept. 20, 2018), the deponent and his attorney
9   "repeatedly left the room together while a question was pending" and the
10  deponent's attorney repeatedly "improperly instructed [the deponent] not to
11  answer questions throughout the deposition," on grounds that they had been
12  asked and answered.   Defendant cannot identify a single instance of that
13  occurring and, as noted, all of the instructions not to answer came as to
14  privileged matter, clearly irrelevant matter, or questions that have clearly
15  been answered by more efficient, documentary means.

16       Similarly, *Funk v. Town of Paradise*, No. 2:09-CV-01000-MCE, 2011
17  WL 2580357, at *1 (E.D. Cal. June 28, 2011) is easily distinguished. In
18  *Funk*, "[o]n numerous occasions during th[e] depositions, defense counsel
19  instructed deponents not to answer, interrupted questions and answers,
20  interjected editorial comments, and coached or suggested information to
21  witnesses." Here, Plaintiff's counsel only instructed Plaintiff not to answer
22  on three basic occasions, as to which the questioning was either (1)
23  privileged, (2) clearly irrelevant, or (3) already answered by Plaintiff's
24  document production.   The transcript shows that while Plaintiff's counsel
25  did state her objections for the record, sometimes at length, as Defendant's
26  conduct merited a spirited response, Plaintiff's counsel did not actually
27  interrupt questions and answers, or coach or suggest information to the
28  witness. *Funk* is simply not on point.

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

*Hardin v. Mendocino Coast Dist. Hosp.*, No. 17CV05554JSTTSH, 2019 WL 1855989, at *4 (N.D. Cal. Apr. 25, 2019) similarly involved obstructive conduct that was not present at Mr. Mier's deposition.   In *Hardin*, the deponent's counsel ridiculed the deposing counsel's attempts to reformulate questioning, demanding that the questioning be read back by the court reporter, and then interjecting that the questions were asked and answered before the deponent could respond.  Nothing like that happened at Mr. Mier's deposition.

Here, there was a lack of civility on both sides of the deposition.  Plaintiff's counsel did not act alone, and should not be punished while Defendant's counsel gets off the hook.  Defense counsel was able to get the responses it desired out of all but a very small sample of questioning, as to which, as shown, there is no necessity for a re-deposition.  Defendant's motion is quite simply a distraction.

**C.**    **Defendant's Counsel Received Clear Answers to the Vast Amount of Questions, Despite Counsel for Plaintiff's Spirited Objections.**

Defendant's cherry-picked selection of quotes from the deposition transcript ignores that, in just about every instance, Defendant eventually obtained a clear, substantive answer to its question on the record.  The following are full quotes from the transcript showing that Defendant obtained its answers:

- [following the "terrible job" comment, during which Defendant's counsel was asking Plaintiff to answer questions on a lengthy spreadsheet that had not, at that point, been produced, and following testimony on p. 244:4-250:17]:

  Q.· Mr. Mier, do you remember my question?

  A.· You asked if I'd seen hand sanitizer that's on my list.

  MS. AZIZ:· Same objections.

  BY MR. HOPP:

  Q.· 2019, yes. And what's your answer?

40

1     A.· No, there's no hand sanitizers on the list.

2     (Mier Dep. at p. 252:14-21.)

3     •    [following the testimony at p. 118:2-22; 119:17 – 120:14; 121:10-

4     122:9]:

5     Q.· Are you with me?· Can you hear me?

6     A.· Yes.

7     Q.· All right.· We've talked about efficacy

8     statement, and I have defined an efficacy statement.

9     Do you remember that definition?

10    MS. AZIZ:· Do you?

11    THE WITNESS:· Yes.

12    MR. HOPP:· All right.

13    BY MR. HOPP:

14    Q.· So my question is, when you were purchasing

15    hand sanitizers at CVS between May of 2016 and May of

16    2020, did you ever evaluate the efficacy statement as a

17    part of your purchasing decision?

18    MS. AZIZ:· Objection.· Vague and ambiguous.  Compound.

19    MR. COELHO:· But you can answer.

20    MS. AZIZ:· You can answer to the extent you understand

21    what's being asked of you.

22    THE WITNESS:· I understand what you're -- I

23    understand what's being asked of me.

24    But, no, I did not read the back label or see the asterisk.

25    (*Id*. at p. 122:16-123:12.)

26    •    [following the testimony at p. 70:4-71:22]:

27    BY MR. HOPP:

28    Q.· Mr. Mier, can you describe the dispenser of the

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1    hand sanitizer that's available to the tenants who enter

2    your building?

3    A.· It just has a pole and a white plastic

4    container, and you push a button (indicating).

5    Q.· Very good, Mr. Mier.

6    The tenants -- There's a push button on the

7    container for the tenants to dispense hand sanitizer.

8    Is that your testimony?

9    A.· Yes.

10   MS. AZIZ:· Asked and answered.

11   BY MR. HOPP:

12   Q.· Mr. Mier, is there any labeling on that

13   dispenser to identify the manufacturer or distributor of

14   the hand sanitizer?

15   MS. AZIZ:· Objection.· Calls for speculation.

16   To the extent you have this information, go

17   ahead and answer.

