1  STEPTOE & JOHNSON LLP
2  Carol R. Brophy, (SBN 155767)
   cbrophy@steptoe.com
3  One Market Plaza, Spear Tower, Suite 3900
4  San Francisco, California 94105
   Telephone: (415) 365-6700; Fax: (415) 365-6699
5
6  Melanie Ayerh (SBN 303211)
   mayerh@steptoe.com
7  633 West Fifth Street, Suite 1900
8  Los Angeles, California 90071
   Telephone: (213) 439-9432; Fax: (213) 439-9599
9
10 *Attorneys for Defendant CVS HEALTH CORPORATION and*
   *Intervenor-Defendant VI-JON, LLC*
11
12 [ADDITIONAL COUNSEL OF RECORD IDENTIFIED ON NEXT PAGE]

13            **UNITED STATES DISTRICT COURT**
14            **CENTRAL DISTRICT OF CALIFORNIA**

15 | JOSEPH MIER, individually, and on | Case No.: 8:20-cv-01979 DOC (ADSx) |
16 | behalf of others similarly situated, | Presiding Judge: Judge David O. Carter |
17 | | |
   |                 Plaintiff, | **CLASS ACTION** |
18 | | |
   |        vs. | **MEMORANDUM IN SUPPORT OF** |
19 | | **MOTION FOR CLASS** |
20 | CVS HEALTH, Rhode Island | **DECERTIFICATION** |
21 | Corporation and Does 1 to 100, | |
22 | inclusive, | Date: November 15, 2021 |
23 | | Time: 8:30 a.m. |
   |                 Defendants. | Courtroom: 9D |
24 | | Judge: Hon. David O. Carter |
25
26
27
28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS DECERTIFICATION

STEPTOE & JOHNSON LLP
Anthony Hopp (Illinois SBN 6199290) (*admitted pro hac vice*)
ahopp@steptoe.com
227 West Monroe St., Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1249;
Facsimile: (312) 577-1370

*Attorneys for Defendant CVS HEALTH CORPORATION and
Intervenor-Defendant VI-JON, LLC*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS DECERTIFICATION

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ..................................................................... 2

    A.  This Court's Class Certification Decision was Contingent on Plaintiff Producing Evidence of Class Wide Damages ....................... 2

    B.  Plaintiff Did not Deliver evidence of Class Wide Damages .............. 3

        1.  Dr. Krosnick's Report in Support of Class Certification .......... 3

        2.  Dr. Krosnick's Proposed Method to Calculate a Price-Value Differential ................................................................................. 5

        3.  Dr. Krosnick's Merits Report did not Address Class Wide Damages ..................................................................................... 6

III. LEGAL STANDARD .......................................................................... 10

    A.  Class Decertification Standard .......................................................... 10

    B.  Class-Wide Damages Standards ....................................................... 11

IV. ARGUMENT ...................................................................................... 12

    A.  This Court Should Decertify the Class Because Dr. Krosnick did not Measure the Alleged Damages Attributable to Plaintiff's Theory of the Case as Required by *Comcast*. ................................... 12

    B.  Plaintiff's Inability to Present Admissible Evidence of Class-Wide Damages Further Requires Decertification Under Rule 23(a)(4)'s Adequacy Requirement .................................................................... 15

V.  CONCLUSION .................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ........................ 16

*Brazil v. Dole Packaged Foods, LLC*,
No. 12-CV-01831-LHK, 2014 WL 5794873
(N.D. Cal. Nov. 6, 2014) ................................. 12

*Bruton v. Gerber Prods. Co.*,
No. 12-CV-02412-LHK, 2018 WL 1009257
(N.D. Cal. Feb. 13, 2018) ................................. 12

*Cole v. CRST, Inc.*,
317 F.R.D. 141 (C.D. Cal. 2016) ................................. 10

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) ................................. 16

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................. 2, 10, 11, 12, 13

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) ................................. 16

*Davidson v. Apple, Inc.*,
No. 16-CV-04942-LHK, 2019 WL 2548460
(N.D. Cal. June 20, 2019) ................................. 12

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977) ................................. 15

