UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOESPH MIER,<br><br>   Plaintiff,<br><br>vs.<br><br>CVS PHARMACY, INC. ET AL.,<br><br>   Defendants. | Case No. 8:20-cv-01979-DOC-ADS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS IN LIMINE [222, 223]; AND DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS [212] |

Before the Court is Plaintiff Joesph Mier's ("Plaintiff") Renewed Motion for Class Certification ("Renewed Class Cert. Mot.") (Dkt. 212) and Defendants and Intervenor-Defendant CVS Health, CVS Pharmacy, Inc., and VI-JON, LLC's (collectively, "Defendants") Motions in Limine (Dkts. 222, 223). The Court heard oral arguments on April 18, 2022. Having reviewed the papers and considered the parties' arguments, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motions in Limine and DENIES Plaintiff's Renewed Motion for Class Certification.

## I. BACKGROUND

This Case arises out of Plaintiff's allegations that CVS's Advanced Formula Hand Sanitizer misleads consumers by representing that it kills 99.99% of all germs.[1] First Amended Complaint ("FAC") (Dkt. 133) ¶¶ 2, 24. Next to the 99% claim is an asterisk leading to the back label where additional language on the product states: "*Effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds." *Id.* ¶ 14; Answer to First Amended Complaint ("FAC Answer") ¶ 14 (Dkt. 207). Plaintiff brought a consumer class action suit against Defendants for Intentional Misrepresentation; Negligent Misrepresentation; Violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and Violation of the Unfair Competition Law ("UCL"), (Cal. Bus. & Prof. Code § 17200 *et seq.*). *See generally id.*

On March 15, 2021, Plaintiff filed his Motion to Certify Class (Dkt. 40). In the attached declaration from expert Dr. Jon A. Krosnick, Dr. Krosnick described how he would demonstrate how disclosing full information about CVS's hand sanitizer "affects consumers' perceptions of the quality and safety of the products and the economic value that consumers attach to the products." Exhibit 8, Declaration of Justin F. Marquez in support of Motion to Certify Class ("Krosnick Decl. for Class Cert.") (Dkt. 41-8) at 1.

The Court certified this class under Rule 23(b)(3) on April 29, 2021. Order Granting Plaintiff's Motion for Class Certification ("Class Cert. Order") (Dkt. 84). The Class Cert. Order was contingent on Plaintiff providing a damages model consistent with Plaintiff's theory of liability. *See* Class Cert. Order at 12 ("Finally, Plaintiff must present a damage model capable of calculating damages or restitution on a class wide basis, consistent with his theory of liability." (emphasis added) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-36 (2013)). Based on these representations, the Court anticipated calculating damages using Plaintiff's measurement of the "price premium," which is "what percent less consumers would have spent, if any, on CVS hand sanitizers if those consumers had known additional information about the effectiveness of the

---

[1] This claim is hereinafter referred to as the "99% claim."

products." Krosnick Decl. for Class Cert. at 90. Plaintiff did not provide such a damages model; accordingly, the Court granted Defendants' Motion to Decertify the Class on October 18, 2021. Order Granting Defendants' Motion to Decertify Class ("Class Decert. Order") (Dkt. 155).

Plaintiff brought the instant Renewed Class Cert. Mot. on February 2, 2022. Plaintiff seeks certification of a class consisting of "All persons residing in the State of California who purchased CVS brand hand sanitizer during the period beginning four years from the date of the filing of the original Complaint, filed May 26, 2020, to the date of class certification." Renewed Class Cert. Mot. at 5. Plaintiff has provided a new expert opinion by Dr. Krosnick. ("Krosnick Rept.") (Dkt. 218-2). Defendants opposed ("Cert. Opp'n") (Dkt. 220) on March 2, 2022.

On March 2, 2022, Defendants moved in limine to exclude Dr. Krosnick's testimony. Defendants' Motion in Limine to Exclude or Limit the Testimony of Jon A. Krosnick ("Krosnick MIL") (Dkt. 222). Plaintiff opposed ("Krosnick Opp'n") (Dkt. 230) on March 28, 2022.