18   THE WITNESS:· I think there's a name, but I don't

19   recall it.

20   BY MR. HOPP:

21   Q.· Mr. Mier, do you remember anything else about

22   the wording on the dispenser of the hand sanitizer that

23   the tenants have access to as they enter the building

24   where you work?

25   A.· It just says "Squeeze."

26   Q.· That's it?· That's all you remember?

27   MS. AZIZ:· Asked and answered.

28   THE WITNESS:· Yes.

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1      (*Id*. at p. 71:23-73:2.)

2  •     [following the testimony at p. 173:25-176:2, during which Defendant

3        asked Plaintiff improper questions seeking legal contentions based on

4        the Complaint]:

5        You say in the beginning of paragraph five

6        "Defendant was aware that no scientific study supported

7        its '99.9% claim.'"

8        Do you see that language?

9        A.· Yes.

10       Q.· Do you understand that language?

11       A.· Yes.

12       Q.· What does it mean?

13       A.· It's saying that the de- --

14       (Simultaneous speaking.)

15       THE WITNESS:· Yeah.

16       The defendant isn't coinciding with what is on the bottle.

17       BY MR. HOPP:

18       Q.· Okay.· Are you saying that what's on the bottle

19       hasn't been proven by a scientific test?

20       A.· Yes, I am.· 'Cause I don't know for sure.

21       (*Id*. at p. 177:2-18.)

22  •    [following the testimony at p. 76:19-78:7]:

23       Here's my question:· Mr. Mier, what has changed

24       about your understanding of the importance of hand

25       hygiene between May of 2020 and the present?

26       MS. AZIZ:· Same objections as before.

27       Go ahead.

28       THE WITNESS:· Prior to the pandemic, I thought that

43

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1          hand sanitizers was better, but got -- as it went -- as

2          it got worse and through media and everything, I found

3          that, you know, interesting, soap and water is better.

4          (*Id*. at p. 79:12-20.)

5          The record also reveals instances in which Defendant improperly threatened

6   Plaintiff directly as well as Plaintiff's counsel with judicial action should he not

7   get the answer he wanted on the record:

8   •          ·BY MR. HOPP:

9          Q.· Mr. Mier, you're entitled -- you're entitled to

10          do whatever you'd like to do.

11          If you want to follow your counsel's advice,

12          we'll take that up to the judge, but you're entitled to

13          answer the question the way I phrased it, which is --

14          MS. AZIZ:· Stop threatening my client with the

15          judge.· Stop threatening a layperson with calling a judge.

16          MR. HOPP:· Well, we're going to see the judge, and

17          Mr. Mier's probably going to be there with us.· I may or

18          may --

19          MS. AZIZ:· I can't wait for that day, but stop threatening him.

20          BY MR. HOPP:

21          Q.· Go ahead, Mr. Mier, answer my question.

22          (*Id*. at p. 250:23-251:12.)

23   •          Q.· Mr. Mier, I'm going to ask you the question.

24          All right?

25          And, you know, we're going to keep going here,

26          and if we have to bring you back, we will.· Because this

27          is something the judge will have to resolve.

28          (*Id*. at p. 175:20-24.)

44

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1    Clearly, the deposition was heated on both sides but, with the exception of
2  certain matters that were privileged, irrelevant, or which are duplicative of other
3  discovery, Defendant's counsel received answers to his questions.  In short, there
4  is no need for a second deposition, and no cause for sanctions.

5  **VI.    CONCLUSION**

6    Defendant seeks to re-depose Plaintiff on matters that are privileged,
7  irrelevant, and which have been irretrievably settled by documentary evidence
8  submitted to Defendant and the Court.   There is simply no basis for another
9  deposition.  Defendant points to expressions by Plaintiff's counsel which, though
10 regrettable, were made in response to Defendant's counsel's repeated efforts to
11 obtain privileged testimony regarding Plaintiff's understanding of legal
12 conclusions as to which no testimony should have been allowed.  Defendant can
13 point to no relevant, non-privileged material that it seeks which it has not already
14 obtained through more efficient means.   In short, this motion is a needless
15 distraction.  Defendant should not be rewarded for its tactics by another deposition,
16 or by sanctions for behavior equivalent to that of Defendant.  Defendant's motion
17 should be denied.

18 DATED: April 29, 2021                     */s/ Melanie A. Ayerh*

19                                              STEPTOE & JOHNSON LLP
20                                              Carol Brophy
                                               Anthony Hopp (*pro hac vice*)
21                                              Melanie A. Ayerh
22                                              *Attorneys for Defendant CVS*
                                               *HEALTH and*
23                                              *Intervenor-Defendant VI-JON, LLC*

24

25 DATED: April 29, 2021                     */s/ Thiago Coelho*

26                                              Thiago Coelho
27                                              Robert Dart
                                               Cinela Aziz
28

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION

1

*Attorneys for Plaintiff and the
Proposed Class*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE: MOTION FOR SANCTIONS AND MOTION TO
COMPEL PLAINTIFF TO SUBMIT TO ADDITIONAL DEPOSITION