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................. 10

*Kandel v. Brother Int'l Corp.*,
264 F.R.D. 630 (C.D. Cal. 2010) ................................. 15, 16

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ...................................................................10

*Mohamed v. Kellogg Co.*,
  No. 14-CV-2449-L-MDD, 2019 WL 1330920
  (S.D. Cal. Mar. 23, 2019) ......................................................................12

*Motty v. First Student, Inc.*,
  No. 2:15-CV-7463-ODW (E), 2016 WL 4498452
  (C.D. Cal. Aug. 26, 2016)......................................................................15

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
  No. CV 09-565 DDP, 2011 WL 4852472 (C.D. Cal. Oct. 11, 2011) ...............16

*Quinonez v. Pharm. Specialties, Inc.*,
  No. CV 16-05966 BRO (AGR), 2017 WL 4769436
  (C.D. Cal. Aug. 10, 2017).......................................................................16

*Reis v. Ariz. Beverages USA LLC*,
  No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)....................10

*Reitman v. Champion Petfoods USA, Inc.*,
  No. CV 18-1736-DOC, 2019 WL 7169792
  (C.D. Cal. Oct. 30, 2019), *aff'd* 830 F. App'x 880
  (9th Cir. 2020) ...............................................................11, 14, 15

*Rice v. Sunbeam Prods., Inc.*,
  No. 2:12-CV-07923-CAS, 2014 WL 794331
  (C.D. Cal. Feb. 24, 2014) .......................................................................16

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................10

*Sweet v. Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005)..............................................................15

*Weaver v. Champion Petfoods USA Inc.*,
  No. 18-CV-1996-JPS-JPS, 2019 WL 7370374
  (E.D. Wis. Dec. 31, 2019) .............................................................14, 15

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK, 2014 WL 7148923
  (N.D. Cal. Dec. 15, 2014) .......................................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS DECERTIFICATION

*Wrighten v. Metro. Hosps., Inc.*,
   726 F.2d 1346 (9th Cir. 1984) ............................................................................. 15

*Zakaria v. Gerber Prods. Co.*,
   755 F. App'x 623 (9th Cir. 2018), *aff'd* 755 F. App'x 623
   (9th Cir. 2018) ...................................................................................... 13, 14, 15

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................................ 10

Fed. R. Civ. P. 23(a) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ............................................................................................... 15

Fed. R. Civ. P. 23(b) .................................................................................................... 10

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 2

Fed. R. Civ. P. 23(b)(3) ............................................................................ 2, 3, 11, 12

Fed. R. Evid. 702 ......................................................................................................... 14

## I.   **<u>INTRODUCTION</u>**

This is a case about the front label claims on CVS[1] store brand alcohol based hand sanitizer (the "Product").  Plaintiff claims the label statement "Kills 99.99% of germs*" is misleading, and that therefore he (and the class members) paid more for the product than it is worth.

This Court certified a class of California consumers relying, in large part, on Plaintiff's promise that his expert, Dr. Jon A. Krosnick, would conduct a consumer survey to measure the price premium: the difference in economic value between the hand sanitizer Product Plaintiff thought he was purchasing (one that allegedly promised to kill "all germs" known to science), and the one he received (one that kills "many" or "most" germs, but not all of them).  In a bid to get through the class certification stage of this case, Dr. Krosnick told this Court that he would conduct a "scientific study employing current best practices in experimental methodology and survey research methodology . . . to accurately gauge the impact of providing altered information to consumers about the efficacy of CVS Health's hand sanitizers."  This Court accepted Dr. Krosnick's promise and granted class certification because Plaintiff had presented "a sufficient damages model" "capable of calculating damages and restitution on a class-wide basis, consistent with his theory of liability." (Dkt. No. 84 at 12.)