Plaintiff also provided two new expert opinions from Dr. Calder ("Calder Rept.") (Dkt. 218-17) and Bruce Silverman ("Silverman") ("Silverman Rept.") (Dkt. 218-5), and Defendants moved in limine on March 2, 2022 to exclude testimony from both these experts. Defendants' Motion in Limine to Exclude or Limit the Testimony of Bruce Silverman and Bobby Calder ("Silverman/Calder MIL") (Dkt. 223). Plaintiff opposed ("Silverman/Calder Opp'n") (Dkt. 233) on March 28, 2022.

## II.     MOTIONS IN LIMINE

Defendants moved in limine to exclude the opinions and testimony from several experts based on Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Defendants also cite to *Daubert,* which explains that an expert's testimony must be helpful to the trier of fact, reliable, and relevant to be admissible. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Under *Daubert*, the Court must examine the expert's methodology, but the Court may not examine the expert's conclusions. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010).

Defendants further rely on Fed. R. Evid. 403, which excludes evidence if the probative value is substantially outweighed by the prejudicial effect.

Below, the Court deals with each of the Motions in Limine in turn.

### A. Dr. Krosnick's Surveys

Dr. Krosnick's testimony is based on four surveys that he conducted. Defendants move to exclude each survey and Dr. Krosnick's corresponding testimony. Defendants argue that Dr. Krosnick's testimony fails to satisfy Fed. R. Evid. 702 and *Daubert*, which state that an expert's testimony must be reliable and relevant to be admissible. *See Daubert*, 509 U.S. at 579 (1993).

#### i. Survey #1

Dr. Krosnick's first survey ("Survey #1") consisted of telephone interviews with over 1,000 randomly selected survey respondents. Krosnick Rept. ¶¶ 57-58. Respondents were asked questions about the primary purpose of hand sanitizer, the importance of a hand sanitizer's germ-killing ability, and if they would purchase a hand sanitizer that kills 99.99% of germs rather than one that kills fewer germs. *Id.* ¶¶ 59-65. 88% of respondents said that they would purchase a hand sanitizer that kills 99.99% of germs rather than one that kills fewer germs. *Id.* ¶ 64.

Plaintiff argues that Survey #1 shows materiality of the 99% claim. Krosnick Opp'n at 7-8. Plaintiff says that Survey #1 can be used to prove reliance by consumers on the 99% claim by demonstrating that the 99% claim was material. *Id.* Defendants argue that Survey #1 is inadmissible because it is irrelevant. MIL Krosnick at 10.

Materiality can be demonstrated by showing that a reasonable person would attach importance to the representation in choosing their course of action in the relevant transaction. *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009).

The Court finds that Survey #1 is inadmissible under *Daubert*. Survey #1 asked respondents if, all else being equal, they prefer hand sanitizer that kills 99% of germs as opposed to one that kills fewer germs. Survey #1 did not show consumers the product front label, the back label, or any other information that a consumer purchasing CVS hand sanitizer would have access to. Survey #1 merely concluded was that in the abstract, consumers would prefer a product that killed 99% of germs as opposed to a product that killed fewer germs. Accordingly, Survey #1 is too attenuated from the factual issue it is offered to prove: that the 99% claim on the CVS hand sanitizer was material.

Accordingly, Defendants' motion in limine is GRANTED with respect to Survey #1.

### ii.  Survey #2

Dr. Krosnick's second survey ("Survey #2") attempted to determine the value of the 99% claim to consumers. Dr. Krosnick had five different sets of products in this survey. Krosnick Rept. ¶¶ 20-22, 69. Each set was composed of one CVS product and one comparable non-CVS product. *Id.* Respondents were shown the front label of each set of products, some of which displayed the 99% claim. *Id.* ¶ 34. The competitor product was always offered at the same price, and the CVS product was offered at one of five different prices. *Id.* Respondents indicated which product they would purchase, and Dr. Krosnick used this information to compute the average value of the CVS hand sanitizer when it displayed the 99% claim and the average value of the CVS hand sanitizer when it did not. ¶¶ 35-36. Dr. Krosnick then used several regression equations to estimate the impact of removing the 99% claim on consumers. *Id.* ¶¶ 72-88. Dr. Krosnick combined the data from the five CVS products to estimate the overall effect of the 99% claim on willingness-to-pay. *Id.* ¶ 87. Dr. Krosnick then multiplied this effect by CVS's total hand sanitizer sales for the relevant time period to calculate the estimated reduction in

value. *Id.* ¶¶ 89-91. Plaintiff considers the damages in this case to be the price differential between the products with the 99% claim and the ones without. Krosnick Opp'n at 9-10.