Dr. Krosnick did not deliver on ***any of his promises***.  He did not collect or provide any data demonstrating the alleged value differential between the Product "as promised" and the value allegedly received by class members.  He did not produce a survey or conduct any conjoint analysis measuring individual or class-

---

[1] CVS Pharmacy, Inc. has repeatedly informed Plaintiff's counsel that the entity named in the Complaint ("CVS Health, a Rhode Island Corporation") does not exist. The parties are currently discussing a stipulation to substitute CVS Pharmacy, Inc. as the named defendant. As used herein, the term "CVS" refers to CVS Pharmacy, Inc.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR DECERTIFICATION

wide damages, let alone one consistent with Plaintiff's theory of the case, as required both by this Court and by the Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

California courts hold plaintiffs to their promises by decertifying classes when plaintiffs cannot provide evidence of damages that corresponds to the theory of the case. Here, this Court took Plaintiff at his word when he falsely promised a survey and conjoint analysis that would reveal evidence of class-wide damages demonstrating the difference between what the class members were allegedly promised and what they received. Plaintiff obtained class certification on that false promise, and the Court should now decertify the damages class in this case.[2]

## II.   STATEMENT OF FACTS

### A.   This Court's Class Certification Decision was Contingent on Plaintiff Producing Evidence of Class Wide Damages

On April 29, 2021, this Court granted Plaintiff's motion for certification of a class of "[a]ll persons residing in the State of California who purchased CVS hand-sanitizer during the period beginning four years from the date of the filing of this Complaint to the date of class certification." (Dkt. Nos. 40, 50; Compl. ¶ 24.) In certifying a Rule 23(b)(3) class, the Court relied on Plaintiff and his expert, Dr. Krosnick's, representations that they would conduct and produce a survey and analysis to measure class-wide damage. (Dkt. No. 84 at 12.) The Court concluded that Plaintiff had *proposed* a "sufficient damages model," but admonished that

---

[2] Plaintiff's 23(b)(2) class is the subject of Defendant's summary judgment motion. While the instant motion addresses only Plaintiff's 23(b)(3) class, depositions of Plaintiff's merits experts were only completed on October 15, 2021. As such, Defendants are in the process of assessing the viability of Plaintiff's (b)(2) class should it survive summary judgment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION

"Plaintiff **must present** a damage model capable of calculating damages or restitution on a class-wide basis, consistent with his theory of liability." (*Id*.)[3]

**B.    Plaintiff Did not Deliver evidence of Class Wide Damages**

**1.    Dr. Krosnick's Report in Support of Class Certification**

On March 15, 2021, Dr. Krosnick submitted a report in support of Plaintiff's Motion for Class Certification. (Dkt. No. 41-8, March 15, 2021, Report of Dr. Jon A. Krosnick ("Krosnick Rep't.").) Dr. Krosnick explained that he wrote the report specifically "to describe how [he] will formulate an opinion about how providing full information about the impact of CVS's Original Scent Moisturizing Hand Sanitizer and all similar CVS brand hand sanitizers affect[ ] consumers' perceptions of the quality and safety of the products and the ***economic value that consumers attach to the products***."[4] (*Id*., ¶¶ 2, 160(b)) (emphasis added).) Based on his "prior experience and . . . work done on this matter," Dr. Krosnick concluded that a "scientific study employing current best practices in experimental methodology and survey research methodology can be conducted to accurately gauge the impact of providing altered information to consumers about the efficacy of CVS Health's hand sanitizers." (*Id*., ¶ 13.)

---

[3] The parties disputed whether a Federal Rule of Civil Procedure 23(b)(3) damages class could be certified based on a plaintiff's future promise of an adequate damages model that would support finding class-wide damages. Specifically, Plaintiff claimed that "'it is acceptable at this stage to rely on a study that is subject to future refinement and development.'" (Dkt. No. 63 at 19 (citation omitted).) Further, Plaintiff promised that "[d]amages, too, will be determined on a class-wide basis, with a consumer survey to show exactly what the misstatement was worth; i.e., the pricing premium CVS extracted by making the promise." (Dkt. No. 50 at 17.)

[4] Near the end of this report, Dr. Krosnick specifically states that the survey will be designed to answer two questions of interest, with the second being: "Does learning this information about CVS hand sanitizers affect the rate at which people wish to buy the products ***and the value of the products to them and by how much***." Krosnick Rep't. ¶ 160(b) (emphasis added).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR DECERTIFICATION

In his report, Dr. Krosnick articulated his specific plan for conducting his proposed experiment and formulating his resulting opinions as follows:

> [U]sing well-established scientific methods, ***I propose to conduct a between-subjects experiment embedded in a probability sample survey of American adult consumer and various subgroups of them***. In this experiment, some respondents will be told about a CVS Health product (these people will be the "control" group), and other respondents will be shown altered versions of the packages that describe the effectiveness of the products in line with plaintiffs' allegations (these latter people will be the "treatment" groups).