Defendants, relying on their expert Dr. Bradford, claim that Survey #2 should be excluded because it does not calculate a supply curve. Krosnick MIL at 12-15. Defendants contend that Survey #2 is not reliable because three of the non-CVS products used in the survey did not contain the challenged representation "kills 99% of germs" found on the CVS products, but instead said "kills 99% of harmful germs", "kills 99% of harmful germs and bacteria", and "kills 99% of common germs." *Id.* at 15-16. Defendants also contend that Survey #2 did not allow respondents to see the rear label, which was an unrealistic approximation of the situation consumers actually faced when purchasing the products. *Id.* at 16. Lastly, Defendants contend that Dr. Krosnick's confidence intervals and margins of error are too wide. *Id.* at 18-19.

The Court finds that the confidence interval is not too high to make Survey #2 so unreliable as to warrant exclusion. Dr. Krosnick calculated that removing the 99% claim caused the value of CVS hand sanitizer products to fall by 19.21% with a 95% confidence interval of 12.21% to 24.24%. Krosnick Rept. ¶ 87. Survey #2 found a statistically significant relationship between the 99% claim and the value of CVS hand sanitizer, even if the exact amount of the impact is debatable. Instead, the range of the confidence interval is something for the trier of fact to weigh. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). Likewise, the fact that respondents did not see the back of the product does not warrant exclusion but is for the trier of fact to weigh. *See id.*

Notably, Dr. Krosnick did not calculate a supply curve in his analysis; he presumed the supply curve was the same in his model as in reality. Krosnick Rept. ¶ 39. The nature of the supply curve determines how a reduction in consumer willingness-to-pay for a product affects the market price for a product. Bradford Rept. at 214, Fig. Five (graph depicting impact of slope of supply curve on product's price reduction when consumer willingness-to-pay decreases). Without defining the supply curve, Dr. Krosnick only calculated the change in consumer willingness-to-pay attributable to the 99% claim, not the market price. *Id.* ¶¶ 52-54.

At oral argument, Plaintiff contended that the supply curve was fixed throughout the period of the class due to the COVID-19 pandemic, and thus Dr. Krosnick did not need to calculate a supply curve. However, as Defendants noted at argument, the class period includes non-pandemic months when Defendants were not fixing the price of their hand sanitizer. As such, Dr. Krosnick does not adequately explain his failure to calculate the supply curve.

Therefore, Defendants' Motion in Limine is DENIED IN PART AND GRANTED IN PART with respect to Survey #2. Dr. Krosnick's report and associated testimony may not be used to calculate a market price but-for the 99% claim, but Dr. Krosnick's report and associated testimony may be used to calculate the impact the 99% claim had on consumer demand, consumer willingness-to-pay, and the value consumers attached to the 99% claim.

### iii. Survey #3

In Survey #3, respondents were shown an image of CVS hand sanitizer and instructed to read the text on the label of the CVS hand sanitizer, including the claim "kills 99% of germs." Krosnick Rept. ¶¶ 92-104. Half of the respondents then read additional corrective statements about the product that cast doubt on the 99% claim. *Id.* ¶ 97. The respondents were then asked if they would purchase the hand sanitizer at various prices. *Id.* ¶¶ 99-101. The respondents who read the additional statements were less likely to purchase the hand sanitizer. *Id.* ¶¶ 105-14. The reduction was statistically significant. *Id.* ¶¶ 109-114.