(*Id.*, ¶ 2 (emphasis added).)

Using this purported "between-subjects experiment," Dr. Krosnick said that he would measure both: (1) respondents' perceptions of the quality and safety of the product; and (2) the economic value of the product to consumers. (*Id.*, ¶ 3.) In doing so, he once again told this Court how he promised to calculate alleged class-wide damages to consumers in this matter:

> I will then compare the judgments made by the two groups of respondents to assess whether the altered efficacy information produced to the treatment group is material to them and ***what the percent decline, if any, in the value of the product to consumers results from providing the altered efficacy information. The resulting percent declines in value will then be used to calculate damages owed to consumers, using procedures based upon the logic of the benefit of the bargain***.

4

1  (*Id*.) (emphasis added).)

2       Dr. Krosnick told this Court that he would embed a between-subjects

3  experiment within an internet survey whereby respondents would be exposed to

4  different sets of information, yielding different reactions, to serve as the basis for his

5  statistical analysis to "assess whether changes in the provided information altered

6  respondents' judgments as alleged by Plaintiffs in this case." (*Id*., ¶ 50.)

7       **2.**    **Dr. Krosnick's Proposed Method to Calculate a Price-Value**

8            **Differential**

9       Dr. Krosnick concluded his class-certification report with an in-depth

10  explanation of his proposed damages model.  He told this Court that he would use

11  the survey data that he obtained to "determine what percent less consumers would

12  have spent, if any, on CVS hand sanitizers if those consumers had known additional

13  information about the effectiveness of the products" — establishing the so-called

14  "price premium." (Krosnick Rep't. ¶ 191.)  Dr. Krosnick once again stressed that

15  his price premium evaluation would be based on principles of conjoint analysis,

16  where respondents are asked to choose between pairs of items, allowing researchers

17  to "gauge the impact of an attribute on choice and to gauge how much money people

18  are willing to pay to obtain a particular attribute."[5] (*Id*., ¶ 193.)

19       Regarding his proposed valuation calculation to "prove" class-wide damages,

20  Dr. Krosnick stated:

21               Respondents will be shown a hand sanitizer product and

22               asked to evaluate it and report whether they would

23               purchase it at a specific price.  Each respondent will be

24               randomly assigned to see the actual package's efficacy

25               statement or the corrected statement about effectiveness at

26

27  [5] Dr. Krosnick stated that conjoint analysis is often used as a valuation method for

28  product attributes "by measuring willingness to pay or willingness to purchase." (*Id*., ¶ 193.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION

killing germs.   Furthermore, each respondent will be randomly assigned to be offered the bottle at one of various different prices surrounding the conventional retail prices of the products.

(*Id.*, ¶ 196.)

Dr. Krosnick insisted that, with the data he obtained from this process, "it will be possible to compute the average willingness to pay for the products when not told the additional information and when told the additional information." (*Id.*, ¶ 197.) "The difference between these two averages will constitute the price premium," which can be described as a percentage. (*Id.*) Dr. Krosnick's proposed study would be designed to flesh out whether consumers would pay "less," "no less," or "more" for products when provided with this information. (*Id.*)   Dr. Krosnick proposed using the aforementioned "percent discount" to calculate the amount of purported overpayment by consumers for the products.