Defendants contend that Survey #3 is irrelevant because it does not test the impact of the 99% claim but tests the impact of statements that Dr. Krosnick made up. Krosnick MIL at 20-21. Defendants further argue that a large number of respondents indicated that they would purchase the product anyway, disproving materiality. *Id.* at 21-22. Defendants argue that Survey #3 should be excluded under *Comcast* because Survey #3 does not test the impact that the 99% claim had on consumers. *Id.*

Plaintiff argues that Defendants do not cite to any case law showing that a corrective statement survey was excluded under Fed. R. Evid. 702. Krosnick Opp'n at 17-19. Plaintiff

asserts that the purpose of this survey is to justify injunctive relief by showing that consumers are likely to be harmed in the future by the 99% claim if an injunction is not granted, and that this harm is redressable through an injunction requiring CVS to provide consumers with more complete information. *Id.* at 18-19.

The Court agrees with Plaintiff. There is no reason to exclude Survey #3 under Fed. R. Evid. 702 and the survey is relevant to the question of injunctive relief. Defendants' reliance on *Comcast* is misguided. *Comcast* dealt with damages, not injunctive relief. 569 U.S. at 35-38. Moreover, *Comcast* does not govern admissibility of evidence, but class certification. *Id.*

As such, Defendants' Motion in Limine is DENIED with respect to Survey #3.

### iv. Survey #4

Defendants moved to exclude Survey #4 because it is based on guesswork, making it unreliable and inadmissible. Krosnick MIL at 22-24. Plaintiff does not oppose.

Accordingly, Defendants' motion in limine is GRANTED with respect to Survey #4.

### B. Bruce Silverman's Testimony under FRE 702

Silverman will testify that the 99% claim was material to consumers.

Defendants moved to exclude the testimony of Silverman, arguing that Silverman's testimony reaches a legal conclusion and violates Fed. R. Evid. 702 because it is unreliable. Silverman/Calder MIL at 9, 13-17. Defendants argue that Silverman did not conduct any empirical research to prepare his opinion in this case; he did not have any testable or peer-reviewed methodology to support his opinion; and he did not use primary or secondary research in fashioning his opinion for this case. *Id.* at 2-4.

Plaintiff argues that Silverman has over 50 years of advertising experience, throughout which he has worked for impressive clients such as Apple and Pepsi-Cola. Silverman/Calder Opp'n at 2. He has extensive experience helping market consumer products in retail stores.

Silverman Rept. ¶¶ 12, 15, 19. Plaintiff contends that Silverman's techniques are well-accepted within the advertising industry. Silverman/Calder Opp'n at 3-4.

The Court finds that Silverman's testimony is admissible under Fed. R. Evid. 702. The Advisory Committee Notes to the 2000 Amendment of Fed. R. Evid. 702 contemplate expert testimony based purely on extensive experience provided the expert explains how the experience leads to the expert's opinion. Shaky but admissible evidence is not to be excluded but to be attacked on cross-examination, impeached, or rebutted with contrary evidence. *Daubert*, 509 U.S. at 596.

Silverman's expert knowledge in the field of advertising will be helpful for the trier of fact to understand the impact the 99% claim had on consumers. As indicated by Plaintiff, Silverman has explained how his experience led him to his opinions. Silverman/Calder Opp'n at 12. Therefore, Silverman's testimony is sufficiently reliable that it is admissible under Fed. R. Evid. 702.

However, Silverman's conclusion that the 99% claim is material to consumers is a legal conclusion and should be excluded. Experts may opine on the ultimate factual issue but may not opine on legal conclusions. *Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), *as amended* 319 F.3d 1073 (9th Cir. 2003), *and overruled on other grounds by Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014), *and United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020).

Defendants' motion in limine under Fed. R. Evid. 702 with regards to Silverman's testimony is DENIED. However, Silverman may not use the word "material" to describe the 99% claim when testifying before the trier of fact.

### C. Dr. Calder's Testimony under FRE 702

Dr. Calder will testify that a reasonable consumer will have no basis to question the 99% claim, and based on consumer psychology, will not read the back label or fine print of the CVS product. His report is based entirely on experience, consumer research, and literature review.