### 3.    Dr. Krosnick's Merits Report did not Address Class Wide Damages

The Court ordered the parties to exchange expert reports by no later than September 13, 2021. (Dkt. Nos. 26 and 29.)  On September 13, 2021, Dr. Krosnick submitted his expert report, purporting to contain his opinions related to the merits of Plaintiff's claims.   (Dkt. No. 154-10 (Sept. 13, 2021, Report of Dr. Jon A. Krosnick ("Krosnick Rep't. II").)  Dr. Krosnick made clear that he wrote this merits report to "offer opinions regarding whether allegedly misleading information disseminated by CVS Health about their hand sanitizer products is *material to a reasonable consumer.*" (*Id.*, ¶ 2.)  The entirety of Dr. Krosnick's merits report was focused on the "results of survey data analysis that [he] conducted to measure perceptions of hand sanitizers and preferences regarding effectiveness." (*Id.*)  From the outset, Dr. Krosnick made clear that the actual survey he conducted (as opposed

6

to the survey he promised six months prior) was not geared towards establishing a price differential, conducting any conjoint or valuation analysis, or supporting claims for class-wide damages.

Based on the survey he *actually conducted* (as opposed to the one he promised), Dr. Krosnick drew two conclusions: (1) the statements on hand sanitizer packages regarding their effectiveness are informative and material to consumers; and (2) the claim that a hand sanitizer kills "99.99% of germs" causes nearly all consumers to purchase that product rather than a comparable product without that claim. (*Id.*, ¶ 13.)

Dr. Krosnick identified the "relevant questions" to be answered by the survey as: (1) what people believe is the purpose of hand sanitizers; (2) whether people believe that hand sanitizers that kill more germs are more helpful; and (3) would people purchase a sanitizer that kills 99.99% of germs or one that kills less than 99.99% of germs? (*Id.*, ¶ 17.) On the last question—the only one even arguably touching on the purchase preferences of consumers—Dr. Krosnick made it a point in his merits report to note that "[a]nswers to this question reveal the impact of the effectiveness claim *on purchase decisions* of the respondents." (*Id.*, ¶ 37.) Notably, the focus of this last question was on whether a consumer is more ***likely*** to buy a product with certain attributes (here a product that kills 99.99% of "all germs"), as opposed to the value assigned to that particular attribute or an analysis of the *price differential* between products bearing that attribute versus products that do not.

Indeed, Dr. Krosnick made a long list of damages-related promises and representations in his class-certification report that he failed to deliver in his merits survey and merits report:

| Dr. Krosnick's Proposal In His March 2021 Report | Dr. Krosnick's Corresponding Deliverable In His September 13, 2021 Report |
| --- | --- |
| Using the survey data to "determine what percent less consumers would have spent, if any, on CVS hand | None |

7

| | |
|---|---|
| sanitizers if those consumers had known additional information about the effectiveness of the products," establishing a "price premium." (Krosnick Rep't. ¶ 191.) | |
| Evaluating price premium based on principles of conjoint analysis, where respondents are asked to choose between pairs of items, allowing researchers to "gauge the impact of an attribute on choice and to gauge how much money people are willing to pay to obtain a particular attribute." (Krosnick Rep't. ¶ 193.) | None |
| Showing respondents "a hand sanitizer product and ask[ing] them to evaluate it and report whether they would purchase it at a specific price. Each respondent will be randomly assigned to see the actual package's efficacy statement or the corrected statement about effectiveness at killing germs. Furthermore, each respondent will be randomly assigned to be offered the bottle at one of various different prices surrounding the conventional retail prices of the product." (Krosnick Rep't. ¶ 196.) | None |
| Using the "percent discount" to calculate the amount of purported overpayment by consumers for the products. (Krosnick Rep't. ¶ 198.) | None |
| Calculating an estimate of total damages owed to consumers if provided with the retail prices paid for the products and the volume of products | None |

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR DECERTIFICATION

| | |
|---|---|
| purchased for the applicable time frame in this litigation. (Krosnick Rep't. ¶ 198.) | |
| Creating demand curves showing the proportions of consumers whose willingness to pay for the product is at or above each of the various stated prices for the product. (Krosnick Rep't. ¶ 199.) | None |
| Using the demand curves to calculate the retail prices at which CVS would have gained maximum revenue under conditions where packages displayed the corrected efficacy information, with all other things kept constant. (Krosnick Rep't. ¶ 202.) | None |
| Determining the proportion of consumers whose maximum willingness to pay shifted to be below the actual retail price of the product during the applicable timeframe "as a result of seeing the corrected efficacy information." (Krosnick Rep't. ¶ 199.) | None |
| Calculating the total amount of retail revenue that would have been foregone if the consumers did not purchase the product due to presentation on the package of the corrected efficacy information (*i.e.*, the quantity of money that consumers "would not have paid in this but-for alternative world" accounting for all other constants). (Krosnick Rep't. ¶ 199.) | None |
| Project total revenue that would have been gained at a "maximally wise price" | None |