Silverman/Calder Opp'n at 4-5. Dr. Calder claimed that the 99% claim was material, and he defined material to mean something that would actually impact a consumer's purchasing decision. Silverman/Calder MIL at 6.

Defendants moved to exclude Dr. Calder's testimony because they allege it is based on his experience from working in advertising and review of marketing literature. *Id.* at 3. Plaintiff argues that Dr. Calder does not have to conduct empirical research to testify to his opinion on the impact of the 99% claim. Silverman/Calder Opp'n at 18-19.

Dr. Calder is a professor at Northwestern University's Kellogg School of Management with a Ph.D. in Psychology. Silverman/Calder Opp'n at 4. Dr. Calder's report is based on his extensive experience with psychology in marketing; he relied on peer-reviewed research and his experience to form his opinion. *Id.* at 5.

Dr. Calder's testimony is admissible under Fed. R. Evid. 702 because it is reliably based on sufficient experience. Dr. Calder's experience is sufficient to render him an expert on consumer psychology. Dr. Calder explains how his knowledge and experience led him to his conclusions. Silverman/Calder Opp'n at 12, 18-20. Dr. Calder is doing precisely what experts in the advertising field do: making a prediction based on experience as to how a claim will impact the consumer's choice in purchasing a product. As discussed above with respect to Silverman, Dr. Calder may not opine on legal conclusions.

Defendants' motion in limine under Fed. R. Evid. 702 with regards to Dr. Calder's testimony is DENIED. However, Dr. Calder may not use the word "material" to describe the 99% claim when testifying before the trier of fact.

### D. Silverman and Dr. Calder's Testimony under FRE 403

Defendants moved to exclude both Dr. Calder and Silverman's testimony under Fed. R. Evid. 403 on the grounds that they will confuse the jury because they contradict Dr. Krosnick's study. Silverman/Calder MIL at 20. Defendants claim that Dr. Krosnick's study found that over 80% of consumers did not consider the 99% claim to be material, and Dr. Calder and

Silverman's testimony suggests that consumers consider the 99% claim material. *Id.* at 20. Defendants also argue that Dr. Calder, Silverman, and Dr. Krosnick's testimony is duplicative. *Id.* at 21-23.

The Court finds that the testimony is not duplicative. Dr. Krosnick's study *quantitatively* values the 99% claim while Dr. Calder's testimony *qualitatively* examines the impact of the 99% claim on a consumer's purchasing decision. *Id.* at 22. Silverman's testimony is based on his practical experience advertising products to consumers and is not psychological or statistical. *Id.*

The Court finds that under Fed. R. Evid. 403 the probative value of the expert testimony is not substantially outweighed by risk of confusing, misleading, or needlessly presenting cumulative evidence to the jury. Each expert used distinct methodology to arrive at their respective conclusions, which resulted in different, although overlapping, opinions. Dr. Krosnick's testimony is not contradicted by the other experts. While Dr. Krosnick testifies regarding consumers' valuation of the 99% claim, he does not assert that every consumer found the 99% claim to be the but-for cause of purchasing hand sanitizer, or that every consumer found it to be material.

Defendants' motion in limine under Fed. R. Evid. 403 with regards to Dr. Calder and Silverman's testimony is DENIED.

### III. CLASS CERTIFICATION
#### A. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions. "Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parking*, 462 U.S. 345, 628 (1983)). A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co.*

*of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). To certify a class under Rule 23(a), a plaintiff must demonstrate (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 374 (2011); *Dunleavy v. Nadler*, 213 F.3d 454, 462 (9th Cir. 2000). If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). *Wal–Mart*, 564 U.S. at 374.

### B. DISCUSSION

The Court previously determined that Plaintiff met all the requirements for class certification and certified the class, subject to Plaintiff providing a *Comcast*-compliant damages model that calculates class-wide damages according to his theory of liability. Class Cert. Order at 12. The Court later found that Plaintiff failed to develop a *Comcast*-compliant damages model and thus decertified the class. Class Decert. Order at 5-7. The Class Decert. Order did not disturb any of the Court's previous rulings on Plaintiff's compliance with Rule 23(a), or Rule 23(b)(2). Class Decert. Order at 6-7. Instead, the Court found that Rule 23(b)(3) was not satisfied because Plaintiff failed to show that common issues predominated the class through their *Comcast*-compliant damages model. *Id.* at 6. Accordingly, the Court will only address Plaintiff's compliance with Rule 23(b)(3).