9

| | |
|---|---|
| and compare that to the total revenue actually gained by CVS with the packages it did use.  (Krosnick Rep't. ¶ 202.) | |

Plaintiff and Dr. Krosnick promised to undertake a "methodologically-sound between-subjects experiment embedded in an internet survey," and to demonstrate price differentials and product valuation assessments consistent with a "benefit of the bargain" damages theory at a class-wide level.  Dr. Krosnick did not do any of that and failed to provide any evidence establishing Plaintiff's individual damages or class-wide damages.

## III.  LEGAL STANDARD

### A.  Class Decertification Standard

"Even after a certification order is entered, the [C]ourt remains free to modify it in light of subsequent developments in the litigation."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  When a court considers a motion to decertify a class, the court "'must reevaluate whether the class continues to meet the requirements of Rule 23.'"  *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016) (citation omitted).  A district court may decertify a class at any time.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  The standard used by the courts in reviewing a motion to decertify a class is the same as the standard utilized for class certification.  *Reis v. Ariz. Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, *3 (N.D. Cal. Mar. 28, 2013).  The trial court must perform a "rigorous analysis" to ensure that Rule 23(a) and (b) are satisfied.  *Comcast* , 569 U.S. at 33-34.  Similar to class certification, on a motion to decertify, Plaintiff is not released of his or her burden of demonstrating that *all* of the Rule 23 requirements are met.  *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR DECERTIFICATION

## B.     <u>Class-Wide Damages Standards</u>

When a party challenges class certification under Rule 23(b)(3), in conjunction with evaluating whether individual issues predominate class issues, the "Court must also consider whether Plaintiffs have shown that damages can be feasibly and efficiently measured." *Reitman v. Champion Petfoods USA, Inc.*, No. CV 18-1736-DOC (JPRX), 2019 WL 7169792, at *7 (C.D. Cal. Oct. 30, 2019), *aff'd* 830 F. App'x 880 (9th Cir. 2020); *Comcast*, 569 U.S. at 34 ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than [the rigorous analysis standard of] Rule 23(a).").

*Comcast* is determinative.  In *Comcast*, the Court set a clear standard for the admission of an expert's damages model, holding that after conducting a rigorous analysis of a plaintiff's damages model, it must directly align with the plaintiff's theory of liability.  The Court stated:

> [A] model purporting to serve as evidence of damages in this class action must measure **only those damages attributable to that theory.  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)**.

*Id.* at 35 (emphasis added).  It is against the backdrop of *Comcast* that Plaintiff and his expert, Dr. Krosnick, have failed to establish class-wide damages of any sort, much less those that support Plaintiff's theory that class members paid more for the Product than they would have had they known that it does not kill "all germs" in the universe.

///
///
///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION

## IV.   **ARGUMENT**

### A.   **This Court Should Decertify the Class Because Dr. Krosnick did not Measure the Alleged Damages Attributable to Plaintiff's Theory of the Case as Required by *Comcast***

Dr. Krosnick's merits report is a glaring failure because it does not actually contain any class wide damages evidence, let alone evidence consistent with Plaintiff's theory of this case.  Based on that fact alone, decertification is required under *Comcast* and its progeny.  *See Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *9 (N.D. Cal. Feb. 13, 2018) (holding the court is bound by *Comcast* and rejecting the expert's damages model because the expert "'has no way of linking the price difference, if any, to the allegedly unlawful or deceptive label statements or controlling for other reasons why allegedly comparable products may have different prices'") (citation omitted); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *6 (N.D. Cal. Dec. 15, 2014) (relying on *Comcast* and decertifying class because Plaintiff had failed to put forth a damages model that measured the damages attributable to Defendant's wrongful conduct); *Mohamed v. Kellogg Co.*, No. 14-CV-2449-L-MDD, 2019 WL 1330920, at *3 (S.D. Cal. Mar. 23, 2019) (finding that "Plaintiff has failed to carry her burden under Rule 23(b)(3) to show that her proposed method of calculating damages on a class-wide basis will in fact measure damages attributable to her theory of liability").[6]

---

[6] *See also Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014) ("Accordingly, because Brazil's proposed damages model fails to provide a means of showing damages on a class wide basis through common proof, the Court concludes that Brazil has not satisfied the Rule 23(b)(3) requirement that common issues predominate over individual ones.  The Court must therefore decertify the Damages Class."); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2019 WL 2548460, at *27 (N.D. Cal. June 20, 2019) (finding "it makes little sense for the Court to certify a class based on Plaintiffs' or [the expert's] representations about what the second survey was supposed to ask

12

*Zakaria* is a prime example of the standard to which California courts hold expert damages analyses. *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018), *aff'd* 755 F. App'x 623 (9th Cir. 2018).   In decertifying the class, the *Zakaria* court stated:

> Under California consumer protection laws, ***plaintiffs can measure class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately***.   Such methods must, however, reflect supply-side considerations and marketplace realities that would affect product pricing.   Accordingly, the district court's subsequent holding that Dr. Howlett's conjoint analysis was inadequate for measuring class-wide damages was not illogical, implausible, or without support in the record.   Dr. Howlett's conjoint analysis did not reflect market realities and prices for infant formula products.   Dr. Howlett's conjoint analysis showed only how much consumers subjectively valued the 1st and Only Seal, not what had occurred to the actual market price of Good Start Gentle with or without the label.   ***Thus, regardless whether consumers were willing to pay a higher price for the labelled product, the expert's opinion did not contain any evidence that such higher price was actually paid; hence, no evidence of restitution or actual damages was proffered***.

respondents when the second survey that [the expert] actually conducted fails to satisfy *Comcast*") (emphasis omitted).

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION

1    *Id.* at 624-25 (internal citations omitted) (emphasis added).

2    Applying the above principles, this Court previously rejected a deficient class-

3    wide damages model offered by Dr. Krosnick and denied certification in *Reitman v.*

4    *Champion Petfoods USA, Inc*. on grounds that Dr. Krosnick's class-wide damages

5    model failed to test "the effect that the alleged misrepresentations [] on the packaging

6    had on [] consumers."  *Reitman*, 2019 WL 7169792, at *13.[7]  Similar to this case,

7    the theory of liability in *Reitman* was that alleged misrepresentations on defendants'

8    dog food packaging rendered the product to be worth less than the class members

9    had paid for it.  *Id*.  Dr. Krosnick's damages model in that case failed to account for

10   the effect that the alleged label misrepresentations had on the value of the product.

11   *Id*.  In denying certification, this Court explained that Dr. Krosnick's damages model

12   simply failed to measure the diminution in value of the product necessary to establish

13   class-wide damages.  *Id*.

14   Similarly, in *Weaver v. Champion Petfoods USA Inc*. the Eastern District of

15   Wisconsin excluded Dr. Krosnick under the *Daubert* and Rule 702 standards finding

16   that his damages model was wholly deficient.  No. 18-CV-1996-JPS-JPS, 2019 WL

17   7370374, at *4 (E.D. Wis. Dec. 31, 2019), aff'd, 3 F.4th 927 (7th Cir. 2021).  The

18   court in *Weaver* excluded Dr. Krosnick's testimony for a variety of reasons,

19   including that his survey model did not actually address the liability contested in the

20   trial.  *Id*.  As in *Reitman*, the theory of the case in *Weaver* was that certain statements

21   made by Champion influenced consumers' willingness to purchase the products.  *Id*.

22   at *1.  The court found that Dr. Krosnick's testimony, including his surveys, failed

23   to address the issues contested at the trial. *Id*.  In excluding Dr. Krosnick, the *Weaver*

24   court's logic mirrored that of this Court in its order on Class Certification, namely

25   that Dr. Krosnick's damages model *must align with Plaintiff's theory of the case. Id*.

26   at *3.  In *Weaver*, Dr. Krosnick failed to achieve such alignment, just as he has failed

27   in this case.

28

[7] The Ninth Circuit affirmed this Court's ruling in *Reitman* on December 9, 2020.

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION

Plaintiff here is even far worse off than the plaintiffs in *Zakaria*, *Weaver* and *Reitman*. At the Court-established cut-off for expert reports, Dr. Krosnick laid an egg (and not a golden one). He did not conduct or describe any conjoint analysis or any price premium *at all*. The failure is stunning considering that, at the class-certification stage, Dr. Krosnick spent over 100 laborious paragraphs describing in detail the specific work he was going to do to determine damages. ***And then his merits report includes none of it*.**[8] Therefore, decertification is required. Plaintiff's case-in-chief has no class-wide damages model at all.

**B.      Plaintiff's Inability to Present Admissible Evidence of Class-Wide Damages Further Requires Decertification Under Rule 23(a)(4)'s Adequacy Requirement**

Class counsel has demonstrated that they are not adequate to represent the interests of the class. "A trial court correctly considers the competence of counsel when deciding to grant or deny class certification." *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1352 (9th Cir. 1984). "'Because class counsel seeks to determine the rights of absent putative class members, a court must carefully scrutinize the adequacy of representation when considering to certify a class.'" *Sweet v. Pfizer*, 232 F.R.D. 360, 371 (C.D. Cal. 2005) (citation omitted). In doing so, this Court "should [ ] consider the quality of counsel's work up to that point in the litigation," and counsel's representation will only be adequate if it is conducted "vigorously." *Motty v. First Student, Inc.*, No. 2:15-CV-7463-ODW (E), 2016 WL 4498452, at *3 (C.D. Cal. Aug. 26, 2016); *see also E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977). In making this determination, courts consider whether counsel failed to seek "adequate discovery in preparation for trial" or failed to "timely [ ] prosecute the litigation." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630,

---

[8] One can only assume that Dr. Krosnick did the survey and conjoint analysis but that the result was horrible for Plaintiff's case so it was placed in the circular file rather than in his report. Regardless, it is not in his September 13 report.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR DECERTIFICATION

634 (C.D. Cal. 2010); *see also Quinonez v. Pharm. Specialties, Inc.*, No. CV 16-05966 BRO (AGR), 2017 WL 4769436, at *4 (C.D. Cal. Aug. 10, 2017).

As discussed above, Plaintiff's counsel has failed to produce any admissible evidence – expert or otherwise – in support of their class-wide damage and restitution model. "[A]ctual evidence of some injury resulting from the deception is an essential element of the plaintiff's case. *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, No. CV 09-565 DDP (RZx), 2011 WL 4852472, at *2 (C.D. Cal. Oct. 11, 2011). The restitution damages that Plaintiff seeks on behalf of the Class must also be proved by "substantial evidence." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006). Such evidence must be sufficient to calculate the amount "necessary to restore purchasers to the *status quo ante.*" *Id.* In most cases such as this, the basis of that calculation must be established through expert testimony. *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097, at *12 (N.D. Cal. Jan. 7, 2014); *Rice v. Sunbeam Prods., Inc.*, No. 2:12-CV-07923-CAS, 2014 WL 794331, at *5 (C.D. Cal. Feb. 24, 2014); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 564 (C.D. Cal. 2014). Despite their promises, Plaintiff's counsel never attempted to produce expert testimony for their case-in-chief related to Plaintiff's theory of damages. As a result, Plaintiff has failed to establish that his counsel can adequately represent the interests of the class.

## V.   **CONCLUSION**

For all the reasons set forth above, Defendants move this Court to decertify the class in this matter and to vacate its class certification order of April 29, 2021.

///

///

///

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION

1   DATED:  October 18, 2021          STEPTOE & JOHNSON LLP

2

3                                      By:  */s/ Melanie Ayerh*
                                       Carol Brophy
4                                      Melanie Ayerh
                                       Anthony Hopp
5

6                                      *Attorneys for Defendant CVS HEALTH*
                                       *CORPORATION and*
7                                      *Intervenor-Defendant VI-JON, LLC*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR DECERTIFICATION