Under Rule 23(b)(3), class certification is appropriate if common questions of law or fact "predominate over any questions affecting only individual members," and if a class action offers a superior method of resolving the dispute. Fed. R. Civ. P. 23(b)(3). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). *Comcast* further establishes that Plaintiff's proposed damages model must show that damages are capable of measurement on a classwide basis, and measure only damages attributable to Plaintiff's proposed theory of liability. *Comcast*, 569 U.S. at 34-36. The Ninth Circuit has since explicitly affirmed that damage calculations alone do not defeat class certification if Plaintiff can show that his damages shared a nexus with Defendants' tortious or otherwise prohibited actions. *See*

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019) (nexus between legal theory and damages model sufficient for Rule 23(b)(3)). As the Ninth Circuit has explained, the accuracy of Plaintiff's damages model is unrelated to class certification. *Nguyen*, 932 F.3d at 811. "If the central issues in the case are common and predominate, then a damages class action can be permissible even if some other issues like damages will have to be tried individually." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022).

Under California law, damages for fraud and negligent misrepresentation are calculated as the difference between what the consumer paid for the product, and what the market value of the product would have been but-for the misrepresentation. *In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006); *Anderson v. Ford Motor Co.*, 74 Cal. App. 5th 946, 961 (2022), *reh'g denied* (Mar. 8, 2022), *review filed* (Mar. 21, 2022) (defining "actual value" as "market value"). In contrast, only restitution is available for FAL and UCL actions. *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013). Restitution is calculated by the difference in what the consumer actually paid and what the consumer would have been willing to pay had the consumer known all the relevant information. *Pulaski*, 802 F.3d at 989; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 329-35 (2011).

As discussed above, *see* Survey #2, Plaintiff's damages model calculated *consumer willingness-to-pay* but-for the 99% claim. However, Plaintiff's damages model did not calculate the *market price* but-for the 99% claim because it failed to determine the supply curve for CVS's hand sanitizer. Thus, Plaintiff's damages model is only capable of calculating restitution, not fraud or misrepresentation damages.

However, Plaintiff still failed to show classwide damages for the FAL and UCL claims. Survey #2 showed that when the 99% claim was removed, purchases of CVS hand sanitizer decreased by roughly 20%. Krosnick Rept. ¶ 76. This indicates that roughly 80% of consumers were still willing to purchase the CVS hand sanitizer without the 99% claim. In other words, approximately 80% of consumers' willingness-to-pay absent the 99% claim was still equal to or

greater than the CVS sale price. Plaintiff's own Survey suggests that the vast majority of Plaintiff's proposed class members did not suffer any damages. Determining the existence of injury would require individualized proof for each class member. On these facts, Plaintiff has not demonstrated how "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 567 U.S. 27, 35 (2013). Accordingly, the Court finds that individualized questions of whether class members suffered any damage whatsoever predominate any common questions, thus failing Rule 23(b)(3).

## IV. DISPOSITION

For the reasons explained above, the Court:

1. GRANTS Defendants' Motion in Limine with respect to Survey #1;
2. DENIES IN PART AND GRANTS IN PART Defendants' Motion in Limine with respect to Survey #2;
3. DENIES Defendants' Motion in Limine with respect to Survey #3;
4. GRANTS Defendants' Motion in limine with respect to Survey #4;
5. DENIES Defendants' Motion in limine with respect to Silverman's testimony;
6. DENIES Defendants' Motion in limine with respect to Dr. Calder's testimony;
7. DENIES Plaintiff's Motion for Certification of Class and Appointment of Class Counsel.

The parties should modify any pending substantive motions in light of these rulings and submit a new scheduling order if necessary.

DATED: May 9, 2022

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE